JODI LINKER
Federal Public Defender
Northern District of California
ANGELA CHUANG
TODD M. BORDEN
Assistant Federal Public Defenders
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:    (415) 436-7706
Email:         Angela_Chuang@fd.org

Counsel for Defendant DePape

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | Case No.: CR 22–00426 JSC |
|---|---|
| Plaintiff, | **NOTICE OF MOTION AND MOTION TO CHANGE VENUE** |
| v. | **Court:** Courtroom 8, 19th Floor |
| DAVID WAYNE DEPAPE, | **Hearing Date:** July 19, 2023 |
| Defendant. | **Hearing Time:** 10:00 a.m. |

TO: ISMAIL J. RAMSEY, UNITED STATES ATTORNEY;
LAURA VARTAIN HORN, KYLE F. WALDINGER, AND HELEN GILBERT,
ASSISTANT UNITED STATES ATTORNEYS

PLEASE TAKE NOTICE that counsel for defendant DAVID WAYNE DEPAPE moves this Court to change the venue for his trial. This motion is made pursuant to the Constitution of the United States, Federal Rules of Criminal Procedure 18 and 21, the attached memorandum of points and authorities and accompanying exhibits, and all other applicable constitutional, case, and statutory authority, and such evidence and argument that may be presented at the motion hearing.

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................................i

TABLE OF AUTHORITIES ............................................................................................................ii

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    I.    Legal Standard .................................................................................................... 2

    II.    The extraordinary level of pretrial publicity concerning the Pelosi assault and Mr. DePape requires a transfer of venue out of the San Francisco Division of this Court. .... 5

        A.    Nancy Pelosi is uniquely prominent in the San Francisco Bay Area. ................... 5

        B.    Prospective Bay Area jurors have been inundated with media coverage of this case, including release of video footage of the assault on Paul Pelosi, the 911 audio recording, and the audio recording of the police interrogation of Mr. DePape shortly after his arrest. ............................................................................... 6

        C.    The release and broadcast of incriminating statements by Mr. DePape during an SFPD interrogation support transferring venue. ................................................. 10

        D.    The recency of the incident and swift trial schedule also support a change in venue out of the Bay Area. ................................................................................. 11

    III.    The Court should transfer venue either out of this District or to the Eureka Division of this Court .............................................................................................................. 11

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Federal Cases**

*Carrillo v. Squier*,
    137 F.2d 648 (9th Cir. 1943) .................................................................................................. 4

*Estes v. Texas*,
    381 U.S. 532 (1965) ................................................................................................................ 3

*Harris v. Pulley*,
    852 F.2d 1546 (9th Cir. 1988) ................................................................................................ 3

*In re Murchison*,
    349 U.S. 133 (1955) ................................................................................................................ 2

*Irvin v. Dowd*,
    366 U.S. 717 (1961) ........................................................................................................ 3, 11

*Murphy v. Florida*,
    421 U.S. 794 (1975) ................................................................................................................ 3

*Parker v. Randolph*,
    442 U.S. 62 (1979) ........................................................................................................... 10-11

*Patton v. Yount*,
    467 U.S. 1025 (1984) .............................................................................................................. 3

*Rideau v. Louisiana*,
    373 U.S. 723 (1963) ........................................................................................................ 3, 11

*Sheppard v. Maxwell*,
    384 U.S. 333 (1966) ................................................................................................................ 3

*Skilling v. United States*,
    561 U.S. 358 (2010) .................................................................................................. 2, 10, 11

*United States v. Balistrieri*,
    778 F.2d 1226 (7th Cir. 1985) ................................................................................................ 4

*United States v. Cervantes*,
    No. 21-CR-00358-YGR, Dkt. 153 (N.D. Cal. Nov. 15, 2021)............................................. 13

*United States v. Cloud,*
    No. 1:19-CR-02032-SMJ-1, 2021 WL 9406685 (E.D. Wash. Dec. 14, 2021) .............. 3-4, 4-5, 9

*United States v. Cortez*,
    251 F.R.D. 237 (E.D. Tex. 2007) .................................................................................... 13-14

*United States v. Dickie*,
   775 F.2d 607 (5th Cir. 1985) ................................................................................................ 4

*United States v. Erwin*,
   155 F.3d 818 (6th Cir. 1998) ................................................................................................ 4

*United States v. Ford*,
   812 F. Supp. 761 (W.D. Tenn. 1991) ............................................................................... 4, 5

*United States v. Hazelwood*,
   979 F.3d 398 (6th Cir. 2020) ................................................................................................ 7

*United States v. Hirst,*
   No. 11-CR-0157-SBA, 2011 WL 1304269 (N.D. Cal. Apr. 5, 2011) ................................. 4

*United States v. Joyce,*
   No. 07-cr-00031, 2008 WL 2367307 (W.D. Pa. June 10, 2008) ..................................... 4, 5

*United States v. Lipscomb*,
   299 F.3d 303 (5th Cir. 2002) ............................................................................................ 3, 4

*United States v. Maad*,
   75 F. App'x 599 (9th Cir. 2003) ........................................................................................... 3

*United States v. Mase*,
   556 F.2d 671 (2d Cir. 1977) ............................................................................................... 12

*United States v. Rewald*,
   889 F.2d 836 (9th Cir. 1989) .......................................................................................... 3, 11

**Federal Statutes**

18 U.S.C. § 115 ........................................................................................................................... 2

