1  ISMAIL J. RAMSEY (CABN 189820)
   United States Attorney
2
   THOMAS A. COLTHURST (CABN 99493)
3  Chief, Criminal Division

4  HELEN L. GILBERT (NYBN 4736336)
   LAURA VARTAIN HORN (CABN 258485)
5  KYLE F. WALDINGER (CABN 298752)
   Assistant United States Attorneys
6
       450 Golden Gate Ave, 10th Floor
7      San Francisco, CA 94102
       Telephone: (415) 436-7200
8      Fax: (415) 436-7234
       Email: Helen.Gilbert@usdoj.gov
9             Laura.Vartain@usdoj.gov
              Kyle.Waldinger@usdoj.gov
10
   Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:22-CR-426-JSC |
| Plaintiff, | **UNITED STATES' SURREPLY OPPOSING DEFENDANT'S MOTION TO CHANGE VENUE** |
| v. | Trial Date:     November 6, 2023 |
| DAVID WAYNE DEPAPE, | Hearing Date:  July 19, 2023 |
| | Hearing Time:  10:00 a.m. |
| Defendant. | |
| | Judge: Hon. Jacqueline Scott Corley |

USA's SURREPLY OPPOSING MOTION TO CHANGE VENUE
3:22-CR-426-JSC

# INTRODUCTION

The government responds to two new arguments and evidence raised in the defendant's Reply In Support of Motion to Change Venue. Dkt. 48 (Def. Reply).

**A.   Congresswoman Nancy Pelosi's Representation of a Subset of the Likely Potential Venire Is Not De Facto Prejudicial and Can Be Addressed Through Voir Dire.**

The defendant posits that "a substantial portion of the jury pool will themselves be personally represented by Nancy Pelosi in Congress" and this "creates yet another unique reason to presume prejudice here," especially because Congresswoman Pelosi is "a long-serving Congressperson routinely reelected by wide margins." Def. Reply at 10:18-11:2. The defendant is simply incorrect that any members of the venire who are represented by Congresswoman Pelosi cannot be trusted to set aside their personal views of her.[1] This is exactly the type of inquiry that is appropriate during voir dire, and there is no reason to generally disbelieve a venire member's response that they can be fair and impartial simply due to the fact that they are represented in Congress by one of the victims. The defendant's reliance on the dissent in *United States v. Poludniak*, 657 F.2d 948 (8th Cir. 1981), is of little persuasion, as the government cited this case in its Opposition for the majority's holding that no change in venue was necessary where all potential jurors were represented by one of the victims, a sitting U.S. Senator, who was also a witness at trial. *Id*. at 954-55. As the Eighth Circuit explained in *Poludniak*, any potential prejudice was remedied during extensive voir dire:

> Each potential juror was questioned individually about his political affiliations and attitude toward Senator Eagleton as a witness. Each was asked if he had ever worked for or against the Senator in a campaign and whether he had ever requested or received assistance from the Senator's office. Jurors were then asked whether they would be

---

[1] The defendant's argument that Congresswoman Nancy Pelosi represents "a substantial portion of the jury pool" is overstated. Congresswoman Pelosi currently represents the 11th Congressional District of California. *See* Representative Nancy Pelosi, Congress.Gov, https://www.congress.gov/member/district/nancy-pelosi/P000197 (last visited July 16, 2023). This congressional district includes most, but not all, of San Francisco County by land mass and has a total population, as of 2021, of 702,058 people. *See* United States Census, 118th Congress of the United States, California-Congressional District 11 Map, https://www2.census.gov/geo/maps/cong_dist/cd118/cd_based/ST06/CD118_CA11.pdf (last visited July 16, 2023). U.S. Census data also for 2021 show that the seven counties that make up the San Francisco-Oakland jury pool had a combined population of 5,237,131. *See* U.S. Census, Annual Estimates of the Resident Population for Counties: April 1, 2020 to July 1, 2022, https://www.census.gov/data/tables/time-series/demo/popest/2020s-counties-total.html (last visited July 16, 2023). Therefore, assuming that the San Francisco-Oakland jury pool tracks the population of those counties, Congresswoman Pelosi represents approximately 13% of the potential venire.

