JODI LINKER
Federal Public Defender
Northern District of California
ANGELA CHUANG
TODD M. BORDEN
Assistant Federal Public Defenders
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:         Angela_Chuang@fd.org

Counsel for Defendant DePape

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | Case No.: CR 22–00426 JSC |
|---|---|
| Plaintiff, | **NOTICE OF MOTION AND MOTION TO ACCESS AND INSPECT CRIME SCENE** |
| v. | |
| DAVID WAYNE DEPAPE, | **Court:**           Courtroom 8, 19th Floor |
| Defendant. | **Hearing Date:**  August 2, 2023 |
| | **Hearing Time:**  11:30 a.m. |

TO: **ISMAIL J. RAMSEY, UNITED STATES ATTORNEY;
LAURA VARTAIN HORN, KYLE F. WALDINGER, AND HELEN GILBERT,
ASSISTANT UNITED STATES ATTORNEYS**

PLEASE TAKE NOTICE that counsel for defendant DAVID WAYNE DEPAPE moves this Court for an order allowing the defense team to access and inspect the crime scene. This motion is made pursuant to the Constitution of the United States; the attached memorandum of points and authorities and accompanying exhibits; all other applicable case and statutory authority; and such evidence and argument as may be presented at the motion hearing.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................................ii

INTRODUCTION ................................................................................................................................1

BACKGROUND ..................................................................................................................................2

ARGUMENT ........................................................................................................................................3

    I.    The Court should issue a discovery order—subject to appropriate time, place, and manner conditions—allowing Mr. DePape's counsel and investigator brief access to inspect the crime scene. ........................................................................................................3

        A.    Under the Fifth Amendment right to due process and the Sixth Amendment right to effective assistance of counsel, courts may issue orders allowing defense counsel to inspect a crime scene under the control of a third party. .....................3

        B.    Under the specific circumstances here, the Constitution requires the Court to issue an order allowing Mr. DePape's counsel and investigator brief access to the alleged crime scene to fairly and effectively prepare his defense. ...................7

        C.    The Court can properly balance Mr. Depape's constitutional rights with the Pelosis' privacy interests by narrowly tailing the discovery order to include appropriate time, place, and manner conditions. ................................................11

CONCLUSION..................................................................................................................................11

# TABLE OF AUTHORITIES

**Federal Cases**

*Chambers v. Mississippi*,
  410 U.S. 284 (1973) .................................................................................................... 3, 7

*In re Oliver*,
  333 U.S. 257 (1948) ......................................................................................................... 3

*McMann v. Richardson*,
  397 U.S. 759 (1970) ......................................................................................................... 3

*Strickland v. Washington*,
  466 U.S. 668 (1984) ......................................................................................................... 3

*Thomas v. Kuhlman*,
  255 F. Supp. 2d 99 (E.D.N.Y. 2003) ............................................................................... 4

*United States v. Armstrong*,
  621 F.2d 951 (9th Cir. 1980) ....................................................................................... 6, 7

*United States v. Bahamonde*,
  445 F.3d 1225 (9th Cir. 2006) ............................................................................... 7, 8, 10

*United States v. Richter*,
  488 F.2d 170 (9th Cir. 1973) ................................................................................ 6, 7, 10

*United States v. W.R. Grace*,
  526 F.3d 499 (9th Cir. 2008) ..................................................................................... 7, 10

*Wardius v. Oregon*,
  412 U.S. 470 (1973) ......................................................................................................... 7

*Wiggins v. Smith*,
  539 U.S. 510 (2003) ......................................................................................................... 3

*Williams v. Washington*,
  59 F.3d 673 (7th Cir. 1995) ................................................................................... 3-4, 4, 9

**State Cases**

*Commonwealth v. Matis*,
  915 N.E.2d 212 (Mass. 2006) ................................................................................ 5, 9, 10

*Henshaw v. Commonwealth*,
  451 S.E.2d 415 (Va. App. 1994) ........................................................................... 6, 9, 10

*State in Interest of A.B.*,
   99 A.3d 782 (N.J. 2014) .................................................................................. 1, 4, 10, 11

*State v. Brown*,
   293 S.E.2d 569 (N.C. 1982) ............................................................................................ 5

*State v. Gonsalves*,
   661 So.2d 1281 (Fla. Ct. App. 1995) ........................................................................... 6, 9

