ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

HELEN L. GILBERT (NYBN 4736336)
LAURA VARTAIN HORN (CABN 258485)
KYLE F. WALDINGER (CABN 298752)
Assistant United States Attorneys

450 Golden Gate Ave, 10th Floor
San Francisco, CA 94102
Telephone: (415) 436-7200
Fax: (415) 436-7234
Email: Helen.Gilbert@usdoj.gov
Laura.Vartain@usdoj.gov
Kyle.Waldinger@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

DAVID WAYNE DEPAPE,

Defendant.

**CASE NO. 3:22-CR-426-JSC**

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO ACCESS AND VIEW CRIME SCENE**

Trial Date: November 6, 2023
Hearing Date: August 2, 2023
Hearing Time: 11:30 a.m.

Judge: Hon. Jacqueline Scott Corley

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

RELEVANT BACKGROUND ....................................................................................1

I. Factual Background ....................................................................................1

II. Federal and State Criminal Cases ....................................................................................2

A. Federal Criminal Case....................................................................................2

B. State Criminal Case....................................................................................2

C. Relevant Discovery Produced in Federal Criminal Case....................................................................................3

ARGUMENT ....................................................................................................4

I. Legal Standards on Appeal ....................................................................................4

II. Defendant Has No Constitutional Right to Access and Inspect a Private Home....................................................................................4

A. No Federal Court Has Held That a Defendant Has a Right To Access a Private Home ....................................................................................5

B. State Cases Establishing a Defendant's Right to Access Third Parties' Property Rely on State Law Not Applicable Here ....................................................................................7

III. The Court Has No Authority to Order Access and Inspection of the Victims' Home Under the Federal Criminal Rules or Its Inherent Authority ....................................................................................9

IV. Victims Have Significant Constitutional and Statutory Rights Protecting Their Home and Privacy....................................................................................11

V. Even If Defendant Has a Right to Access a Private Home, He Fails to Show That Such Access Is Necessary Where the Government Has Produced Copious Videos, Photographs, and Other Evidence Showing the Interior and Exterior of the Victims' Home....................................................................................12

CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Brady v. Maryland*, 373 U.S. 83 (1963) .......... 9

*Bullen v. Superior Ct.*, 251 Cal. Rptr. 32 (Cal. Ct. App. 1988) .......... 14

*Carlisle v. United States*, 517 U.S. 416 (1996) .......... 10

*Commonwealth v. Matis*, 915 N.E.2d 212 (Mass. 2006) .......... 7, 14

*Florida v. Jardines*, 569 U.S. 1 (2013) .......... 12

*Henshaw v. Commonwealth*, 451 S.E.2d 415 (Va. Ct. App. 1994) .......... 7, 12

*Howard v. State*, 156 A.3d 981 (Md. Ct. App. 2017) .......... 14

*Miranda v. Arizona*, 384 U.S. 436 (1966) .......... 1

*People In Int. of E.G.*, 368 P.3d 946 (Colo. 2016) .......... 8

*People v. Vega*, 65 N.Y.S.3d 636 (N.Y. Sup. Ct. 2017) .......... 8

*Silverman v. United States*, 365 U.S. 505 (1961) .......... 12

*State ex rel. Beach v. Norblad*, 781 P.2d 349 (Ore. 1989) .......... 8

*State ex rel. Thomas v. McGinty*, 137 N.E.3d 1278 (Ohio Ct. App. 2019) .......... 12

*State in Int. of A.B.*, 99 A.3d 782 (N.J. 2014) .......... 7, 12, 14

*State v. Brown*, 293 S.E.2d 569 (N.C. 1982) .......... 7

*State v. Gonsalves*, 661 So. 2d 1281 (Fla. Dist. Ct. App. 1995) .......... 7, 13

*State v. Lee*, 461 N.W. 2d 245 (Minn. Ct. App. 1990) .......... 7

*State v. Lee*, 929 N.W. 2d 432 (Minn. 2019) .......... 7

*State v. Lee*, 929 N.W.2d 432 (Minn. 2019) .......... 8

*State v. Tetu*, 386 P.3d 844 (Haw. 2016) .......... 7

*Thomas v. Kuhlman*, 255 F. Supp. 2d 99 (E.D.N.Y. 2003) .......... 6

*United States v. Amlani*, 111 F.3d 705 (9th Cir. 1997) .......... 4

*United States v. Armstrong*, 621 F.2d 951 (9th Cir.1980) .......... 9, 11

*United States v. Bryant*, No. 8:08CR377, 2009 WL 3229756 (D. Neb. Oct. 5, 2009) .......... 1, 4, 6

