JODI LINKER
Federal Public Defender
Northern District of California
ANGELA CHUANG
TODD M. BORDEN
Assistant Federal Public Defenders
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:  (415) 436-7700
Facsimile:   (415) 436-7706
Email:        Angela_Chuang@fd.org

Counsel for Defendant DePape

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DAVID WAYNE DEPAPE, <br><br> Defendant. | **Case No.:** CR 22–00426 JSC <br><br> **REPLY IN SUPPORT OF MOTION TO ACCESS AND VIEW CRIME SCENE** <br><br> **Court:**  Courtroom 8, 19th Floor <br> **Hearing Date:**  August 2, 2023 <br> **Hearing Time:**  11:30 a.m. |

**INTRODUCTION**

David DePape's counsel and investigator have been unable to visit the scene of the alleged attempted kidnaping and assault with which he is charged. By contrast, numerous agents of the government spent hours at the scene. Indeed, apparently recognizing that it needed to review even more of the scene than it had during the original response to the incident, and that additional individuals needed to inspect the scene, a subsequent warrant was obtained by law enforcement to do yet another inspection. Mr. DePape is requesting a similar opportunity to allow his counsel and investigator brief access to the crime scene based on his constitutional rights to due process and the effective assistance counsel. The government opposes the motion, taking the expansive view that criminal defendants never have any right to access crime scenes that are residences controlled by third parties. While some courts have adopted this position, many others have recognized that the Fifth and Sixth Amendments permit courts to issue orders granting defense counsel access to private residences that were crime scenes. The government further argues that the Pelosis' Fourth Amendment rights and rights as crime victims preclude the Court from allowing the defense team access to the crime scene. But those rights are not absolute and must be balanced against Mr. DePape's competing constitutional rights, and here, any intrusion on the Pelosis' privacy interests would be minimal and can be appropriately mitigated by the Court imposing appropriate conditions on the defense team's access to the crime scene. Finally, the government argues that Mr. DePape has failed to show why he needs access to the crime scene, primarily citing the photos and body-worn video footage it provided in discovery. But Mr. DePape need only articulate a reasonable basis to believe that an inspection of the crime scene will lead to relevant, material evidence. *See, e.g., State in Int. of A.B.*, 99 A.3d 782, 791–92 (N.J. 2014). The critical 22 minutes between Mr. DePape's alleged entry and the arrival of the police was not captured on video, and only by viewing and inspecting the crime scene in person can the defense team adequately understand Mr. DePape's and Mr. Pelosi's movements and effectively cross examine Mr. Pelosi, who will presumably testify in this trial. The government's video and photographic discovery, moreover, does not substitute for the defense team's ability to take measurements of, and observe the crime scene in three dimensions for themselves.

The Court should thus grant Mr. DePape's motion to issue an order allowing his counsel and investigator to briefly access and view the crime scene subject to appropriate limitations.

## ARGUMENT

**I.   Under the Fifth and Sixth Amendments, the Court has authority to issue an order allowing defense counsel to inspect a crime scene under the control of a third party.**

The government argues that no court has ever held that a criminal defendant has a right to have his counsel access a crime scene that is a private resentence under the Fifth and Sixth Amendments. *See* Dkt. 58 at 4–9. Not so. A number of state courts have interpreted these federal constitutional provisions as requiring exactly what Mr. DePape is requesting. *See Commonwealth v. Matis*, 915 N.E.2d 212, 213 (Mass. 2006) (rooting right to inspect private residence in Sixth Amendment of federal constitution, along with state constitutional provision providing right to counsel and state rules of procedure); *State v. Brown*, 293 S.E.2d 569, 578 (N.C. 1982) (citing federal Due Process Clause). Indeed, the leading treatise on criminal procedure expressly notes that courts have divided on this issue. *See* 6 Wayne R. LaFave, et al., *Criminal Procedure* § 24.3(g) (4th ed. 2022) ("As for a constitutional right of the defendant to a court order granting access to a crime scene that took place on private property, courts have divided. Some have held that due process includes the right of the defendant to access the crime scene if the defendant shows that he needs to make such an inspection to obtain information material to his defense. Others require a trial court to balance that need against the privacy interests of the third party before granting access. Still others reject any such right."); *see also State v. Muscari*, 807 A.2d 407, 417 (Vt. 2002) ("A defendant's need for access to a crime scene controlled by a private third party must be balanced against the property occupant's right to privacy. Courts have generally struck that balance by requiring a defendant to make some showing that the requested intrusion is relevant and material to the defense.") (collecting cases). And this is an open question in the Ninth Circuit. *See United States v. Armstrong*, 621 F.2d 951, 954–55 (9th Cir. 1980) (declining to reach issue of whether defendant had right to access two victim banks for investigation purposes because any error was harmless).