18 U.S.C. § 1201 ......................................................................................................................... 2

**Other Authorities**

ABC7 News Bay Area, *How the release of Paul Pelosi attack video could impact suspect David DePape's trial* (Jan. 28, 2023), *available at* https://www.youtube.com/watch?v=2TeS_en434E (last accessed June 13, 2023) ......................................................................................................... 8

ABC7 News Bay Area, *Police body cam footage released in Paul Pelosi hammer attack* (Jan. 27, 2023), *available at* https://www.youtube.com/watch?v=MicAOAwuXOE (last accessed June 13, 2023) ............................................................................................................................. 8

Annie Vainshtein, S.*F. judge in DePape case allows access to dramatic video, audio footage of attack*, S.F. Chron., Jan. 25, 2023, *available at* www.sfchronicle.com/bayarea/article/s-f-judge-in-depape-case-allows-access-to-17742086.php (last accessed June 13, 2023) ...................................... 7

Berkeley IGS Poll, *Tabulations from a February 2023 Poll of California Registered Voters about Prominent California Politicians, Governor Newsom and the State Budget Deficit*, (Feb. 2023) available at https://escholarship.org/uc/item/60p8c1nr (last accessed June 13, 2023) ........................... 6

CBS San Francisco, *Golden Gate Park Road Renamed To Honor Nancy Pelosi*, May 21, 2012, available at https://www.cbsnews.com/sanfrancisco/news/golden-gate-park-road-renamed-to-honor-nancy-pelosi/ (last accessed June 13, 2023) ................................................................................. 5

Congressional Biography of Nancy Pelosi, *available at* https://bioguide.congress.gov/search/bio/P000197 (last accessed June 13, 2023) ................................ 5

Dustin Gardiner, *'They Are Criminals': What suspect in Pelosi attack said in interview*, S.F. Chron., Jan. 27, 2023, at A1, *available at* www.sfchronicle.com/politics/article/they-are-criminals-police-interrogation-17746622.php (last accessed June 13, 2023) .................................................... 10

Fed. R. Evid. 403 ............................................................................................................................ 7

Fed. R. Crim. P. 18 ........................................................................................................... 1, 3, 4, 11

Fed. R. Crim. P. 21 ............................................................................................................. 1, 2-3, 3

GSA, Speaker Nancy Pelosi Federal Building, *available at* https://www.gsa.gov/about-us/regions/region-9-pacific-rim/buildings-and-facilities/california/speaker-nancy-pelosi-federal-building (last accessed June 13, 2023) .................................................................................. 5

KPIX, *Paul Pelosi attack: Security camera video shows break-in by David DePape* (Jan. 27, 2023), *available at* https://www.youtube.com/watch?v=xwLbJveUgvs (last accessed June 13, 2023) ............ 8

KPIX, *Paul Pelosi attack: SFPD body cam video* (Jan. 27, 2023), *available at* https://www.youtube.com/watch?v=_VcttpwBzlY (last accessed June 13, 2023) ............................................ 8

KRON, *Confession tape: DePape confesses and explains why he targeted Pelosi* (Jan 27, 2023), *available at* https://www.youtube.com/watch?v=FFQEmwLYh1g (last accessed June 13, 2023 .......... 8

KRON, *Paul Pelosi attack body cam footage* (Jan. 27, 2023), *available at* https://www.youtube.com/watch?v=pgScddz3PXQ (last accessed June 13, 2023) ................................. 8

KTVU, *DePape in bizarre phone call to KTVU says he should have been 'more prepared' for Pelosi attack* (Jan. 27, 2023), *available at* https://www.youtube.com/watch?v=5ms-7NCI7Ag (last accessed June 13, 2023) ................................................................................................................ 7-8

KTVU, *Video of Paul Pelosi attacked by intruder gets released* (Jan. 27, 2023), *available at* https://www.youtube.com/watch?v=2w1FBQ-J4M4 (last accessed June 13, 2023) ............................. 7

NBC Bay Area, *Paul Pelosi Attack Footage, 911 Call Released* (Jan. 27, 2023), *available at* https://www.youtube.com/watch?v=ZCQkvF_RCIc (last accessed June 13, 2023) ............................. 8

San Francisco Department of Elections, Results for United States Representative, District 11, *available at* https://sfelections.org/results/20221108w/index.html (last accessed June 13, 2023) (Nov. 8, 2022) . 5

S.F. Chron., *Paul Pelosi attack: SF police interview David DePape following his arrest* (Jan. 27, 2023), *available at* https://www.youtube.com/watch?v=FOFSeTdYFRc (last accessed June 13, 2023) ................................................................................................................................... 10

U.S. Const. amend. V .................................................................................................................. 2, 4

## INTRODUCTION

David DePape is charged with attempting to kidnap longtime San Francisco Congressperson and then-Speaker of the House Nancy Pelosi, and with assaulting her husband Paul Pelosi with a hammer at their San Francisco home last October. The incident at the Pelosi residence has been the subject of pervasive media attention in the Bay Area in the intervening months. Indeed, over the defense's objection in state court, video footage of the incident was released to the local media, as was an audio recording of a police interrogation that occurred shortly after Mr. DePape's arrest, in which he made incriminating statements. Local media have also focused on Mr. DePape's allegedly bigoted political beliefs, further poisoning the well in the Bay Area. And survey research shows that a very high proportion of potential Bay Area jurors believe that Mr. DePape is already guilty of the crimes he is charged with, and that they would not be able to change their minds.