USA's SURREPLY RE: VENUE MOTION   1
3:22-CR-426-JSC

      inclined to believe him any more or less than any other witness and whether they had any strong feelings for or against him. Satisfactory answers were given to these questions.

*Id*. at 955.[2]

The defendant intimates that the reelection of Congresswoman Pelosi by "wide margins" is relevant to this inquiry, but this argument smacks of reliance on community voting patterns that other courts have routinely rejected. In *United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976), the defendants were former Nixon administration officials charged with crimes related to the Watergate scandal who moved to change venue prior to trial. *Id*. at 52, 59. The district court denied the motion and the Court of Appeals, sitting en banc, affirmed. The dissent noted potential political bias, stating that 81.8% and 78.1% of the District of Columbia voted for President Nixon's Democratic opponents in the 1968 and 1972 elections, respectively. *Id*. at 160 (MacKinnon, J., concurring in part and dissenting in part). In response, the Court of Appeals firmly rejected the "intimation that a community's voting patterns are at all pertinent to venue." *Id.* at 64 n.43. District Courts in the District of Columbia have rejected similar arguments to transfer venue in the criminal cases arising out of the breach of the U.S. Capitol on January 6, 2021. *See, e.g.*, *United States v. Nordean*, No. 1:21-cr-175-TJK, Dkt. No. 531, slip op. at 1, 5 (D.D.C. Nov. 9, 2022), attached as Ex. A (rejecting alleged "Proud Boys" defendants' argument to transfer venue due, in part, to the lack of political diversity in D.C. and noting every other court in the District of Columbia had also denied motions to transfer venue in criminal cases arising out of events of January 6, 2021).

//

//

---

[2] The defendant's reliance on *United States v. Moody*, 762 F. Supp. 1485 (N.D. Ga. 1991), is misplaced. The district court did not transfer venue because of the prominence of the victim, but instead because "much prejudicial information ha[d] reached the public through news accounts detailing defendant's past criminal record; defendant's conviction in the obstruction of justice trial in December, 1990; defendant's reliance on the insanity defense in that trial; the government's evidence against defendant; and statements of federal investigating officers concerning defendant's guilt." *Id*. at 1490. Furthermore, in considering where to transfer the case, the court looked to larger communities because "[s]everal courts have suggested that a venue change is usually more effective if it is to a more, rather than less, metropolitan community because a big case in a small town quickly becomes a *cause celebre* and the focus for substantially more publicity than existed at the time the decision to transfer was made. . . ." *Id*. (internal quotations and citations omitted).

USA's SURREPLY RE: VENUE MOTION     2
3:22-CR-426-JSC

### B. Voir Dire Is Entirely Capable of Mitigating Any Potential Prejudice from the Limited, Fleeting Coverage of the Defendant's Immigration Status and Allegations of Sexual Abuse.

The defendant argues that additional media coverage of the defendant's immigration status and allegations that the defendant sexually abused his stepchildren support his argument that "media coverage of this case has been extensive, prejudicial, and often inflammatory." Def. Reply at 3:11-13, 3:13-5:8. But the defendant's own filing shows that these media reports were very limited, occurred in the first two weeks after the conduct at issue here, and were reported nationally, indicating nothing about a particular prejudice in the San Francisco-Oakland jury pool.