*State v. Lee*,
   461 N.W.2d 245 (Minn. Ct. App. 1990) ..................................................................... 4, 11

*State v. Tetu*,
   386 P.3d 844 (Haw. 2016) .................................................................................. 5, 6, 10, 11

**Other Authorities**

Fed. R. Crim. P. 2 .................................................................................................................. 7
Fed. R. Crim. P. 16 ................................................................................................................ 7
Hawaiʻi Const., art. I, § 5 ...................................................................................................... 5
Hawaiʻi Const., art. I, § 14 .................................................................................................... 5
U.S. Const. amend. V ................................................................................................... 3, 5, 6
Virginia Const., art. I, § 11 ................................................................................................... 6

**INTRODUCTION**

David DePape is charged with attempting to kidnap then-Speaker of the House Nancy Pelosi, and with assaulting her husband Paul Pelosi at their San Francisco residence in October of last year. The charged incident took place entirely at the Pelosi residence. After the incident, numerous local and federal law enforcement officers conducted an extensive search of the Pelosi residence, including officers from the San Francisco Police Department (SFPD), the Federal Bureau of Investigation (FBI), and the United States Capitol Police (Capitol Police). But Mr. DePape's defense team has been refused access to the scene.

The Fifth Amendment guarantees that no person may be deprived of life, liberty, or property without due process of law, and the Sixth Amendment guarantees defendants access to effective assistance of counsel in criminal proceedings. As many courts have recognized, these rights require a criminal defendant, through his counsel and investigator, to have access to a private residence that was the scene of an alleged crime, if the defense makes a minimal threshold showing of articulating a reasonable basis to believe a defense inspection of the crime scene will lead to relevant evidence on a material issue. *See, e.g., State in Interest of A.B.*, 99 A.3d 782, 793 (N.J. 2014) ("[W]hen the defense has made a legitimate request to inspect a crime scene that is an alleged victim's home and has articulated a reasonable basis to believe the inspection will lead to relevant evidence on a material issue, then, subject to appropriate time, place, and manner restrictions intended to protect the privacy interests of the alleged victim and her family, the discovery should be granted.").

Here, Mr. DePape can make such a showing because the critical 22 minutes between Mr. DePape's alleged entry into the residence and the SFPD's arrival at the front door were not captured on video, and the defense team's understanding of Mr. DePape's and Mr. Pelosi's movements within the residence during that period, along with the relative distances between the various locations, is critical for Mr. DePape's ability to present an effective defense, particularly when cross-examining any witnesses concerning Mr. DePape's and Mr. Pelosi's movements in the residence. And while the Pelosis have a privacy interest in their residence, this interest does not overcome Mr. DePape's competing constitutional rights in this context. *See id.* Further, any privacy concerns the Pelosis have can be addressed through appropriate time, place, and manner conditions on the defense's inspection

of the residence.

Mr. DePape thus respectfully requests the Court to issue a discovery order allowing his counsel and investigator brief access to inspect the Pelosi residence.

## BACKGROUND[1]

According to the government, Mr. DePape broke into the residence of Nancy and Paul Pelosi in the early hours of the morning on October 28, 2022. (Dkt. 3 at 4.) The government alleges that Mr. DePape had planned to kidnap Nancy Pelosi. (Dkt. 3 at 5.) After entering the Pelosi residence, Mr. DePape found Mr. Pelosi in bed, awoke him, and asked him where his wife was. (Dkt. 3 at 2, 4.) Mr. Pelosi told Mr. DePape that his wife would not be home for days, and Mr. DePape said he would wait for her return. (Dkt. 3 at 2, 4.) Mr. Pelosi called 911, and minutes later, SFPD officers knocked on the front door of the Pelosi residence and saw Mr. Pelosi and Mr. DePape jointly gripping a hammer. (Dkt. 3 at 2–3.) An officer told them to drop the hammer, and Mr. DePape struck Mr. Pelosi in the head with the hammer. (Dkt. 3 at 3.) Officers then restrained and arrested Mr. DePape. (Dkt. 3 at 3.) After the incident, the SFPD, the FBI, and the Capitol Police searched the Pelosi residence for an extended period. (Declaration of Catherine Goulet (Goulet Decl.) ¶ 5.) The government subsequently charged Mr. DePape with attempted kidnapping of a federal officer, and with assault on the immediate family member of a federal official. (Dkt. 3.)