*United States v. Bullcoming*, 22 F.4th 883 (10th Cir. 2022) .......... 1, 4, 5

*United States v. Gatto*, 763 F.2d 1040 (9th Cir. 1985) .......... 9

*United States v. Richter*, 488 F.2d 170 (9th Cir. 1973) .......... 10, 11

*United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) .......... 4, 10

*United States v. Yellow Hawk*, No. CR. 12–50044–JLV, 2013 WL 773908 (D.S.D. Feb. 28, 2013) .......... 1, 4, 5

*Wardius v. Oregon*, 412 U.S. 470 (1973) .......... 9

*Weatherford v. Bursey*, 429 U.S. 545 (1977) .......... 9

*Williams v. Washington*, 59 F.3d 673 (7th Cir. 1995) .......... 6

**CONSTITUTION, STATUTES, AND RULES**

18 U.S.C. § 3500 .......... 9

18 U.S.C. § 3771 .......... 12

Federal Rule of Criminal Procedure 16 .......... 9

Federal Rule of Criminal Procedure 57(b) .......... 10

**MISCELLANEOUS**

Information, People v. Depape, No. 22012966 (S.F. Sup. Ct. Dec. 23, 2022) .......... 2

## INTRODUCTION

There is absolutely no federal precedent for ordering private parties, much less victims of the charged crimes, to open up their home to access and inspection by a defendant. The one Court of Appeals and two district courts that have addressed this issue have unanimously held that defendants have no right under the U.S. Constitution, the Federal Rules of Criminal Procedure, or any other authority to access a private home. *See United States v. Bullcoming*, 22 F.4th 883, 888-90 (10th Cir. 2022); *United States v. Yellow Hawk*, No. CR. 12–50044–JLV, 2013 WL 773908 (D.S.D. Feb. 28, 2013) (unpublished); *United States v. Bryant*, No. 8:08CR377, 2009 WL 3229756 (D. Neb. Oct. 5, 2009) (unpublished). The defendant's motion fails to bring these cases to the Court's attention and instead relies upon distinguishable federal cases and state cases finding such a right of inspection based on interpretations of state law. The reasoning in these cases is inapposite and should be rejected here, especially where the defendant already has an extraordinary amount of information about the crime scene based on the extensive videos and photographs of the interior and exterior of the victims' home provided through discovery. Even if the defendant were able to point to some right to access the victims' home, he fails to show that access and inspection is relevant and material to the two counts charged here. Finally, even if the defendant met that burden, he utterly fails to account for the victims' significant constitutional and statutory rights in the sanctity of their home, which outweigh any interest of the defendant.

## RELEVANT BACKGROUND

### I.   Factual Background

On October 28, 2022, the defendant broke into Congresswoman Nancy Pelosi's and her husband Paul Pelosi's San Francisco home ("Pelosi Residence"). United States Capitol Police surveillance video captured the defendant breaking into the Pelosi Residence. Congresswoman Pelosi was not home at the time. Mr. Pelosi was home and called 9-1-1 upon encountering the defendant. The 9-1-1 call was recorded. San Francisco Police Department ("SFPD") officers responded to the Pelosi Residence and saw the defendant strike Mr. Pelosi with a hammer. The assault was captured by the officers' body worn cameras. The officers arrested the defendant, and another officer later interviewed him after confirming his understanding of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). The

interview was recorded.

Minutes after the defendant assaulted Mr. Pelosi, multiple additional SFPD officers arrived on the scene. Officers conducted a protective sweep of the entire Pelosi Residence, which was captured on at least two officers' body worn cameras. Another SFPD officer arrived with a K-9 and did an even more thorough sweep of the Pelosi Residence, which was also captured on the officer's body worn camera. Some of the responding SFPD officers took photographs of the crime scene.

Later on October 28, 2022, SFPD obtained a state warrant to search the Pelosi Residence with the FBI. SFPD officers and FBI agents and employees conducted the search the same day, beginning around 1 p.m. and ending around 3:20 p.m. At least three SFPD officers captured the search of the Pelosi Residence on their body worn cameras. An SFPD officer and an FBI special agent took photographs of the Pelosi Residence during the search. A U.S. Capitol Police Special Agent was also on the scene and took photographs throughout the day.

## II.     Federal and State Criminal Cases

### A.     Federal Criminal Case

On October 31, 2022, the defendant was charged by criminal complaint with attempting to kidnap a federal official, that is Member and then-Speaker of the U.S. House of Representatives Nancy Pelosi, and assaulting the immediate family member of a federal official, that is, Paul Pelosi. Dkt. 1. On November 9, 2022, a grand jury sitting in San Francisco returned an indictment charging the defendant with these two crimes. Dkt. 3. On July 19, 2023, the defendant filed the instant Motion to Access and Inspect Crime Scene (Def. Mtn.).