The government makes much of the lack of federal decisions supporting Mr. DePape's position, but the government cites only three federal cases that address the issue, only one of which

REPLY IN SUPPORT OF MOTION TO ACCESS AND VIEW CRIME SCENE
*DEPAPE*, CR 22–00426 JSC

2

was published: the Tenth Circuit's decision in *United States v. Bullcoming*, 22 F.4th 883 (10th Cir. 2022). *See* Dkt. 58 at 5–6. But *Bullcoming* does not engage in any analysis of the scope of the due process and effective-assistance-of-counsel rights that Mr. DePape invokes here, and instead just dismisses the state cases cited by the defendant there as having no bearing on the federal constitution. *See* 22 F.4th at 889–90. The *Bullcoming* court also cited Rule 16 precedent as not allowing access to locations not in possession of the government, but Mr. DePape is not invoking Rule 16 as the relevant authority here. *See id.* The Tenth Circuit cited *United States v. Gatto*, 763 F.2d 1040, 1048 (9th Cir. 1985), for the proposition that Rule 16 does not require the government to secure information from third parties. *See* 22 F.4th at 890. *Gatto*, in turn, cited only *United States v. Armstrong*, 621 F.2d 951, 954 (9th Cir. 1980), for this proposition, *see* 763 F.2d at 1048, but *Armstrong* expressly noted that federal courts may have inherent authority to order inspection of locations not expressly authorized by the Rules of Criminal Procedure, including private property owned by third parties. *See Armstrong*, 621 F.2d at 954–55 ("We have noted, however, that 'the rules themselves do not purport to set outer limits of the power of the court.' Relying on Fed. R. Crim. P. 57(b), we have held that a district court has authority to compel the Government to produce the names of its witnesses even though there is no such authority specified in the Federal Rules. We think that an order granting inspection [of property owned by a third party] might properly have been based on rule 57(b) and the inherent power of the court.") (quoting *United States v. Richter*, 488 F.2d 170, 173 (9th Cir. 1973) (citations omitted).

The paucity of federal cases addressing this issue demonstrates little about the merits of either party's argument and merely reflects that federal courts rarely have jurisdiction over violent offenses that take place in private residences.[1] Thus, it is unsurprising that most of the case law addressing whether criminal defendants have a constitutional right to inspect a crime scene that is controlled by a third party arise in the state courts, where jurisdiction lies for most violent offenses that take place in private residences.

As to the state authority, the government correctly identifies the three states that take the same

---

[1] Notably the *Bullcoming* decision involved a private residence on tribal land in Oklahoma, a rare location where the federal government had jurisdiction over all major crimes. *See* 22 F.4th at 886.

view as the Tenth Circuit and reject any right of criminal defendants ever to gain a court order allowing access to crimes scenes that are private residences controlled by third parties.[2]  *See* Dkt. 58 at 8 (citing *State v. Lee*, 929 N.W.2d 432, 440–41 (Minn. 2019);[3] *People In Interest of E.G.*, 368 P.3d 946 (Colo. 2016); *State ex rel. Beach v. Norblad*, 781 P.2d 349, 350 (Or. 1989)). But the balance of state authority supports Mr. DePape's position, with a majority of states to have addressed the issue holding that the right in due process or to effective assistance of counsel allow defense counsel to access crime scenes possessed by third parties under certain circumstances. *See, e.g., State v. Tetu*, 386 P.3d 844, 857 (Haw. 2016); *Interest of A.B.*, 99 A.3d at 793 (N.J. 2014); *Matis*, 915 N.E.2d at 213; *State v. Gonsalves*, 661 So. 2d 1281, 1282 (Fla. Dist. Ct. App. 1995); *Henshaw v. Commonwealth*, 451 S.E.2d 415, 419 (Va. Ct. App. 1994); *State v. Brown*, 293 S.E.2d 569, 578 (N.C. 1982).[4]  While some of these state cases relied on their state constitutional guarantees of due process and the effective assistance of counsel, their reasoning applies with equal force to the federal constitution. The government's recognition, moreover, that the state cases allowing access are rooted in a "higher" standard for constitutionally effective representation in such states as opposed to the federal standard for effective assistance reveals what the government is asking this Court to do: provide Mr. Depape the minimal defense permissible. Such is not the goal of this defense team, nor should it be the goal of the Court. Mr. Depape, like all defendants, should be afforded the right to a zealous defense, not the bare minimum.