The Constitution and Federal Rule of Criminal Procedure 21 require transfer to a different district when pervasive pretrial publicity prevents a defendant from receiving a fair trial. Federal Rule of Criminal Procedure 18 also permits district courts to transfer venue within a judicial district based on prejudicial pretrial publicity, under a more lenient standard. Here, the extensive, prejudicial, and inflammatory media coverage in the Bay Area of Mr. DePape's alleged criminal conduct; the unique local prominence of Nancy Pelosi; the release and broadcast of a recording of Mr. DePape's confession during a police interrogation; and the relatively short interval between this incident and the trial—all warrant transferring venue out of the San Francisco Division of this Court. Accordingly, the Court should grant Mr. DePape's motion to change venue, and move this case out of the Northern District of California under Rule 21. Alternatively, the Court should transfer venue within the Northern District from the San Francisco Division to the Eureka Division under Rule 18.

## BACKGROUND[1]

According to the government, on October 28, 2022, in the early hours of the morning, Mr. DaPape broke into the residence of Nancy and Paul Pelosi in San Francisco by breaking a glass door

---

[1] Facts presented in this motion are drawn from the indictment, police reports, and other discovery in this matter. Inclusion of such facts does not constitute an admission that they are true. Mr. DePape reserves the right to contest the facts as presented following further investigation or other proceedings.

NOTICE OF MOT. AND MOT. TO CHANGE VENUE
*DEPAPE*, CR 22–00426 JSC

1

with a hammer.  Mr. DePape had planned to take Nancy Pelosi hostage and talk with her, and would break her kneecaps if she did not tell him the truth.  After entering the Pelosi residence, Mr. DePape found Paul Pelosi in bed, awoke him, and asked him where his wife was.  Paul Pelosi told Mr. DePape that his wife would not be home for days, and Mr. DePape said he would wait for her return.  Paul Pelosi called 911, and told the operator that there was an unknown man in his residence.  Minutes later, San Francisco Police Department (SFPD) officers knocked on the front door of the Pelosi residence, and saw Paul Pelosi and Mr. DePape jointly gripping a hammer.  An officer told them to drop the hammer, and Mr. DePape struck Paul Pelosi in the head with the hammer.  Officers then restrained and arrested Mr. DePape.  A few hours later, SFPD officers interrogated Mr. DePape about the events earlier that day and about his motives.  *See* Dkt. 3 at 2–4.  Mr. DePape was subsequently charged with attempted kidnapping of a federal officer, in violation of 18 U.S.C. § 1201(d) (Count 1); and with assault on the immediate family member of a federal official, in violation of 18 U.S.C. § 115(a)(1)(A) (Count 2).  *See* Dkt. 3.

This case was assigned to the San Francisco Division of this Court, and the originally assigned District Judge sua sponte recused himself, whereafter the case was reassigned within the San Francisco Division.  *See* Dkt. 6, 7.  Mr. DePape is in custody, and his trial is set to begin on November 13, 2023.  *See* Dkt. 39.

## ARGUMENT

I.  **Legal Standard**

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property without due process of law."  U.S. Const. amend. V.  Due process requires a trial by an impartial jury.  *In re Murchison*, 349 U.S. 133, 136 (1955).  The Sixth Amendment specifically guarantees "a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."  U.S. Const. amend. VI; *see also id.* Art. III, § 2, cl. 3.  "The Constitution's place-of-trial prescriptions, however, do not impede transfer of the proceeding to a different district at the defendant's request if extraordinary local prejudice will prevent a fair trial—a 'basic requirement of due process.'"  *Skilling v. United States*, 561 U.S. 358, 378 (2010) (quoting *Murchison*, 349 U.S. at 136).  Where there is conflict between the requirements of impartiality and vicinage, Federal Rule of

1  Criminal Procedure 21(a) provides that "[u]pon the defendant's motion, the court must transfer the
2  proceeding against that defendant to another district if the court is satisfied that so great a prejudice
3  against the defendant exists in the transferring district that the defendant cannot obtain a fair and
4  impartial trial there."[2]  Fed. R. Crim. P. 21(a).

5         The Supreme Court has long held that, when the community from which jurors are drawn is
6  sufficiently affected by adverse publicity or by the effects of the events at issue, or both, there arises a
7  presumption of prejudice such that voir dire cannot perform the usual function of securing a fair and
8  impartial jury.  *See Sheppard v. Maxwell*, 384 U.S. 333, 362–63 (1966); *Estes v. Texas*, 381 U.S. 532,
9  550–51 (1965); *Rideau v. Louisiana*, 373 U.S. 723, 726–27 (1963); *Irvin v. Dowd*, 366 U.S. 717,
10 725–28 (1961).  "Prejudice is presumed when the record demonstrates that the community where the
11 trial was held was saturated with prejudicial and inflammatory media publicity about the crime."
12 *United States v. Rewald*, 889 F.2d 836, 863 (9th Cir. 1989) (quoting *Harris v. Pulley*, 852 F.2d 1546,
13 1553 (9th Cir. 1988)).  Courts use a "totality of the circumstances" analysis to determine if presumed
14 prejudice has been established.  *Murphy v. Florida*, 421 U.S. 794, 799 (1975).  Where the potential of
15 prejudice is great, the voir dire process alone cannot assure an impartial jury.  *See Patton v. Yount*,
16 467 U.S. 1025, 1031 (1984) ("There are times when adverse pre-trial publicity can create such a
17 potential of prejudice in the community that jurors should not be believed if they claim they can be
18 impartial.").  Appellate review of district courts' rulings on motions to change venue is for abuse of
19 discretion.  *See, e.g., United States v. Maad*, 75 F. App'x 599, 601 (9th Cir. 2003) (reversing the
20 denial of a motion to change venue as an abuse of discretion).