The seven stories cited by the defendant that covered his immigration status were all published on November 3, 2022, less than a week after the October 28, 2022 conduct charged here. *See* Def. Reply at 3:18-4:16; *see also* Declaration of Angela Chuang (Chuang Decl.) Exs. A-F. To the extent that reporting on the defendant's immigration status is even prejudicial, this is not the type of extensive coverage that presumes the entire jury pool will be prejudiced. *See* United States' Opposition to Defendant's Motion to Change Venue (Gov. Opp.) at 16:2-17:3 (demonstrating that the release of much more inflammatory information about defendants was found not to create a presumption of prejudice). Additionally, the passage of time between this reporting and the November 6, 2023 trial date can and will mitigate any potential prejudice. *See* Gov. Opp. at 15:14-16:1. Finally, one of the articles relied upon by the defendant is from *The Washington Post*, a national newspaper, *see* Chuang Decl. Ex. F, and a quick search reveals that the coverage of the defendant's immigration status was national news. *See, e.g.*, Rebecca Shabad and Julia Ainsley, *Suspect in Paul Pelosi attack was in U.S. illegally, immigration officials say*, NBC News (Nov. 3, 2022), https://www.nbcnews.com/politics/immigration/suspect-paul-pelosi-attack-was-us-illegally-immigration-officials-say-rcna55441; Anders Hagstrom, *Pelosi attack suspect David DePape, an illegal immigrant, may face deportation after criminal trial*, Fox News (Nov. 3, 2022), https://www.foxnews.com/politics/pelosi-attack-suspect-david-depape-illegal-immigrant-may-face-deportation-criminal-trial; Priscilla Alvarez, Immigration officials say Pelosi attacker was in US illegally, CNN (Nov. 3, 2022), https://www.cnn.com/2022/11/03/politics/david-depape-paul-pelosi-attack/index.html, Eileen Sullivan, *Suspect in Pelosi Attack Was in the U.S. Illegally, Officials Say*, N.Y. Times (Nov. 3, 2022), https://www.nytimes.com/2022/11/03/us/politics/pelosi-attack-depape-illegal-

immigration.html. To the extent that defendant's immigration status is even prejudicial, there is nothing indicating that the San Francisco-Oakland jury pool is so uniquely prejudiced by this information that changing trial to a different venue would mitigate it.[3] Instead, as the D.C. Circuit stated in *Haldeman*, "a change of venue would [be] of only doubtful value." 559 F.3d at 64 n.43; *see also United States v. Bochene*, 579 F. Supp. 3d 177, 182 (D.D.C. 2022) ("The fact that there has been ongoing media coverage of the breach of the Capitol and subsequent prosecutions, both locally and nationally, means that the influence of that coverage would be present wherever the trial is held." (internal quotations and citations omitted)).

The defendant claims that Bay Area media also reported that the defendant sexually abused his stepchildren, but then cites only a *New York Post* article published on October 30, 2022, and an SFist post published November 15, 2022 that simply regurgitates, with attribution, other news coverage and includes one paragraph about the *New York Post* article. Chuang Decl. Exs. G, H. Coverage of these allegations appears to have been incredibly limited and also in the weeks after the incident.

Nothing in these newly cited articles demonstrates that the San Francisco-Oakland jury pool is so tainted that the voir dire process cannot ferret out any potential prejudice that they may have caused.

DATED: July 17, 2023

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

  /s/
HELEN L. GILBERT
LAURA VARTAIN HORN
KYLE F. WALDINGER
Assistant United States Attorneys

---

[3] The defendant claims that the government "intentionally released" prejudicial information about his immigration status and that this is a factor the Court can consider in favor of changing venue. Def. Reply at 4:6-20. The defendant's articles show merely that the Department of Homeland Security issued a one-line statement to the media that "U.S. Immigration and Customs Enforcement (ICE) lodged an immigration detainer on Canadian national David Depape with San Francisco County Jail, Nov. 1, following his Oct. 28 arrest." *See* Chuang Decl. Exs. E, F. This is basic information about the defendant that could have legitimately been disclosed at a detention hearing. To the extent that the Court considers whether any parties have generated media coverage, the defendant's and his state counsel's statements to the media have been more extensive. *See, e.g.*, Gov. Opp. at 3:5-11; 15 n.6. The defendant relies upon *United States v. Diehl-Armstrong*, 739 F. Supp. 2d 786 (W.D. Pa. 2010), but there the district court denied a motion to change venue under Rule 18 due in part to the "significant extent of the publicity in this matter . . . generated by the Defendant herself." *Id*. at 797-98. Indeed, the coverage that the defendant claims is most prejudicial—regarding his personal beliefs and allegations of sexual abuse—come from non-governmental sources.

USA's SURREPLY RE: VENUE MOTION     4
3:22-CR-426-JSC