In preparation for trial, Mr. DePape's counsel asked the government to facilitate an inspection of the Pelosi residence by the defense team, and offered to consider any reasonable requirements in sensitivity to the Pelosis' privacy. (Goulet Decl. ¶ 5 & Ex. A.) The government replied that they had passed along the request to the Pelosis' attorney, "which was declined." (*Id.* Ex. A) Mr. DePape is currently in custody, and his trial is set to begin on November 13, 2023. (Dkt. 39.)

---

[1] Facts presented in this motion are drawn from the indictment, police reports, and other discovery in this matter. Inclusion of such facts does not constitute an admission that they are true. Mr. DePape reserves the right to contest the facts as presented following further investigation or other proceedings.

NOTICE OF MOT. AND MOT. TO ACCESS AND INSPECT CRIME SCENE
*DEPAPE*, CR 22–00426 JSC
2

**ARGUMENT**

**I. The Court should issue a discovery order—subject to appropriate time, place, and manner conditions—allowing Mr. DePape's counsel and investigator brief access to inspect the crime scene.**

   **A. Under the Fifth Amendment right to due process and the Sixth Amendment right to effective assistance of counsel, courts may issue orders allowing defense counsel to inspect a crime scene under the control of a third party.**

The Fifth Amendment prohibits the government from "depriv[ing any person] of life, liberty, or property without due process of law," U.S. Const. amend. V, and the Sixth Amendment guarantees a criminal defendant "assistance of counsel for his defense," U.S. Const. amend. VI. The Supreme Court has held that "[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations," which includes the right to be represented by counsel. *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) (citing *In re Oliver*, 333 U.S. 257, 273 (1948)). But mere representation is not enough to satisfy the Sixth Amendment, since "the right to counsel is the right to effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (citing *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

In determining counsel's obligations under the Sixth Amendment, the Supreme Court has "long referred [to the American Bar Association's standards] as guides to determining what is reasonable." *Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (internal quotations omitted) (quoting *Strickland*, 466 U.S. at 688). These standards impose on defense counsel a "duty to investigate in all cases." American Bar Association Standards for Criminal Justice § 4-4.1(a) (4th ed. 2015). This duty "is not terminated by . . . the apparent force of the prosecution's evidence." *Id.* § 4-4.1(b). The ABA Standards further specify that defense counsel's investigation should "include efforts to secure relevant information in the possession of the prosecution, law enforcement authorities, and others, *as well as independent investigation*." *Id.* § 4-4.1(c) (emphasis added). Counsel's investigation should also include independent evaluation of the prosecution's evidence, "including possible re-testing or re-evaluation of physical, forensic, and expert evidence.*" Id.* § 4-4.1(c).

Decisions of several federal courts confirm that defense counsel's failure to visit a private residence, which was the scene of the alleged crime, violated the Sixth Amendment's guarantee of effective assistance of counsel. *See, e.g., Williams v. Washington*, 59 F.3d 673, 680–82 (7th Cir.

1995). Specifically, the Seventh Circuit in *Williams* reasoned that "[c]ounsel has a duty to conduct an independent investigation of his client's case or to articulate a strategic reason for his failure to do so." *Id.* at 680 (finding trial counsel rendered ineffective assistance by, inter alia, failing to visit the home where the rape was alleged to have taken place). Other courts have also found that a defense attorney's failure to conduct an in-person inspection of the crime scene, including when it is a private residence, constituted ineffective assistance of counsel. *See, e.g., Thomas v. Kuhlman*, 255 F. Supp. 2d 99, 109, 112 (E.D.N.Y. 2003) (finding trial counsel rendered ineffective assistance by failing to perform an inspection of the crime scene, rendering counsel unable to refute erroneous prosecution evidence). The court in *Kuhlman* noted that this deficiency was not rescued by due diligence in other respects, stating that "[a]lthough defense counsel's performance was, in general, highly professional and efficacious, his failure to perform an adequate investigation in preparation for trial rendered his performance constitutionally ineffective." *Id.* at 101.