### B.     State Criminal Case

On November 2, 2022, the San Francisco District Attorney announced that her office had charged the defendant with multiple felonies. The District Attorney filed an information on December 23, 2022, charging the defendant with six counts: (1) attempted murder of Mr. Pelosi; (2) first degree burglary of the Pelosi Residence; (3) inflicting injury on elder or dependent adult likely to cause great bodily injury; (4) assault with a deadly weapon; (5) false imprisonment of an elder or dependent adult; and (6) threatening staff, family, or family members of public officials. Information, People v. Depape, No. 22012966 (S.F. Sup. Ct. Dec. 23, 2022).

**C. Relevant Discovery Produced in Federal Criminal Case**

The government has produced a significant amount of discovery relevant to the defendant's Motion. The government produced 30 video files containing the body worn camera footage captured by 28 SFPD officers who responded to the Pelosi Residence on October 28, 2022. DEPAPE-0000164 to DEPAPE-0000193.[1] This footage captures the entire interior of the Pelosi Residence and the exterior around all four sides of the house. For example, there are approximately 25 minutes of video showing the entire interior and exterior of the Pelosi Residence taken by the SFPD officer who did a protective sweep of the home with a K-9. *See* DEPAPE-0000178, at 17:00 to 43:40. Multiple SFPD officers captured video footage of the interior and exterior of the Pelosi Residence during the search executed later that day. For example, one officer's body worn camera captured at least 21 minutes of video footage showing the whole interior and exterior of the Pelosi Residence. *See* DEPAPE-0000167, at 10:50 to 32:00.

The government also produced approximately 93 photographs taken by SFPD officers who responded to the Pelosi Residence shortly after the charged conduct occurred. DEPAPE-0000733 to DEPAPE-0000826. These photographs capture images of the interior of the Pelosi Residence as well as of the defendant and Mr. Pelosi. *Id*.

During the search of the Pelosi Residence, also on October 28, 2022, the FBI and SFPD both took photographs. The government has produced these to the defendant, consisting of approximately 137 photographs taken by the FBI and approximately 251 photos taken by SFPD. DEPAPE-0000343 to DEPAPE-0000480 (FBI photos); DEPAPE-0000481 to DEPAPE-0000732 (SFPD photographs). These photographs depict the exterior and interior of the Pelosi Residence, as well as evidence items. Additionally, the government produced the FBI's log of the photographs taken (DEPAPE-0001450 to DEPAPE-0001451) and the FBI's seven sketches of the Pelosi Residence (DEPAPE-0001452 to DEPAPE-0001458). These sketches include separate depictions of the exterior, all four floors of the house, and more detailed depictions of the main bedroom, the first floor entry and living room, and the

[1] The citations following discovery correspond to the Bates stamps on documents and other material produced to the defendant in this case. The government can provide this evidence to the Court should it determine that viewing discovery produced in this case aids its resolution of the defendant's Motion.

back patio.  DEPAPE-0001452 to DEPAPE-0001458.

The government additionally produced approximately 133 photographs of the Pelosi Residence and evidence found therein taken on the same day by a U.S. Capitol Police Special Agent, along with a crime scene photo log.  DEPAPE-0002218 to DEPAPE-0002350 (photographs); DEPAPE-0002208 to DEPAPE-0002217 (photo log).

The government also produced to the defendant hours of video footage from before, during, and after the conduct at issue here from the U.S. Capitol Police security cameras affixed to locations around the exterior of the Pelosi Residence.  DEPAPE-0002189 to DEPAPE-0002194.

## ARGUMENT

### I. Legal Standards on Appeal

The denial of a motion for discovery in a criminal case is reviewed for abuse of discretion.  *See United States v. Amlani*, 111 F.3d 705, 712 (9th Cir. 1997) ("To reverse a conviction for a discovery violation, we must find not only that the district court abused its discretion, but that the error resulted in prejudice to substantial rights.").  "[A] district court's rulings on the scope of its authority to order discovery under Federal Rule of Criminal Procedure 16" are reviewed de novo.  *United States v. W.R. Grace*, 526 F.3d 499, 505 (9th Cir. 2008); *see also United States v. Bullcoming*, 22 F.4th 883, 889 (10th Cir. 2022) (reviewing the denial of a motion to review crime scene de novo).

### II. Defendant Has No Constitutional Right to Access and Inspect a Private Home

The defendant argues that he has a constitutional right to inspect a private residence that was the scene of the crime based on Fifth Amendment due process rights and the Sixth Amendment right to effective assistance of counsel.  Def. Mtn. 3:2-18.  Yet none of the cases cited by the defendant stand for this proposition, no federal court has recognized this right, and the few that have addressed this question have held that no such right exists.  *See United States v. Bullcoming*, 22 F.4th 883, 888-90 (10th Cir. 2022); *United States v. Yellow Hawk*, No. CR. 12–50044–JLV, 2013 WL 773908 (D.S.D. Feb. 28, 2013) (unpublished); *see also United States v. Bryant*, No. 8:08CR377, 2009 WL 3229756 (D. Neb. Oct. 5, 2009) (unpublished).