## II. This Court has authority to order access to the crime scene.

The government argues that this Court lacks any authority to issue the order Mr. DePape seeks

---

[2] The government also cites to *People v. Vega*, 65 N.Y.S. 3d 636, 642 (N.Y. Sup. Ct. 2017), a trial court decision from New York as supporting its position.  *See* Dkt. 58 at 8.  But another New York trial court took Mr. DePape's view.  *See People v. Nicholas*, 599 N.Y.S. 2d 779 (N.Y. Sup. Ct. 1993) ("The constitutional right to compulsory process gives a defendant a right to compel discovery from a private third party if justification exists which would outweigh the rights and legitimate interests of the third party.").
[3] Mr. DePape had previously cited *State v. Lee*, 461 N.W. 2d 245, 247 (Minn. Ct. App. 1990), which the government correctly notes has been overruled by the 2019 *Lee* case.  *See* Dkt. 58 at 7 n.2.  Counsel regrets this oversight, and withdraws any reliance on the 1990 *Lee* case.
[4] Other state courts have assumed without deciding that defendants have a right to inspect a crime scene controlled by a third party. *See, e.g. , Howard v. State*, 156 A.3d 981, 999 (Md. Ct. Spec. App. 2017); *Muscari*, 807 A.2d at 417–18; *Bullen v. Superior Court*, 251 Cal. Rptr. 32, 33 (Cal. Ct. App. 1988).

here: allowing his defense counsel and investigator limited, brief access to the crime scene to inspect it. *See* Dkt. 58 at 9–11. First the government argues that there is no general constitutional right to discovery at all. *See* Dkt. 58 at 9. But the Supreme Court has made clear that the Due Process Clause requires fair and equal access to discovery between the parties, regardless of what the minimum constitutional requirement for discovery may be. *See Wardius v. Oregon*, 412 U.S. 470, 474 (1973) ("Although the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded, it does speak to the balance of forces between the accused and his accuser." (citation omitted)); *see also United States v. Bahamonde*, 445 F.3d 1225, 1229–30 (9th Cir. 2006) ("[I]f there is to be any imbalance in discovery rights, it should work in the defendant's favor."). Further, as noted above, Mr. DePape is not invoking a "general constitutional right to discovery," but a specific right rooted in the Fifth and Sixth Amendments to access the crime scene that government agents had an extensive opportunity to inspect thoroughly after they obtained a search warrant from a state judge.

       The government next invokes Rule 16, *see* Dkt. 58 at 7–8, but the government's argument is a non sequitur as Mr. DePape is not invoking Rule 16 as a basis for the order he seeks. Further, Ninth Circuit authority supports Mr. DePape's contention that district courts have inherent authority to order discovery beyond just what is provided for in Rule 16. *See United States v. W.R. Grace*, 526 F.3d 499, 505, 508–09 (9th Cir. 2008) (en banc); *Armstrong*, 621 F.2d at 954. The government reads *W.R. Grace* narrowly and confined only to its specific facts (i.e., ordering the government to produce witness lists prior to trial), *see* Dkt. 58 at 10, but the Ninth Circuit itself was clear that the facts in *W.R. Grace* were an easy case, and hardly defined the outer limits of district courts' inherent authority. *See* 526 F.3d at 516 ("Although there are limits to the district court's inherent authority, the district court here is well within its authority to manage its docket in enforcing a valid pretrial discovery order.").

       As to *Armstrong*, the government dismisses as dictum, *see* Dkt. 58 at 11, the Ninth Circuit's statements that Rule 16 does not define the outer limits of a district court's power to order discovery, and that "an order granting inspection [of a third party's property] might properly have been based on [R]ule 57(b) and the inherent power of the court." *See Armstrong*, 621 F.2d at 954–55. But Ninth

REPLY IN SUPPORT OF MOTION TO ACCESS AND VIEW CRIME SCENE
*DEPAPE*, CR 22–00426 JSC

5

Circuit dictum carries great weight in this Court. *E.g., Casparian v. Allstate Ins. Co.*, 689 F. Supp. 1009, 1013 (N.D. Cal. 1988) ("However, absent a Supreme Court ruling, federal district courts are required to give great weight to the pronouncements of their courts of appeals, even where the statements appear by way of dictum."). Substantively, the government's only argument against this statement in *Armstrong* is that the crime scene here is a private residence rather than a bank, and the privacy interests are higher. *See* Dkt. 58 at 11. But while the privacy interests may be higher for a private residence[5] than a bank, this distinction has no bearing on the scope of the Court's inherent power.