21        A transfer of venue within the Northern District of California, i.e., an intradistrict transfer,
22 however, is governed by Federal Rule of Criminal Procedure 18, and is subject to a much lower legal
23 standard than for a transfer to a venue out of the Northern District of California, which is governed by
24 Rule 21.  *See, e.g., United States v. Lipscomb*, 299 F.3d 303, 340, 343–44 (5th Cir. 2002); *United*
25 *States v. Cloud*, No. 1:19-CR-02032-SMJ-1, 2021 WL 9406685, at *1 (E.D. Wash. Dec. 14, 2021)
26 (Mendoza, J.) ("[W]hether this case should be transferred to another division within this district [is] a

---

[2] Rule 21(a) mirrors the requirements of due process, so the constitutional standards govern the rule. *United States v. Rewald*, 889 F.2d 836, 862 n. 27 (9th Cir. 1989).

NOTICE OF MOT. AND MOT. TO CHANGE VENUE
*DEPAPE*, CR 22–00426 JSC
3

less burdensome standard" than an interdistrict transfer.); *United States v. Hirst*, No. 11-CR-0157-SBA, 2011 WL 1304269, at *1 (N.D. Cal. Apr. 5, 2011); *see also United States v. Joyce*, No. 07-cr-00031, 2008 WL 2367307, at *2–4 (W.D. Pa. June 10, 2008) (collecting cases). This makes good sense because an *intra*district transfer, unlike an *inter*district transfer, does not implicate the competing constitutional interests of the Sixth Amendment's Vicinage Clause—which requires federal criminal trials to take place in the state and district where the crime was committed—against the defendant's right to a fair trial rooted in the Due Process Clause. *See* U.S. Const. amend. VI; *Lipscomb*, 299 F.3d at 339 ("We must begin our analysis by recognizing an important distinction between *intra*district and *inter*district transfers: Only an interdistrict transfer implicates the Constitution." (emphasis original; citing the Sixth Amendment)); *see also United States v. Erwin*, 155 F.3d 818, 824 (6th Cir. 1998) ("Although the Sixth Amendment and Rule 18 require that a defendant's trial take place in the *district* where the crime was committed, there is no constitutional or statutory requirement that a defendant's trial take place in a specific courtroom or *division* within a federal judicial district." (emphasis original)); *accord Carrillo v. Squier*, 137 F.2d 648, 648 (9th Cir. 1943).

Under Rule 18, courts consider "the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." Fed. R. Crim. P. 18; *see also* N.D. Cal. Local Crim. R. 18-2 (permitting intradistrict transfers if "a transfer would be in the interest of justice based upon the convenience of the defendant and the witnesses and the prompt administration of justice"). But Rule 18's list of considerations is not exhaustive. And courts widely agree that "[p]ublicity surrounding the trial is a factor" under Rule 18. *See, e.g., United States v. Ford*, 812 F. Supp. 761, 771 (W.D. Tenn. 1991); *see also United States v. Balistrieri*, 778 F.2d 1226, 1228 (7th Cir. 1985) (affirming district court's sua sponte intradistrict transfer under Rule 18 based on the "considerable amount of publicity" surrounding the case in the original division). "The convenience of the prosecution, however, is not a factor to consider in changing venue." *United States v. Dickie*, 775 F.2d 607, 610 (5th Cir. 1985). Thus, federal courts will routinely grant intradistrict transfers of venue when the defendant shows that his case was the subject of prejudicial media coverage in the presumptively assigned divisional venue. *See, e.g., Cloud*, 2021 WL 9406685, at *1 (finding

intradistrict venue transfer was in the interest of justice to protect defendant's right to a fair trial); *Mathis*, 2015 WL 5012159, at *3–*5 (granting intradistrict transfer based in part on "extensive publicity"); *Joyce*, 2008 WL 2367307, at *2–*4 (granting intradistrict transfer based on "intense public interest in this case and the media coverage in the Erie Division"); *see also Ford*, 812 F. Supp. at 771–72 (granting government's request to select jurors from a different division based on prejudicial publicity in the original division, while conducting the trial itself in the original division).

## II. The extraordinary level of pretrial publicity concerning the Pelosi assault and Mr. DePape requires a transfer of venue out of the San Francisco Division of this Court.