Criminal defendants have a Fifth and Sixth Amendment right to inspect the scene of the alleged crime where the scene is a private residence if the defendant makes a threshold showing of relevance and materiality. *See, e.g, State in Int. of A.B.*, 99 A.3d 782, 791–92 (N.J. 2014) (collecting cases). For example, the Supreme Court of New Jersey has held that the Sixth Amendment right to effective assistance of counsel in a criminal proceeding includes the right to conduct a reasonable investigation of a private residence to prepare a defense, so long as the privacy interests of the residence's owner are balanced through appropriate time, place, and manner conditions on any entry into the residence by the defense counsel and investigator. *Id.* at 793; *see also State v. Lee*, 461 N.W.2d 245, 247 (Minn. Ct. App. 1990) ("A brief inspection of the residence by defense investigators, regulated as to time, place and manner . . . could be less intrusive upon the victims' family than a defense effort to obtain equivalent information by compulsory process."). The time, place, and manner conditions imposed by the discovery order in *State of Interest of A.B.* included limiting the inspection to a reasonable length of time; conducting the inspection at a reasonable time determined by the owners of the residence; conducting the inspection in the prosecution's presence; and allowing the owners of the residence to choose whether to be present or absent during the inspection. 99 A.3d at 784, 785, 787, 789, 794. The court held that "when the defense has made a legitimate request to inspect a crime

scene that is an alleged victim's home and has articulated a reasonable basis to believe the inspection will lead to relevant evidence on a material issue, then, subject to appropriate time, place, and manner restrictions intended to protect the privacy interests of the alleged victim and her family, the discovery should be granted." *Id.* at 793.

Similarly, the Supreme Judicial Court of Massachusetts held that "[a] defendant has the unquestioned right, under the Sixth Amendment to the United States Constitution . . . to obtain relevant evidence that bears on the question of his guilt or innocence or which otherwise helps his defense." *Commonwealth v. Matis*, 915 N.E.2d 212, 213 (Mass. 2006); *see also State v. Brown*, 293 S.E.2d 569, 578 (N.C. 1982) (holding that barring defense counsel from accessing the scene of the alleged crime, which was privately owned by a third party, was "a denial of fundamental fairness and due process"). The court in *Matis* then held that a discovery order for inspection of a private residence was properly issued upon a showing that the information obtainable at the scene was "evidentiary and relevant to the defense." 915 N.E.2d at 213.

State courts have also interpreted state constitutional provisions that are materially identical to the federal Due Process and Assistance of Counsel Clauses to require that criminal defendants have the right to inspect a private residence that was the alleged crime scene. For example, the Supreme Court of Hawaiʻi interpreted the state's constitutional provisions requiring due process and the assistance of counsel as categorically guaranteeing that "a defendant with the right to access a crime scene," even when it is a private residence and even absent a specific showing of relevance and materiality. *See State v. Tetu*, 386 P.3d 844, 862, 864 (Haw. 2016); *compare* Hawaiʻi Const., art. I, § 5 ("No person shall be deprived of life, liberty or property without due process of law . . .") and *id.* art. I, § 14 ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for the accused's defense.") *with* U.S. Const. amend. V ("No person shall . . . be deprived of life, liberty, or property without due process of law . . .") and *id.* amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."). The court held that a defendant's right to inspect a private residence where the alleged crime occurred stemmed from both the right to due process and the right to counsel, noting that "the due process clause . . . provides a defendant the right to access the crime scene in order to secure the

promises that a fair trial affords," and that "a defendant's ability to access the crime scene inheres within the right to effective assistance of counsel." *Tetu*, 386 P.3d at 855, 857. The Hawai'i Supreme Court in *Tetu* mirrored the reasoning in *State of Interest of A.B.*, noting that any privacy concerns could be addressed through appropriate time, place, and manner conditions on access to the scene of the alleged crime. *Id.* at 859; *accord Interest of A.B.*, 99 A.3d at 793.

Likewise, the Supreme Court of Virginia held that "the due process rights of . . . the Virginia Constitution give a criminal defendant a right to view, photograph, and take measurements of the crime scene." *Henshaw v. Commonwealth*, 451 S.E.2d 415, 419 (Va. App. 1994); *compare* Virginia Const., art. I, § 11 ("No person shall be deprived of his life, liberty, or property without due process of law . . .") *with* U.S. Const. amend. V. This right was conditioned on "a showing that a substantial basis exists for claiming that the proposed inspection and observation will enable the defendant to obtain evidence relevant and material to his defense or to be able to meaningfully defend himself." *Henshaw*, 451 S.E.2d at 419; *see also State v. Gonsalves*, 661 So.2d 1281, 1281 (Fla. Ct. App. 1995) (affirming order allowing access to private-residence crime scene, stating that "[o]n a showing of materiality, the court may require such other discovery to the parties as justice may require").