//

//

### A. No Federal Court Has Held That a Defendant Has a Right To Access a Private Home

The few federal courts that have addressed whether a defendant has a right to inspect a crime scene in the custody of a third party have squarely rejected this argument. In *United States v. Bullcoming*, 22 F.4th 883 (10th Cir. 2022), the Tenth Circuit held that the district court properly concluded that it had no authority to order a third party to provide the defendant with access to the victim's trailer and that this denial did not violate the defendant's due process or Sixth Amendment rights. *Id*. at 890. The defendant was charged with, among other things, murdering his girlfriend in her trailer and then setting the trailer on fire. *Id*. at 885, 888. Prior to trial, he moved for an order permitting access to the victim's trailer, which was possessed by a third party. *Id*. at 888, 889. The district court denied the motion, ruling that it did not have authority to order entry and inspection of property not in the government's possession, custody, or control. *Id*. The Tenth Circuit affirmed on appeal, agreeing with the district court "that it lacked authority to grant the requested access." *Id*. at 889. The court reviewed and rejected many of the arguments raised by the defendant here. It noted that some states, such as Hawaii and Virginia, appeared to permit a defendant to access a private home, but held that "these cases rely upon state constitutions with broader discovery rights for defendants, not the United States Constitution." *Id*. The court also concluded that Federal Rule of Criminal Procedure 16 is not a basis for authorizing such access. *Id*. at 889-90. Finally, the Court rejected defendant's argument that his due process and Sixth Amendment right to the effective assistance of counsel were infringed by being denied access to the victim's trailer, concluding that it found "no support under the United States Constitution or federal statutes to support" this argument. *Id*. at 890. "Indeed," the court noted, "allowing such discovery would collide with a panoply of federal constitutional rights held by the third-party owner of the property." *Id*.

In *United States v. Yellow Hawk*, No. CR. 12–50044–JLV, 2013 WL 773908 (D.S.D. Feb. 28, 2013) (unpublished), the defendant was charged with aggravated sexual abuse and moved to view the scene of the offense, a home controlled by a third party who refused to consent to the defendant's request. *Id*. at *1. The court held that it could not authorize the request under Rule 16 because the home was not within the government's control, and rejected the defendant's arguments that not permitting

access to the home violated his constitutional rights. *Id*. at *2-3. *See also United States v. Bryant*, No. 8:08CR377, 2009 WL 3229756 (D. Neb. Oct. 5, 2009) (unpublished), at *1-2 (declining to adopt the Virginia Constitutional right to access a crime scene and denying defendant's motion to inspect property owned by third party under Rule 17 analysis).

The defendant's reliance on *Williams v. Washington*, 59 F.3d 673 (7th Cir. 1995) and *Thomas v. Kuhlman*, 255 F. Supp. 2d 99 (E.D.N.Y. 2003) is misplaced. Def. Mtn. 3:26-4:12. Neither case addresses a defendant's right to access a private home, much less the home of a victim.

In *Williams*, the defendant had been convicted of indecent liberties with a child in Illinois state court based on the alleged sexual assault of her adopted daughter in the home they shared. *Id*. at 675-76. The Seventh Circuit affirmed the district court's grant of habeas relief based on finding defense counsel constitutionally ineffective for, among other things, failing to inspect the *defendant's own home* where the alleged crime had occurred. *Id*. at 681. The court had no occasion to address whether a defendant has a right to inspect a third party's home.

In *Thomas*, the defendant was convicted of second-degree murder in New York state court and sought habeas relief. 255 F. Supp. 2d 99, 101, 110. The federal district court granted the motion after concluding that defense counsel failed to adequately investigate the crime scene. *Id*. at 113. At trial, a "key witness" had testified that from the stairwell of a nearby building, she saw the defendant on the fire escape of the victim's apartment building shortly before the victim was killed. *Id*. at 101. The court noted that "[t]his testimony placed the defendant at the window of the victim's apartment just before the murder." *Id*. However, after the defendant's conviction, it was determined that it "was physically impossible for the witness to have seen defendant at the victims' window, since the fire escape that abuts the victim's apartment was not visible from her vantage point." *Id*. The district court concluded that the defense attorney's failure to conduct "any investigation whatsoever of the crime scene" resulted in ineffective assistance of counsel. *Id*. at 101, 110. The court noted that defense counsel would have been able to effectively refute the eyewitness testimony if he had "paid sufficient attention to the police reports," pursued knowledge about the "layout of the apartment buildings and their fire escapes," or "[a]t the very least . . . taken a subway ride to the witness's building in order to ascertain for himself whether the witness could really have seen the apartment in question . . . ." *Id*. at 109-10. The court

never addressed whether defense counsel had a duty to access the *inside* of the victim's apartment as opposed to reviewing basic facts about the exterior of the crime scene.