Further, a court's inherent power to order a party to have access to private real property is well established in other contexts. For example, in civil litigation, federal courts have the authority to order nonparties to "permit the inspection of premises." *See* Fed. R. Civ. P. 45(a)(1)(A)(iii); *see also* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection."); *Toussie v. Allstate Ins. Co.*, No. 14-CV-2705-FBCLP, 2017 WL 4773374, at *5 (E.D.N.Y. Oct. 20, 2017) (issuing Rule 45 subpoena to inspect a storage unit controlled by a nonparty). And federal courts likewise have the inherent power to allow the jury to visit the crime scene. *See, e.g., Gonzalez-Perez v. Gomez-Aguila*, 296 F. Supp. 2d 117, 120 (D.P.R. 2003) ("[A] federal court, exercising its inherent powers, may allow a jury in either a civil or a criminal case to view places or objects outside the courtroom.") (quoting *Clemente v. Carnicon-Puerto Rico Management Assocs.*, 52 F.3d 383, 385 (1st Cir. 1995)). Thus, federal courts have inherent authority to order access to crime scenes controlled by third parties. *See Armstrong*, 621 F.2d at 954–55.

**III. Neither the Fourth Amendment nor the Crime Victims' Rights Act precludes issuing an order allowing defense counsel to inspect the crime scene.**

The government also cites the victims' privacy interests under the Fourth Amendment and Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771, as a basis to deny Mr. DePape's motion. *See* Dkt. 58 at 11–12. While Mr. DePape does not deny that the Pelosis' have privacy interests in their

---

[5] Owners of private commercial spaces of course also have significant privacy interests.

REPLY IN SUPPORT OF MOTION TO ACCESS AND VIEW CRIME SCENE
*DEPAPE*, CR 22–00426 JSC

residence, those interests do not categorically trump Mr. DePape's competing constitutional interests; rather, the Court must balance the two. *See, e.g., Interest of A.B.*, 99 A.3d at 793–94 (balancing defendant's due-process and effective-assistance-of-counsel rights against victim's privacy rights).

Further, the government also overstates the scope of any Fourth Amendment interests in play here. While Fourth Amendment offers strong privacy protections for the home, *see* Dkt. 58 at 11–12 (quoting *Florida v. Jardines*, 569 U.S. 1, 6 (2013)), as the government is no doubt aware, the Fourth Amendment's privacy protections are far from absolute and subject to numerous exceptions. Indeed, every day, hundreds of magistrates throughout the country issue court orders—search warrants—in secret *ex parte* proceedings that allow government agents to enter people's residences based on only a modest showing of probable cause that there is contraband in the home, a showing that is less than the preponderance of the evidence. *See, e.g., Illinois v. Gates*, 462 U.S. 213, 235 (1983) (holding that "[f]inely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision" as to whether there is probable cause to issue a search warrant). Indeed, as the government states in its opposition, the SFPD and FBI already searched the Pelosi residence pursuant to a search warrant issued by a state court. *See* Dkt. 58 at 2.

The government also invokes two provision of the CRVA, i.e., victims' "right to be reasonably protected from the accused," and "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy." *See* Dkt. 58 at 12 (quoting 18 U.S.C. § 3771(a)(1), (a)(8)). But nothing in Mr. DePape's motion implicates the Pelosis' right to be reasonably protected from the accused. Mr. DePape is in pretrial detention, and poses no threat to them. And the defense has explicitly stated that it does not seek to have him enter the residence himself. *See* Dkt. 55 at 11. Nor does the government cite any authority concerning the scope of victims' right to "be treated with respect and fairness."[6] In any event, whatever the scope of the CVRA, as a creature of statute, any

---

[6] State courts have rejected arguments that state crime victims' rights laws similar to the CVRA preclude issuance of orders allowing defense counsel access to crime scene that are the private residences of victims. *See, e.g., Interest of A.B.*, 99 A.3d at 791 (holding that New Jersey's crime victims' rights laws "do not diminish those rights possessed by the accused facing a criminal prosecution").

rights protected by it must yield to Mr. DePape's interests under the Fifth and Sixth Amendments to the extent they are in conflict. *E.g., Gray v. Mississippi*, 481 U.S. 648, 663 (1987) ("In a situation such as this where a constitutional right comes into conflict with a statutory right, the former prevails.").