### A. Nancy Pelosi is uniquely prominent in the San Francisco Bay Area.

Nancy Pelosi has served as a Congressperson representing various districts within the City of San Francisco since 1987. *See* Congressional Biography of Nancy Pelosi, *available at* https://bioguide.congress.gov/search/bio/P000197 (last accessed June 13, 2023). Pelosi twice served as Speaker of the House, and was serving as Speaker in October 2022. *See id.* Pelosi is extremely prominent and popular in San Francisco and the Bay Area. Since her first election in 1987, Pelosi's San Francisco constituents have elected and reelected her by extremely wide margins, with Pelosi typically receiving over 80% of the vote, margins that are uncommonly high in free, democratic elections. *See, e.g.,* San Francisco Department of Elections, Results for United States Representative, District 11, *available at* https://sfelections.org/results/20221108w/index.html (last accessed June 13, 2023) (Nov. 8, 2022) (showing Pelosi receiving 83.95% of the vote in November 2022 general election). Pelosi has also received the rare honor of having the Federal Building that sits across the street from the Ninth Circuit named in her honor, *see* GSA, Speaker Nancy Pelosi Federal Building, *available at* https://www.gsa.gov/about-us/regions/region-9-pacific-rim/buildings-and-facilities/california/speaker-nancy-pelosi-federal-building (last accessed June 13, 2023), and the City of San Francisco has likewise renamed a street in Golden Gate Park after her, *see* CBS San Francisco, *Golden Gate Park Road Renamed To Honor Nancy Pelosi*, May 21, 2012, *available at* https://www.cbsnews.com/sanfrancisco/news/golden-gate-park-road-renamed-to-honor-nancy-pelosi/ (last accessed June 13, 2023).

Objective data support the common-sense intuition that Pelosi is an extremely prominent and popular figure in the Bay Area. The Institute of Governmental Studies at the University of

California, Berkeley conducted a public opinion poll across different regions of California, asking whether respondents had a favorable or unfavorable opinion of Pelosi.  *See* Berkeley IGS Poll, *Tabulations from a February 2023 Poll of California Registered Voters about Prominent California Politicians, Governor Newsom and the State Budget Deficit*, (Feb. 2023) *available at* https://escholarship.org/uc/item/60p8c1nr (last accessed June 13, 2023).  In the San Francisco Bay Area,[3] 61% of registered voters had a favorable opinion of Pelosi.  By contrast, in the North Coast and Sierras region,[4] only 48% of registered voters had a favorable opinion of Pelosi, in line with the statewide average of 47% favorability.  *See id.* at 3, 12.

### B. Prospective Bay Area jurors have been inundated with media coverage of this case, including release of video footage of the assault on Paul Pelosi, the 911 audio recording, and the audio recording of the police interrogation of Mr. DePape shortly after his arrest.

Following the October 28 incident at the Pelosi residence, media coverage of those events in the Bay Area has been extensive.  Dr. Bryan Edelman, a psychologist and expert on the impact of pretrial publicity on juries, reviewed newspaper, television, and social media coverage of the incident at the Pelosi residence, and found 93 articles about the incident had been published in San Francisco print media between October 28, 2022, and April 12, 2023.  *See* Declaration of Bryan Edelman (Edelman Decl.) at 2, 11.  Local print media covered in detail Mr. DePape's alleged entry into the Pelosi home, his political beliefs, his alleged opinions, and his encounter with Paul Pelosi, including describing (and airing) the assault on Paul Pelosi in graphic detail.  *See id.*  According to Dr. Edelman's analysis, San Francisco media have provided an "overwhelming negative" depiction of Mr. DePape and his motives, in particular portraying him as a "proponent of right-wing hate."  *Id.* at 11.  Indeed, Dr. Edelman concluded that based on his media analysis and survey research, the San Francisco jury pool has been exposed to pervasive inflammatory and prejudicial pretrial publicity, which created a strong presumption of guilt locally.  *See id.* at 2–3.

---

[3] The Bay Area was defined as Alameda, Contra Costa, San Francisco, Marin, Napa, Sonoma, Solano, San Mateo, and Santa Clara counties.

[4] The North Coast/Sierras region was defined as Del Norte, Siskiyou, Modoc, Humboldt, Trinity, Lassen, Mendocino, Plumas, Sierra, Nevada, Lake, Alpine, Amador, Calaveras, Tuolumne, Mono, Mariposa, Inyo counties.

Further, numerous newspaper articles and editorials portray Mr. DePape as a bigot, who holds racist, antisemitic, misogynistic, Islamophobic, and homophobic beliefs, citing a now-deleted blog and Facebook page attributed to Mr. DePape.  *See* Edelman Decl. at 11–13 & App. C at 8–12, 17–20, 24–29, 32–35, 40–43, 46–48, 92–93, 255–57.  The Bay Area jury pool's exposure to such portrayals of Mr. DePape is especially damaging, particularly because any descriptions of Mr. DePape as a bigot would not be admissible at trial, having minimal or no relevance and being highly prejudicial. *See* Fed. R. Evid. 403; *see also, e.g., United States v. Hazelwood*, 979 F.3d 398, 411–14 (6th Cir. 2020) (finding district court abused its discretion under Rule 403 by admitting defendant's racist and sexist statements in fraud case, noting that "the fear is that the jury would judge [the defendant] for being a bigot rather than defrauding customers").

Local television media have also covered the incident extensively, and have repeatedly broadcast video footage of the alleged assault and of Mr. DePape breaking into the Pelosi home, as well as audio recordings of Mr. DePape's interrogation by the SFPD shortly after his arrest. Specifically, these three recordings were introduced into evidence in open court at Mr. DePape's preliminary hearing in state court by local prosecutors, and the state court subsequently ordered their release to the media, over Mr. DePape's objection that doing so would prejudice the local jury pool. *See* Annie Vainshtein, S.*F. judge in DePape case allows access to dramatic video, audio footage of attack*, S.F. Chron., Jan. 25, 2023, *available at* www.sfchronicle.com/bayarea/article/s-f-judge-in-depape-case-allows-access-to-17742086.php (last accessed June 13, 2023); Edelman Decl. App. C at 214–16.