Ninth Circuit precedent also suggests, though it has not yet squarely held, that a district court may grant a discovery order allowing defense counsel to inspect a private residence that is a crime scene. *See United States v. Armstrong*, 621 F.2d 951, 954–55 (9th Cir. 1980) (declining to reach issue of whether defendant had right to access two victim banks for investigation purposes because any error was harmless). Specifically, the court in *Armstrong* did not directly reach the question of whether a district court had authority to grant a criminal defendant access to a third party's property. *Id.* at 954 ("We need not decide whether the Federal Rules or the inherent power of the district court to promote the proper administration of criminal justice permit a criminal defendant to enter upon property owned by a third party to conduct inspections or experiments."). However, the *Armstrong* court noted, as a general matter, that although "there are no comparable provisions [to Rule 16(a)(1)(C)] allowing inspection of the property of third parties . . . the rules themselves do not purport to set the outer limits of the power of the court." *Id.* (citing *United States v. Richter*, 488 F.2d 170, 173 (9th Cir. 1973)). Thus, Rule 16 alone does not define the outer limits of this Court's

authority to issue discovery orders in criminal matters. *See id.*

In *United States v. Richter*, on which *Armstrong* relied, a district judge issued a discovery order directing the government to turn over to defense counsel the names and addresses of certain government witnesses. 488 F.2d at 173. The court held that, while neither Rule 16 nor any statute expressly authorized this type of discovery order, this did not foreclose a district court from issuing such an order. *Id.* at 173. *Richter* cited Rule 57(b), which states: "If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute." *See id.* at 173. After *Richter* and *Armstrong*, the Ninth Circuit reiterated that district courts have authority to issue discovery orders beyond the narrow confines of Rule 16. *See United States v. W.R. Grace*, 526 F.3d 499, 505, 509 (9th Cir. 2008) (en banc) (holding that discovery orders requiring early government disclosure witnesses "fit comfortably" within the court's "general inherent authority" as well as Fed. R. of Crim. P. 2 and 16). The Ninth Circuit reasoned that because a district court is charged with effectuating the speedy and orderly administration of justice, it has the authority to "enter pretrial . . . discovery orders designed to ensure . . . the parties have an opportunity to engage in appropriate discovery and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly." *Id.* at 508–09.

**B.     Under the specific circumstances here, the Constitution requires the Court to issue an order allowing Mr. DePape's counsel and investigator brief access to the alleged crime scene to fairly and effectively prepare his defense.**

Mr. DePape requires access to the scene of the alleged crimes for a fair opportunity to defend himself against the government's accusations. *See Chambers*, 410 U.S. at 294. Failure to do so would create an imbalance in Mr. DePape's discovery rights against those of the government. The Ninth Circuit has held that a regulation that imposes asymmetrical discovery demands on the defense violates the due process principles of reciprocity. *United States v. Bahamonde*, 445 F.3d 1225, 1229 (9th Cir. 2006). *Bahamonde*, relying on Supreme Court precedent, held that an imbalance in discovery rights violated due process, because discovery is a "two-way street" and "if there is to be any imbalance in discovery rights, it should work in the defendant's favor." *Id.* at 1229–1230 (quoting *Wardius v. Oregon*, 412 U.S. 470, 475 & n.9 (1973)). The government has had ample opportunity to inspect the Pelosi residence to collect evidence against Mr. DePape, and they benefit

from the evidence collected by numerous government agents, including those from the SFPD, FBI, and Capitol Police. Due process principles of reciprocity require allowing Mr. DePape's counsel and investigator a similar opportunity to collect evidence in his defense, and to assess the credibility of the government's evidence through independent inspection. *See Bahamonde*, 445 F.3d at 1229. Denying Mr. DePape's defense team access to the scene of the alleged crime would amount to an imbalance in discovery rights—one that improperly weighs in favor of the government. *See id.*; *see also Interest of A.B.*, 99 A.3d at 793 ("In many instances, the defense will not be on an equal footing with the prosecution if it is barred from a crime scene to which the prosecutor has access.").