**B. State Cases Establishing a Defendant's Right to Access Third Parties' Property Rely on State Law Not Applicable Here**

All of the cases relied upon by the defendant where courts have granted a defendant's request to access a private residence are state cases based on state constitutions, state discovery rules, and state precedent that provide for broader rights than those in the federal system. *See State v. Tetu*, 386 P.3d 844, 852 (Haw. 2016) (noting that "under Hawaii's Constitution, defendants are clearly afforded greater protection of their rights to effective assistance of counsel than under the United States Constitution" (quoting *State v. Alpaca*, 837 P.2d 1298, 1305-07, 1305 n.2 (Haw. 1992))); *State in Int. of A.B.*, 99 A.3d 782, 792, 793 n.3 (N.J. 2014) (finding a right to inspect a crime victim's home based on "New Jersey's discovery precedents" and "out-of-state authority," and disregarding an Oregon case denying inspection of a home "[b]ecause New Jersey courts, by law, have greater power to order discovery than Oregon courts . . . ."); *Commonwealth v. Matis*, 915 N.E.2d 212, 213-14 (Mass. 2006) ("ordering pretrial access to the crime scene for inspection under [Mass. R. Crim. P.] 17(a)(2)" and looking to Massachusetts precedent for "[t]he process by which the judge considers a motion" under this rule"); *State v. Gonsalves*, 661 So. 2d 1281, 1281 (Fla. Dist. Ct. App. 1995) (noting that "discovery was authorized by Florida Rule of Criminal Procedure 3.220(f), which provides: 'On a showing of materiality, the court may require such other discovery to the parties as justice may require.'"); *Henshaw v. Commonwealth*, 451 S.E.2d 415, 419 (Va. Ct. App. 1994) (holding "that the due process rights of Article I, Section 8 of the Virginia Constitution give a criminal defendant a right to view, photograph, and take measurements of the crime scene[.]").[2]

Defendant's reliance on *State v. Brown*, 293 S.E.2d 569 (N.C. 1982), is similarly misplaced, as the Supreme Court of North Carolina determined that a defendant had a right to access the crime scene specifically because it was preserved and under the control of police from the time the murder victims

---

[2] The defendant also relies upon *State v. Lee*, 461 N.W. 2d 245 (Minn. Ct. App. 1990), yet this case was later overruled by the Minnesota Supreme Court, which held that Minnesota discovery rules "do[ ] not require the State to allow a defendant to inspect a crime scene that is in the control of a third party." *State v. Lee*, 929 N.W. 2d 432, 440 (Minn. 2019).

were discovered until trial. *Id*. at 578. The court emphasized that its holding was "limited to the particular facts of this case and . . . is in no way to be construed to mean that police or prosecution have any obligation to preserve a crime scene for the benefit of a defendant's inspection." *Id*.

Other state supreme courts have declined to recognize any constitutional or statutory right of a defendant to inspect a crime scene in the custody of a third party. *See State v. Lee*, 929 N.W.2d 432, 440-41 (Minn. 2019) (holding that Minnesota discovery rules "do[ ] not require the State to allow a defendant to inspect a crime scene that is in the control of a third party" and declining to decide whether the U.S. or Minnesota Constitutions provide such a right because any error in denying defendant's motion to inspect the property was harmless beyond a reasonable doubt); *People In Int. of E.G.*, 368 P.3d 946, 954 (Colo. 2016) (holding that "neither the United States Constitution, the Colorado Rules of Criminal Procedure, nor any statute provides the trial court with authority to grant [the defendant] access to [the third party's] private home without her consent" (footnote omitted)); *State ex rel. Beach v. Norblad*, 781 P.2d 349, 350 (Ore. 1989) ("Absent party status, counsel has not identified any other basis (and we know of none) under which the [ ] trial judge could . . . issue such an order [requiring the murder victim's widow to permit inspection of her property by the defendant]."); *see also People v. Vega*, 65 N.Y.S.3d 636, 639-40, 641-42 (N.Y. Sup. Ct. 2017) (finding no right for a defendant to access a crime scene controlled by a third party under New York statutes or the U.S. or New York Constitutions).