IV. **Mr. DePape has sufficiently articulated a reasonable basis to believe inspection of the crime scene will result in relevant evidence material to the charged offenses.**

Last, the government argues that Mr. DePape has failed to make a sufficient showing that a visit to the crime scene would yield any relevant material evidence to assist his defense. *See* Dkt. 58 at 12–15. The government specifically argues that Mr. DePape's counsel have no need to investigate and understand his alleged movements in the residence relative to Mr. Pelosi because Count 1 charges Mr. DePape only with attempted kidnapping of Ms. Pelosi, and because the government already provided photos and video in discovery. *See* Dkt. 58 at 13. But an element of attempted kidnapping is that the defendant took a substantial step toward committing the crime. *See* Ninth Cir. Model Crim. Jury Instructions § 17.6. Understanding Mr. DePape's movements and relative position to the bedroom following his alleged entry into the residence is highly relevant to this element of the offense. Likewise, both charges have substantial intent elements regarding the federal nexus, i.e., requiring proof that Mr. DePape attempted to kidnap Ms. Pelosi on account of performance of her official duties, and that he assaulted Mr. Pelosi with intent to impede, intimidate, or interfere with Ms. Pelosi while she was engaged in performance of official duties, or with intent to retaliate against Ms. Pelosi on account of performance of her official duties *See id.*; 18 U.S.C. § 115(a)(1)(A). Again, understanding Mr. DePape's and Mr. Pelosi's movement throughout the residence over the 22 minutes not captured on video is relevant to these intent elements and what Mr. Depape's state of mind was at various points in time during the charged incident.

Next, the government argues that an inspection of the crime scene by the defense team cannot possibly be relevant because nine months have passed since the alleged crime. *See* Dkt. 58 at 13–14. But short of there having been substantial renovations of the property—and there is no indication that there have been—the layout of the residence remains the same. And it is precisely a desire to see, understand, and measure the space where the alleged crimes took place that is why the defense team

seeks an inspection order. The defense is not seeking access to conduct any sort of independent forensic testing that the passage of time would render impossible. The government also dismisses any defense interest in being able to effectively cross-examine Mr. Pelosi by summarily stating that the defense should rely on the police photos and videos. But those photos and videos do not allow the defense to take measurements or to fully see and understand the relative distances within the residence. For example, if Mr. Pelosi testified to a movement that could be shown from an inspection of the residence to be physically impossible, the defense would be unable to impeach him without having had an opportunity to independently examine the scene. And the photos and shaky body camera footage were hardly taken for the purpose of assisting the defense or an observer who had never been to the space. *See Interest of E.G.*, 368 P.3d at 957 (Gabriel, J., concurring) ("In inspecting a crime scene, the state and a defendant generally have opposite goals. The state is attempting to solve a crime and obtain a conviction. The defendant, in contrast, is trying to uncover evidence that will help him or her avoid being convicted of a crime."). The prosecution appears to recognize as much, which is why state and federal agents obtained a search warrant and several additional groups of officers later inspected the residence. They were not left to rest and rely on the "extensive" video and photo evidence that had been taken by others. Indeed, one of the primary reasons such photos and videos are taken is a recognition of the importance of the scene itself.

Finally, the government states that the videos show everything that Mr. DePape claims he wishes to examine, including the bathroom where Mr. Pelosi called 911. *See* Dkt. 58 at 14–15. But the videos do not allow the defense to measure specific distances or to fully understand the distances themselves or the time it takes to move between various spaces in the house. Video is of course a two-dimensional medium, and our world exists in three dimensions, not to mention that the body-worn camera footage is often jerky and difficult to follow because the body-worn cameras bounce and move around erratically with the officers' movements. Such footage is also often obscured by other people, the officer's clothing, body parts, and items or papers that the officer is holding. Not only that, but it is impossible for the defense to time movements based on body-worn camera footage because the officers do not necessarily move between rooms in the order in which the defense would be interested, and they often pause and stand idle for periods of time. Videos show one perspective,

that of the individual taking the video. They do not give the full picture and do not give the defense a sufficient understanding of all that transpired for the nearly thirty minutes when Mr. Pelosi and Mr. Depape were in the residence prior to the arrival of officers.

It bears repeating that Mr. DePape's defense team does not seek free rein to enter and commandeer the Pelosis' residence for an indefinite or even extended period of time. Rather, it requests an order with narrowly tailored conditions that strike an appropriate balance by minimizing the level of intrusion while allowing the defense sufficient time and access to vindicate Mr. DePape's constitutional rights.

## CONCLUSION

The Court should grant Mr. DePape's motion and issue an order granting Mr. DePape's counsel and investigator brief access to the Pelosi residence for inspection.

Dated:   July 31, 2023            Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

            /S
ANGELA CHUANG
TODD M. BORDEN
Assistant Federal Public Defenders