After the state court's order releasing these recordings, all four major broadcast networks televised the footage in multiple contexts, and also posted the footage on their YouTube accounts, which list the number of views for the news segments showing the assault, and reflect that the videos have been viewed hundreds of thousands of times.  *See* Edelman Decl. at 24; *See also, e.g.,* KTVU, *Video of Paul Pelosi attacked by intruder gets released* (Jan. 27, 2023), *available at* https://www.youtube.com/watch?v=2w1FBQ-J4M4 (last accessed June 13, 2023) (listing 95,148 views); KTVU, *DePape in bizarre phone call to KTVU says he should have been 'more prepared' for Pelosi attack* (Jan. 27, 2023), *available at* https://www.youtube.com/watch?v=5ms-7NCI7Ag (last accessed June

13, 2023) (listing 325,896 views); NBC Bay Area, *Paul Pelosi Attack Footage, 911 Call Released* (Jan. 27, 2023), *available at* https://www.youtube.com/watch?v=ZCQkvF_RCIc (last accessed June 13, 2023) (listing 34,936 views); ABC7 News Bay Area, *Police body cam footage released in Paul Pelosi hammer attack* (Jan. 27, 2023), *available at* https://www.youtube.com/watch?v=MicAOAwuXOE (last accessed June 13, 2023) (listing 35,017 views); ABC7 News Bay Area, *How the release of Paul Pelosi attack video could impact suspect David DePape's trial* (Jan. 28, 2023), *available at* https://www.youtube.com/watch?v=2TeS_en434E (last accessed June 13, 2023) (listing 81,175 views); KPIX, *Paul Pelosi attack: SFPD body cam video* (Jan. 27, 2023), *available at* https://www.youtube.com/watch?v=_VcttpwBzlY (last accessed June 13, 2023) (listing 29,960 views); KPIX, *Paul Pelosi attack: Security camera video shows break-in by David DePape* (Jan. 27, 2023), *available at* https://www.youtube.com/watch?v=xwLbJveUgvs (last accessed June 13, 2023) (listing 42,238 views); KRON, *Paul Pelosi attack body cam footage* (Jan. 27, 2023), *available at* https://www.youtube.com/watch?v=pgScddz3PXQ (last accessed June 13, 2023) (listing 27,518 views); KRON, *Confession tape: DePape confesses and explains why he targeted Pelosi* (Jan 27, 2023), *available at* https://www.youtube.com/watch?v=FFQEmwLYh1g (last accessed June 13, 2023) (listing 17,543 views).

     A systematic survey confirms the obvious: prospective jurors in the Bay Area have been exposed to overwhelming pretrial publicity about Mr. DePape and the incident at the Pelosi residence. Specifically, Dr. Edelman conducted a community attitude survey of prospective jurors in all three jury divisions within the Northern District of California, i.e., the San Francisco-Oakland Division (hereafter, San Francisco Division),[5] the San Jose Division, and the Eureka Division, *see* N.D. Cal. General Order 6, § II (defining this Court's jury divisions), as well as the Phoenix Division of the district of Arizona. *See* Edelman Decl. at 28–32. The survey revealed that 77% of jurors in the San Francisco Division recognized the case, and that figure rose to 93% for those who regularly follow local news, leading Dr. Edelman to conclude both that there is bias in the San Francisco

---

[5] The San Francisco and Oakland Divisions of this Court share a single joint jury division. *See* N.D. Cal. General Order 6, § II (defining counties that comprise the "San Francisco-Oakland jury division").

1   Division jury pool, and that this bias stems from exposure to pretrial publicity.  *See id.* at 29.
2   Surveyed prospective jurors in the San Francisco Division have already been exposed to especially
3   prejudicial information about this case.  Of the 77% of jurors familiar with this case, 38% had
4   personally viewed footage of Mr. DePape breaking into the Pelosi residence or striking Paul Pelosi in
5   the head with a hammer.  And another 25% had read, seen, or heard media describing the video of the
6   assault, even if they had not personally viewed it.  *See id.* at 3, 42–43.

7       While the alternative venues that were polled also had high rates of recognition of this case, the
8   depth of knowledge about this case was lower outside of San Francisco, indicating that bias is less
9   widespread elsewhere.  *See id.* at 29–30.  Specifically, the survey asked a series of questions about
10  whether the respondent had read, seen, or heard about six specific pieces of information about Mr.
11  DePape and the incident at the Pelosi residence that had been reported in the local media.  *See id.* at
12  30 & App. B at 6.  Polled prospective jurors in San Francisco showed a much higher level of detailed
13  knowledge of the case, with 55% percent recognizing at least four of the six pieces of information
14  about Mr. DePape and the incident at the Pelosi residence about which they were surveyed.  *See id.* at
15  30.  In Eureka, only 37% of respondents recognized four or more polled media items, indicating a
16  substantially lower level of detailed knowledge about this case, i.e., 18 percentage points lower.  *See*
17  *id.* at 4, 30.