Even setting aside this asymmetry, counsel's failure to investigate the scene of the alleged crimes would still violate Mr. DePape's Fifth and Sixth Amendment rights. Mr. DePape's counsel has a duty to investigate the scene of the alleged crime, which includes a duty to conduct their own, independent investigation and to re-evaluate the evidence the government has set forth. *See* ABA Criminal Justice Standards, § 4-4.1(a), (c), and (d). But defense counsel cannot do that without access to the Pelosi residence, where the entirety of the charged conduct is alleged to have taken place. Defense counsel's duty to investigate, moreover, is not terminated merely because the government has already turned over its own evidence. *See id.* § 4-4.1(b). The government agents' search of the crime scene, seeking incriminating evidence against Mr. DePape, cannot substitute for counsel's independent investigation. *See id.* § 4.41(c); *see also Interest of A.B.*, 99 A.3d at 793 ("[A] defense attorney's visit to the scene of the crime is a rather ordinary undertaking, and in some circumstances, such an inspection might constitute a professional obligation.")

The discovery the government has turned over relating to the layout of the Pelosi residence consists primarily of body-worn camera footage from SFPD officers. Goulet Decl. ¶ 6. But the SFPD's purpose in requiring its officers to wear cameras is not to collect evidence; it is to "increase[] transparency," "improve accountability with regard to [officers'] engagement with the public," and "protect [officers] from unjustified complaints of misconduct." San Francisco Police Department, General Order 10.11, eff. 6/22/2016. Thus, body-worn cameras are passive tools, merely recording law enforcement officers while responding to an incident. It is not possible for Mr. DePape's counsel to revisit the footage after-the-fact and train the cameras on a particular part of the alleged crime

scene relevant to Mr. DePape's defense. Here, such evidence can only be uncovered if Mr. DePape's counsel and investigator are able to observe the alleged crime scene personally and decide for themselves where to direct their attention. *See* Goulet Decl. ¶¶ 4, 5.

Whatever value the body-worn camera footage and other evidence gathered by government agents may provide to Mr. DePape's defense team, it does not suffice to satisfy counsel's duty to independently investigate the scene of the alleged crime. Courts have found a failure to investigate the scene of the alleged crime to be objectively unreasonable, particularly absent an articulated, strategic reason for foregoing investigation. *See Williams*, 49 F.2d at 680–82. Here, the reverse is the case: the defense team has shown a specific need to inspect the Pelosi residence in order to effectively prepare for trial. *See* Goulet Decl. ¶¶ 4–7.

Mr. DePape's defense team has a good-faith belief that inspection of the Pelosi residence is likely to uncover evidence that is relevant and material to Mr. DePape's defense, in accordance with case law requiring only a threshold showing of relevance and materiality. *See, e.g., Interest of A.B.*, 99 A.3d at 791–92 (requiring only articulation of "a reasonable basis to believe the inspection [of the victim's home] will lead to relevant evidence on a material issue"); *Matis*, 915 N.E.2d at 213 (setting a standard that the information obtainable at the scene was "evidentiary and relevant to the defense"); *Henshaw*, 451 S.E.2d at 419 (setting a standard of relevance and materiality); *Gonsalves*, 661 So. 2d at 1281 (also setting a standard of materiality).  Specifically, while Mr. DePape's alleged entry into the Pelosi residence was captured on video, visiting the crime scene is important for the defense to understand how he got from the public right of way to the back door of the residence. *See* Goulet Decl. ¶¶ 6–7. Approximately 22 minutes elapsed between this video footage and the footage of Mr. DePape and Mr. Pelosi encountering SFPD officers at the front door, which was likewise captured on video. *See id.* Much of the crux of the case, especially the attempted kidnapping count, concern what happened in those 22 minutes, and it is critical for defense counsel to visit the crime scene to understand how and how long it took for Mr. DePape to get upstairs to Mr. Pelosi's bedroom, to understand the relative distances between the bedroom and the bathroom where the 911 call was allegedly placed as well as the elevator that Mr. Pelosi allegedly tried to access, to identify whether there were other potential paths of egress, and to understand to what extent if at all Mr. DePape's