The defendant suggests that this Court should interpret the Fifth and Sixth Amendments of the U.S. Constitution "to require that criminal defendants have the right to inspect a private residence that was the alleged crime scene" because these constitutional provisions are "materially identical" to state constitutional provisions determined by state supreme courts to include this right. Def. Mtn. 5:14-6:5. This argument ignores more than 230 years of federal constitutional law interpreting these key provisions of the U.S. Constitution, as well as the lengthy state precedent establishing different interpretations of state constitutions.[3]

[3] The defendant relies on *United States v. Bahamonde*, 445 F. 3d 1225 (9th Cir. 2006) to argue that failure to permit him access to the victims' home "create[s] an imbalance" in his "discovery rights against those of the government" in violation of his right to due process. Def. Mtn. at 7:20-21. Yet *Bahamonde* was about the district court's preclusion of defense testimony by the case agent based on

There is "no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). The only due process right afforded to a defendant with respect to pretrial disclosure is the government's duty to disclose exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). *See also Wardius v. Oregon*, 412 U.S. 470, 474 (1973) ("[T]he Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded."). In accordance with these principles, the Court should decline to recognize a constitutional right, either under the due process clause or the Sixth Amendment, for a defendant to inspect a crime scene in the custody of a third-party victim.

## III. The Court Has No Authority to Order Access and Inspection of the Victims' Home Under the Federal Criminal Rules or Its Inherent Authority

As noted above, there is "no general constitutional right to discovery in a criminal case." *Weatherford*, 429 U.S. at 559. Rather, discovery is governed by three authorities: Federal Rule of Criminal Procedure 16; the Jencks Act, 18 U.S.C. § 3500; and the principles established by the Supreme Court in *Brady* and succeeding cases.

Federal Rule of Criminal Procedure 16 establishes the parties' discovery obligations. Nothing in Rule 16 requires the government to provide the defendant access to the victims' home or authorizes the Court to grant such a request. Rule 16(a)(1)(E) provides, as relevant here, that upon a defendant's request, the government "must permit the defendant to inspect and to copy or photograph . . . tangible objects, buildings or places . . . if the item is within the government's possession, custody, or control and . . . the item is material to preparing the defense." The victims' home is not within the government's "possession, custody, or control." Furthermore, as the Ninth Circuit made clear in *United States v. Gatto*, 763 F.2d 1040 (9th Cir. 1985), Rule 16 does not require the government to secure information from third parties. *Id*. at 1048-49; *see also United States v. Armstrong*, 621 F.2d 951, 954 (9th Cir.1980)

---

defense counsel's failure to follow Department of Homeland Security regulations. The court found this regulation unfair because it imposed a requirement only on the defendant to specify in writing the testimony sought from the government witness and did not require the government to equally "specify the nature of testimony or other evidence that it intends to use to rebut the demanded testimony." *Id*. at 1228-29. Here, there is no due process violation because the government is not in possession of the victims' home. All of the information the government has about the crime scene in its possession has been produced to the defendant. *See, e.g.*, *supra* II.C.

(although Rule 16(a)(1)(C) "provides for the inspection and photographing of buildings or places which are within the possession, custody or control of the Government, there are no comparable provisions allowing inspection of the property of third parties").

The defendant appears to recognize the limits of Rule 16, as he does not argue that his motion is authorized by this Rule. Instead, he claims that Ninth Circuit precedent "suggests" that this Court may order the victims to permit the defendant to inspect their home based on other authority "beyond the narrow confines of Rule 16." Def. Mtn. at 6:16-7:16. This statement overreads the Ninth Circuit case law and mischaracterizes the scope of Rule 16.

In *United States v. W.R. Grace*, the Ninth Circuit held that a district court can require the government to produce a witness list prior to trial based on its "inherent authority to manage its docket." *W.R. Grace*, 526 F.3d 499, 509. The Court emphasized that while district courts have some inherent authority to order discovery, that authority "does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure." *Id*. at 511 (quoting *Carlisle v. United States*, 517 U.S. 416, 426 (1996)). Both *W.R. Grace* and *United States v. Richter*, 488 F.2d 170 (9th Cir. 1973), which similarly involved an order requiring the government to produce the names, addresses, and telephone numbers of trial witnesses, lean heavily on the district court's "inherent power to manage its cases to ensure the fair and effective administration of the criminal justice system." *W.R. Grace*, 526 F.3d at 512; *Richter*, 488 F.2d at 173-74. Orders requiring the production of witness lists prior to trial go to the heart of the district court's power to manage its docket and are fundamentally different from the relief sought here, which implicates significant constitutional and statutory third-party rights.[4]

[4] The defendant notes that the opinion in *Richter* quoted the then-text of Rule 57(b), but fails to explain that later in the opinion the court specifically disavows any reliance on that Rule as a basis for requiring government disclosure of a witness list. The Ninth Circuit held that "the legislative history would not necessarily support treating rule 57(b) as possessing such extensive power to be the basis of the order involved in this case. Apparently, the intent was to allow the court the option not to apply a state practice and to leave the rules flexible enough so that details could be freely worked out by local rule or usage." 488 F.3d at 173 n.8. The defendant does not rely on Rule 57(b) as a basis for his proposed order, but to the extent that he does, the current text of Rule 57(b) similarly cannot be read to permit the court to order private parties to allow the defendant to access and inspect their home. Rule 57(b) provides: "Procedure When There Is No Controlling Law. A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local district rules unless the alleged violator was furnished with actual notice of the requirement before the noncompliance."