18      Further, Dr. Edelman's survey research also shows that jurors in the San Francisco Division
19  believed that Mr. DePape was guilty at very high rates, and that they would be unable to alter their
20  opinions.  Specifically, as to Count 1, the attempted kidnapping charge, 55% of prospective jurors in
21  the San Francisco Division already believe that DePape is guilty.  *See id.* at 29.  By contrast, only
22  39% of jurors in the Eureka Division already believe Mr. DePape is guilty.  *See id.*  Further, 46% of
23  prospective jurors in the San Francisco Division said that Mr. DePape would have a difficult time
24  convincing them that he was not guilty of Count 1; whereas, only 38% of prospective jurors in the
25  Eureka Division gave the same response.  *See id.* at 29–30.  In sum, the extremely high level of
26  exposure to prejudicial media coverage of this case in the Bay Area supports transferring the venue
27  out of the San Francisco Division of this Court.  *See, e.g., Cloud*, 2021 WL 9406685 at *4
28  (transferring venue based on "extensive media coverage").

NOTICE OF MOT. AND MOT. TO CHANGE VENUE
*DEPAPE*, CR 22–00426 JSC

### C. The release and broadcast of incriminating statements by Mr. DePape during an SFPD interrogation support transferring venue.

Not just the prevalence of media attention on the Pelosi assault and Mr. DePape, but also its extremely prejudicial contents, further necessitate a change of venue away from the Bay Area. One important factor identified in the leading Supreme Court case on prejudicial pretrial publicity is whether the media coverage contained any "confession or other blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight." *Skilling*, 561 U.S. at 382 (affirming denial of change-of-venue motion based in part on the lack of any confession or other blatantly prejudicial information in media coverage of Enron collapse and Jeffrey Skilling's role therein). Here, unlike the media coverage in Houston of the white-collar case against a former Enron executive in *Skilling*, the Bay Area media's coverage included reporting on and broadcasting of Mr. DePape's interrogation by SFPD officers shortly after his arrest, in which he made incriminating statements, including stating that he planned to hold Nancy Pelosi hostage, that he broke into the Pelosi residence through a window with a hammer, that he struck Paul Pelosi on the head with a hammer with "full force," and that he did not regret the attack. *See, e.g.,* Dustin Gardiner, *'They Are Criminals': What suspect in Pelosi attack said in interview*, S.F. Chron., Jan. 27, 2023, at A1, *available at* www.sfchronicle.com/politics/article/they-are-criminals-police-interrogation-17746622.php (last accessed June 13, 2023) (recounting DePape's statements that he broke into the Pelosi residence through a glass door, that he planned to hold Nancy Pelosi hostage, that he struck Paul Pelosi in the head with a hammer with "full force," and that he did not regret attacking Paul Pelosi); Edelman Decl. App. at 249–51; *see also* S.F. Chron., *Paul Pelosi attack: SF police interview David DePape following his arrest* (Jan. 27, 2023), *available at* https://www.youtube.com/watch?v=FOFSeTdYFRc (last accessed June 13, 2023) (full recording of police interrogation). According to Dr. Edelson's media analysis, Mr. DePape's interrogation by and incriminating statements to the SFPD were widely reported on. *See* Edelson Decl. at 24–28.

Indeed, the Supreme Court has repeatedly emphasized that a broadcasted confession by a criminal defendant is uniquely prejudicial and is "likely imprinted indelibly in the mind of anyone who watched it." *Skilling*, 561 U.S. at 383; *see id.* ("The defendant's own confession is probably the most probative and damaging evidence that can be admitted against him." (cleaned up) (quoting

*Parker v. Randolph*, 442 U.S. 62, 72 (1979) (plurality opinion))); *Rideau*, 373 U.S. at 726–27; *Irvin*, 366 U.S. at 719. Accordingly, the release and broadcast of Mr. DePape's interrogation by the SFPD strongly supports transferring venue out of the Bay Area given the uniquely prejudicial nature of such evidence. *See id.*

        **D.**    **The recency of the incident and swift trial schedule also support a change in venue out of the Bay Area.**

Another important factor in determining whether to transfer venue is the amount of time that has elapsed since the alleged offense conduct (and the related media coverage thereof) and the trial. *See Skilling*, 561 U.S. at 383. In *Skilling*, the Court found that the four years between Enron's bankruptcy and Skilling's trial militated against a transfer of venue because the level of media attention had decreased in the intervening years. *See id.* Here, by contrast, Mr. DePape's trial is set to begin on November 13, 2023, *see* Dkt. 39, little more than a year after the incident at the Pelosi residence, a swift schedule for a federal criminal trial and far closer in time than in *Skilling*. *Cf. Skilling*, 561 U.S. at 383.

**III.**    **The Court should transfer venue either out of this District or to the Eureka Division of this Court.**

For all for all of the reasons outlined in Section II above, Mr. DePape has demonstrated that the San Francisco Division of this Court has been "saturated with prejudicial and inflammatory media publicity about the crime." *See Rewald*, 889 F.2d at 863. Having made this showing, Mr. DePape has demonstrated that prejudice should be presumed in the San Francisco Division, and that under Rule 21, venue should be transferred out of this District. *See id.* ("Prejudice is presumed when the record demonstrates that the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime.").