1 | presence impeded Mr. Pelosi's freedom of movement. *See id.*

2 | Further, the Pelosi residence is quite large, spanning four stories and containing atypical features, such as the aforementioned elevator. *See id.* How and where Mr. DePape and Mr. Pelosi moved through this large space are important factual questions to this case—in particular, how Mr. Pelosi and Mr. DePape moved from an upper floor bedroom to the ground floor to answer the door when SFPD arrived is important for the defense team to understand, as is how Mr. Pelosi came to be holding a glass containing a clear liquid, and how they both came to be jointly holding a hammer, when the SPFD arrived at the residence. *See id.* In sum, because the critical 22 minutes between Mr. DePape's alleged entry into the crime scene and the arrival of the SFPD were not captured on video or in photos, it is especially important for the defense team to have access to the scene in order to make independent observations and measurements of the scene to prepare an effective defense for Mr. DePape. *See id.*

Should Mr. Pelosi testify at trial, it will be especially critical for the defense team to have had access to the crime scene in order to effectively confront and cross-examine him. *See* Goulet Decl. ¶¶ 6–7. Only by measuring and personally observing the layout, relative distances, and travel times among various areas in the residence will the defense team be able to test effectively the accuracy of Mr. Pelosi's recollection of the events in question. *See id.* Without such independent investigation, the defense would be unable to meaningfully cross-examine Mr. Pelosi and thus, unable to effectuate Mr. DePape's right to confront the witnesses against him. Finally, a visit to the scene of the alleged crime can reveal information that was previously unknown and could not have been foreseen in advance, but which is nevertheless of significant value to defending the case. *See* Goulet Decl. ¶ 4.

Thus, the Constitution requires the Court to issue an order allowing Mr. DePape's defense team access to the Pelosi residence. *See, e.g., State in Interest of A.B.*, 99 A.3d at 784; *Matis*, 915 N.E.2d at 213; *Henshaw*, 451 S.E.2d at 419; *cf. Tetu*, 386 P.3d at 855, 857. Such a discovery order is also consistent with Ninth Circuit precedent concerning the due-process need for reciprocity and concerning the district court's inherent authority to issue orders to effectuate a criminal defendant's constitutional rights. *See, e.g., W.R. Grace*, 526 F.3d at 509; *Bahamonde*, 445 F.3d at 1229; *Richter*, 488 F.2d at 173.

**C.     The Court can properly balance Mr. Depape's constitutional rights with the Pelosis' privacy interests by narrowly tailoring the discovery order to include appropriate time, place, and manner conditions.**

The Court need not choose between vindicating Mr. DePape's constitutional rights and accommodating the Pelosis' privacy interests: it can satisfy both by issuing a discovery order with narrowly tailored time, place, and manner conditions on the defense's inspection of the alleged crime scene. Mr. DePape is amenable to the following conditions, or any other reasonable conditions that the Pelosis may desire:

- Mr. DePape himself (who is in custody) will not set foot in the Pelosi residence; only his counsel and investigator will be present.

- While in the residence, Mr. DePape's defense team can be accompanied by agents of the Pelosis' choosing; for example, the Pelosis' counsel, counsel for the government, or any law enforcement officer.

- The inspection can be conducted at a reasonable time of the Pelosis' choosing. The Pelosis can opt to be present in the residence during the inspection, or, conversely, the Pelosis can designate a time for the inspection when they will be absent.

- The inspection can be limited to a reasonable length of time necessary to conduct a proper inspection of the residence. Mr. DePape's counsel estimates that the inspection will take approximately two to three hours. Goulet Decl. ¶¶ 6–8.

Given proper conditions, like those listed above, the Court can ensure that there is no undue burden on the Pelosis, while still protecting Mr. DePape's constitutional rights. *See, e.g., Interest of A.B.*, 99 A.3d at 784, 793; *Tetu*, 386 P.3d at 859; *Lee*, 461 N.W.2d at 247.

## CONCLUSION

For the foregoing reasons, the court should issue a discovery order granting Mr. DePape's counsel and investigator brief access to the Pelosi residence for inspection.

Dated:     June 19, 2023

Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

/S
ANGELA CHUANG
TODD M. BORDEN
Assistant Federal Public Defenders