In *Armstrong*, the Ninth Circuit explicitly refused to decide the question raised here, stating, "We need not decide whether the Federal Rules or the inherent power of the district court to promote the proper administration of criminal justice permit a criminal defendant to enter upon property owned by a third party to conduct inspections or experiments." 621 F.2d at 954. There, the district court had quashed defendant's subpoenas duces tecum seeking access to two of the victim banks that he was charged with robbing. *Id*. Armstrong argued that access to the two banks would allow him to conduct photogrammetry experiments that would show that the physical dimensions of the robbers were different from his own and, therefore, would eliminate him as a suspect. *Id*. The Ninth Circuit upheld the district court's denial, finding that even if it was erroneous, it was harmless error. *Id*. at 955. The defendant's reliance on dicta in that opinion, "that an order granting inspection might properly have been based on rule 57(b) and the inherent power of the court," is unpersuasive, especially where the facts in *Armstrong* differ significantly from those at issue here.[5] The defendant here requests access to the home of the victim of a violent crime, not the two commercial locations at issue in *Armstrong*. And unlike in *Armstrong*, it is undisputed that the defendant was in the victims' home. The Ninth Circuit in *Armstrong* had no occasion to examine the significant countervailing constitutional and statutory interests presented here.

Furthermore, the Ninth Circuit has been circumspect about the extent of district courts' inherent authority, stating in *Richter* that "the history, development and present status of criminal discovery indicate that the discretion we recognize should not be unlimited." 488. F2d at 174; *see also id*. ("Expansion of the limits of discovery has not been rapid despite the many changes in other areas of criminal procedure."). Relying on the court's inherent authority to issue the expansive order requested by the defendant would be utterly unprecedented.

## IV. Victims Have Significant Constitutional and Statutory Rights Protecting Their Home and Privacy

Defendant fails to acknowledge the victims' right to privacy, particularly in their own home. The Fourth Amendment provides robust protections for an individual's home. The Supreme Court has

[5] Such a holding would also have been in tension with *Richter*, where the Ninth Circuit addressed the limited authority provided in Rule 57(b). *See supra* n.4.

on multiple occasions noted its special significance:  "[W]hen it comes to the Fourth Amendment, the home is first among equals.  At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)).

Congress has also delineated specific rights of crime victims, including "(1) The right to be reasonably protected from the accused" and "(8) The right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(1).  The United States has an affirmative obligation to protect victims of crime and their rights:  "Officers and employees of the Department of Justice . . . shall make their best efforts to see that crime victims are notified of, and accorded, the rights described in subsection (a)." 18 U.S.C. § 3771(c)(1).

As the defendant correctly notes, the victims do not wish to permit the defense team to access their home.  Def. Mtn. at 2.  Permitting the defendant to inspect their home over their objection runs counter to their constitutional right to be free from government intrusion and their statutory rights as victims of a crime.

**V.   Even If Defendant Has a Right to Access a Private Home, He Fails to Show That Such Access Is Necessary Where the Government Has Produced Copious Videos, Photographs, and Other Evidence Showing the Interior and Exterior of the Victims' Home**

In any event, it is unnecessary for the Court to address the novel issues raised by the defendant's Motion.  Assuming for the sake of argument that the defendant has a constitutional right to access the victims' home and that the court has the authority to grant such access, he fails to make a showing of good cause for why such an inspection is necessary.  The states that have recognized a defendant's right to inspect the crime scene have applied a balancing test—weighing the defendant's need for the inspection against the owner's privacy rights.  *See, e.g.*, *State ex rel. Thomas v. McGinty*, 137 N.E.3d 1278, 1289-90 (Ohio Ct. App. 2019) ("The constitutional rights of a crime victim must be balanced against the corresponding rights of a criminal defendant to a fair trial.").  The majority of states apply some type of relevancy test, requiring the defendant to show how the inspection would be relevant and material to his defense.  *See State in Int. of A.B.*, 99 A.3d at 793 (the defendant must "articulate[ ] a reasonable basis to believe the inspection will lead to relevant evidence on a material issue"); *Henshaw*, 451 S.E.2d at 419 (conditioning the inspection upon "a showing that a substantial basis exists for

claiming that the proposed inspection and observation will enable the defendant to obtain evidence relevant and material to his defense"); *Gonsalves*, 661 So.2d at 1282 (ordering inspection "where good cause has been shown").

The defendant gives multiple reasons for why he needs court-ordered access to inspect the victims' home, none of which make a showing of good cause, particularly given the extensive discovery produced here. First, he states that such access will allow "for the defense to understand how [the defendant] got from the public right of way to the back door of the residence." Def. Mtn. at 9:19-20. This fact does not go to any of the elements of the two counts charged here, and the existence of copious videos of the exterior of the home, including U.S. Capitol Police surveillance footage capturing the defendant outside of the home, along with photographs and publicly available maps, can easily substitute for any in-person visit by the defense team.