At the very least, however, the Court should exercise its discretion under Federal Rule of Criminal Procedure 18 and Local Criminal Rule 18-2 to transfer this matter from the San Francisco Division to the Eureka Division of this Court under a more lenient "interest of justice" standard. *See* Fed. R. Crim. P. 18; N.D. Cal. Local R. 18-2 ("Upon a Judge's own motion or the motion of any party, unless the case was specially assigned pursuant to the Assignment Plan, a Judge may order the Clerk to transfer a criminal case to a different courthouse if it appears that the case was not properly

1    assigned under Crim. L.R. 18-1(a), (b), (c) or (d) or that a transfer would be in the interest of justice
2    based upon the convenience of the defendant and the witnesses and the prompt administration of
3    justice."). The Second Circuit has recognized that under Rule 18, an intradistrict transfer is
4    warranted when extensive pretrial publicity, along with publicity during the trial itself, risks biasing
5    jurors in the originally assigned divisional venue. *See United States v. Mase*, 556 F.2d 671, 675–76
6    (2d Cir. 1977) ("We think that transferring the second trial to Hartford was an appropriate way to
7    accommodate the public's right to a speedy and public trial with the defendant's right to a fair trial.");
8    *id.* at 676 (noting that district court properly transferred venue within the District of Connecticut
9    based on the risk of "having newspaper stories read by the jurors" in the originally designated
10   division).
11          Here, for the reasons outlined in Section II above, Mr. DePape has demonstrated that there has
12   been an enormous amount of publicity in the Bay Area concerning the incident at the Pelosi
13   residence. The Eureka Division of this Court—which is not part of the Bay Area media market—is
14   much less exposed to the overwhelming publicity concerning this case. Dr. Edelman's survey
15   research supports this conclusion, with 55% of prospective San Francisco jurors recognizing four or
16   more details about this case that were reported in the media, and only 37% having the same level of
17   recognition in Eureka. *See* Edelman Decl. at 30.
18          Further, typical remedial measures used during voir dire—such as asking prospective jurors
19   about their familiarity with this case and whether they could be fair and unbiased—will not be
20   effective given the overwhelming publicity about this matter in the Bay Area. Specifically, social
21   scientific research shows that prospective jurors often unconsciously minimize the depth of their
22   knowledge about high-profile cases during voir dire, and when asked open-ended questions about a
23   case, are often unable to recall much specific information, known as the "minimization effect." *See*
24   Edelman Decl. at 32–42. Here, for example, 67% of jurors in the San Francisco survey, when asked
25   directly whether they had read, seen, or heard if Mr. DePape's actions were politically motivated
26   agreed with the statement, yet when asked open-ended questions about the case, only 36% of
27   prospective jurors volunteered this detail. *See id.* at 38. Likewise, on average, the prospective jurors
28   polled were only able to recall less than one (.82 on average) factual detail about the case in response

to an open-ended question, but on average were aware of 3.2 additional details when asked a series of direct questions about facts reported in the media about the case. *See id.* Indeed, over 95% of prospective jurors surveyed in the San Francisco Division recognized at least one additional media item about the case that they did not mention in their open-ended answer. *See id.*

The problem for Mr. DePape is that during a potential voir dire in San Francisco, he cannot ask jurors if they are aware of specific facts about the case, because by doing so, his counsel would be improperly swaying the jury. Yet we know that when asked open-ended questions about their exposure to pretrial publicity, jurors almost always fail to reveal the full extent of their exposure to prejudicial media. *See id.* at 40–42. Accordingly, lesser remedial measures, including more-extensive and in-depth voir dire, are unlikely to ensure that Mr. DePape receives a fair trial by an unbiased jury in San Francisco. *See id.* at 32–42.

This Court, moreover, has routinely exercised its authority to transfer divisional venue under the liberal standard of Rule 18 and Local Rule 18-2. For example, this Court recently exercised this power to reassign numerous cases from the San Jose Division to the Oakland Division, including a massive 22-defendant racketeering prosecution. *See, e.g., United States v. Cervantes*, No. 21-cr-00358-YGR, Dkt. 153 (N.D. Cal. Nov. 15, 2021) (summary order transferring numerous criminal cases from the San Jose Division to the Oakland Division "in the interest of the prompt administration of justice and the proportionate division of caseload throughout the district"). The Court issued these summary orders without any adversarial briefing, and citing only the need for the prompt administration of justice and to balance judicial caseloads. *See id.*

Here, Mr. DePape's basis for seeking a transfer of divisional venue is rooted in much weightier concerns of constitutional significance, i.e., his ability to get a fair trial. While concerns about judicial caseloads and efficiency are no doubt important, these orders illustrate how liberally the Court exercises its authority under Rule 18. Thus, even if the Court does not determine the level of prejudicial pretrial publicity in the Bay Area rises to the level of presumed prejudice that would warrant an interdistrict transfer, Mr. DePape has certainly demonstrated a sufficient level of prejudicial publicity in the Bay Area under Rule 18 and Local Rule 18–2. *See, e.g., United States v. Cortez*, 251 F.R.D. 237, 237–38 (E.D. Tex. 2007) (granting intradistrict transfer under Rule 18 based

on pervasive "prejudicial pretrial publicity" based on "the interest of due process and fairness," even where defendant had not established the level of prejudicial "publicity render[ed] virtually impossible a fair trial by an impartial jury" in the originally assigned division).

## CONCLUSION

For the foregoing reasons, the Court should transfer venue out of the Northern District of California. Alternatively, the Court should transfer venue from the San Francisco Division to the Eureka Division of the Northern District of California.

Dated:     June 14, 2023                             Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

              /S
ANGELA CHUANG
TODD M. BORDEN
Assistant Federal Public Defenders