Second, the defendant claims that "it is critical for defense counsel to visit the crime scene to understand how and how long it took for Mr. DePape to get upstairs to Mr. Pelosi's bedroom, to understand the relative distances between the bedroom and the bathroom where the 911 call was allegedly placed as well as the elevator that Mr. Pelosi allegedly tried to access, to identify whether there were other potential paths of egress, and to understand to what extent if at all Mr. DePape's presence impeded Mr. Pelosi's freedom of movement." Def. Mtn. at 9:23-10:1. None of this information is relevant and material to the single count involving Mr. Pelosi, that is the defendant's assault of Mr. Pelosi that is captured on video. The government charged the defendant with attempting to kidnap Congresswoman Pelosi, not Mr. Pelosi. It is quite attenuated to claim that such information is relevant and material to the attempted kidnapping charge, but even if it is, the videos, photographs, and other material in the defense team's possession show in great detail all of the parts of the Pelosi Residence that the defendant claims he must access.

Third, the defendant argues that "[h]ow and where Mr. DePape and Mr. Pelosi moved through this large space are important factual questions to this case—in particular, how Mr. Pelosi and Mr. DePape moved from an upper floor bedroom to the ground floor to answer the door when SFPD arrived is important for the defense team to understand, as is how Mr. Pelosi came to be holding a glass containing a clear liquid, and how they both came to be jointly holding a hammer, when the SPFD

arrived at the residence." Def. Mtn. at 10:3-8. The defendant does not explain how inspecting the victims' home more than 9 months after the conduct charged here would answer these questions. Indeed, only Mr. Pelosi and the defendant know exactly what occurred before the police arrived, and the government has produced Mr. Pelosi's statements about the events in question to the defendant.

Fourth, the defendant claims that "[o]nly by measuring and personally observing the layout, relative distances, and travel times among various areas in the residence will the defense team" be able to effectively "confront and cross-examine" Mr. Pelosi. Def. Mtn. at 10:13-17. Again, this is information that can be ascertained from the video footage captured from inside the Pelosi Residence.

Fifth, the defendant states that he must be permitted access to the victims' home because it could "reveal information that was previously unknown and could not have been foreseen in advance, but which is nevertheless of significant value to defending the case." Def. Mtn. 10:20-21. This type of conclusory, speculative statement is insufficient to establish good cause. *See Howard v. State*, 156 A.3d 981, 999-1000 (Md. Ct. App. 2017) (assuming, without deciding, the defendant had a right to inspect the crime scene, the court held he failed to make a threshold showing of need based on conclusory statements that the inspection may lead to exculpatory evidence); *Bullen v. Superior Ct.*, 251 Cal. Rptr. 32, 33-34 (Cal. Ct. App. 1988) (issuing a writ of mandamus overturning the trial court's order granting defendant's access to victim's home where the defendant's claim he needed to inspect the scene to investigate possible defense theories was "conclusional" and "thus inadequate to support judicially compelled access to petitioner's home").

The defendant argues that the existing videos are insufficient because SFPD officers wear body worn cameras for a different purpose. Def. Mtn. at 8:22-27. This argument ignores the actual content of the videos and photographs in the defendant's possession, and he fails to show why the extensive interior and exterior video coverage is insufficient. *See Howard*, 156 A.3d at 1000 (denying a motion to access the crime scene where the defendant failed to show, among other things, why crime scene photographs were inadequate and how determining the dimensions of a room and their spatial relationships would support a defense, and contrasting the case with *Matis*, 915 N.E.2d 212 and *State in Int. of A.B.*, 99 A.3d 782, where "the layout of the home in which the crime was alleged to have been committed was integral to the defense that the crime was not perpetrated at all, because it could not have

been committed without being heard or seen by others"). The videos show exactly what the defendant says he must examine: the stairs from where the defendant broke into the Pelosi Residence up to the bedroom where Mr. Pelosi was sleeping; the elevator outside of this bedroom; the interior of the bedroom; the bathroom where Mr. Pelosi called 911; and all potential paths of egress throughout the entire home. The defendant's desire for his defense team to "observe the crime scene personally and decide for themselves where to direct their attention," Def. Mtn. at 9:2-3, is too speculative and nebulous a basis to order the significant intrusion into the victims' home requested here.

**CONCLUSION**

For the reasons stated above, the Court should deny the defendant's Motion to Access and Inspect Crime Scene.

DATED: July 26, 2023

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

/s/
HELEN L. GILBERT
LAURA VARTAIN HORN
KYLE F. WALDINGER
Assistant United States Attorneys