1   JODI LINKER
    Federal Public Defender
2   Northern District of California
    ANGELA CHUANG
3   TODD BORDEN
    Assistant Federal Public Defenders
4   19th Floor Federal Building - Box 36106
    450 Golden Gate Avenue
5   San Francisco, CA 94102
    Telephone:   (415) 436-7700
6   Facsimile:   (415) 436-7706
    Email:       Angela_Chuang@fd.org
7

8

9   Counsel for Defendant DePape

10

11                IN THE UNITED STATES DISTRICT COURT

12            FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                    SAN FRANCISCO DIVISION

14

15   UNITED STATES OF AMERICA,              **Case No.:** CR 22–426 JSC

16              Plaintiff,                  **DEFENDANT'S MOTIONS IN LIMINE**

17        v.                               **Court:**         Courtroom 8, 19th  Floor
                                           **Hearing Date:**  October 26, 2023
18   DAVID WAYNE DEPAPE,                    **Hearing Time:**  11:00 a.m.

19              Defendant.

20

21        TO:   UNITED STATES OF AMERICA, PLAINTIFF; ISMAIL J. RAMSEY, UNITED
     STATES ATTORNEY; LAURA VARTAIN HORN, HELEN GILBERT, AND KYLE
22   WALDINGER, ASSISTANT UNITED STATES ATTORNEYS:

23        PLEASE TAKE NOTICE that on October 26, 2023, or as soon thereafter as counsel may be

24   heard, Defendant David Wayne DePape, by and through undersigned counsel, will move the Court to

25   enter the below-requested Orders before trial. These motions are based upon the United States

26   Constitution, the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, the attached

27   memorandum of points and authorities, all other applicable statutes and case law, and any further

28   authority and evidence as may be adduced at the pretrial conference.

DEF'S MOT. IN LIM.
*DEPAPE*, CR 22–426 JSC

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................... 1

    I.     Motion In Limine #1: The Court Should Exclude Witnesses From All Trial Proceedings (Fed. R. Evid. 615) .......................................................................................... 1

    II.    Motion In Limine #2: No More Than One "Case Agent" May Be Designated As The Government's Representative (Fed. R. Evid. 615(2)) ...................................................... 2

    III.   Motion In Limine #3: The Court Should Exempt The Defense Investigator From Witness Exclusion Orders (Fed. R. Evid. 615(c)) ............................................................ 3

    IV.   Motion In Limine #4: The Court Should Designate All Government Witnesses As Under Defense Subpoena Unless Released .......................................................................... 4

    V.    Motion In Limine #5: The Court Should Exclude Unnoticed And Irrelevant "Other Acts" Evidence, Including Any Reference To False Claims That Mr. DePape Sexually Molested His Children .......................................................................................................... 4

        A.    Evidence of prior bad acts is disfavored under Rule 404(b) ............................... 4

        B.    The government has not provided any notice of its intent to offer "other acts" evidence ............................................................................................................... 5

        C.    The Court should exclude any reference to irrelevant, inflammatory, and baseless claims that Mr. DePape sexually abused his children ............................ 7

    VI.   Motion In Limine #6: The Court Should Exclude Portions Of Body-Worn Camera Footage And Photographs Depicting ███████████████████████████████████████████████████████ .......... 10

        A.    The Court should exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice and needlessly presenting cumulative evidence, especially when the defense is willing to stipulate to the element of the offense on which the evidence bears ........................................... 12

        B.    The defense's offered stipulation would obviate the need to present the unfairly prejudicial evidence, and hence also radically reduce its probative value ......... 14

        C.    The availability of less prejudicial evidentiary alternatives diminishes the marginal probative value of the videos and images in question and heightens the risk of unfair prejudice if the government chooses to nevertheless use a *more* prejudicial means of proving the same issue .................................................... 16

    VII.  Motion In Limine #7: The Court Should Also Exclude Under Rule 403 The Testimony Of The Government's Three Proposed Physician Witnesses As Wasting Time And Needlessly Presenting Cumulative Evidence ................................................................... 18

VIII.   Motion In Limine #8: The Court Should Permit Counsel To Inquire During Voir Dire About Prospective Jurors' Political Party Affiliations And Whether They Voted For Or Against Nancy Pelosi ....................................................................................... 19

IX.     Motion In Limine #9: Due To The Extensive Prejudicial Pretrial Publicity In This Case, The Court Should Increase The Number Of Peremptory Challenges To Mitigate The Risk Of Biased Jurors ............................................................................... 21

CONCLUSION ............................................................................................................. 22

1

# TABLE OF AUTHORITIES

2

## Federal Cases

3
*Apprendi v. New Jersey*,
4
    530 U.S. 466 (2000) ........................................................................................ 13, 14, 18

5
*Ferrier v. Duckworth*,
    902 F.2d 545 (7th Cir. 1990) ......................................................................... 14, 15, 16

6

7
*Geders v. United States*,
    425 U.S. 80 (1976) ..................................................................................................... 1, 2

8

9
*Gomez v. Ahitow*,
    29 F.3d 1128 (7th Cir. 1994) ............................................................................... 14, 16

10
*Huddleston v. United States*,
11
    485 U.S. 681 (1988) ....................................................................................................... 7

12
*Link v. Wabash*,
    370 U.S. 626 (1962) ....................................................................................................... 4

13

14
*Lloyd v McKendree*,
    749 F.2d 705 (11th Cir. 1985) ..................................................................................... 4

15
*Old Chief v. United States*,
16
    519 U.S. 172 (1997) ............................................................................................. *passim*

17
*Oliver B. Cannon and Son v. Fidelity and Cas. Co.*,
    519 F. Supp 668 (D. Del. 1981) ................................................................................. 3

18

19
*Rosales-Lopez v. United States*,
    451 U.S. 182 (1981) ..................................................................................................... 19

20

21
*Taylor v. United States*,
    388 F.2d 786 (9th Cir. 1967) ....................................................................................... 1

22
*United States v. Barker*,
23
    553 F.2d 1013 (6th Cir. 1997) ..................................................................................... 4

24
*United States v. Blom*,
    242 F.3d 799 (8th Cir. 2001) ..................................................................................... 21

25

26
*United States v. Bonanno*,
    177 F. Supp. 106 (S.D.N.Y. 1959) ................................................................. 21-22, 22

27
*United States v. Brady*,
28
    579 F.2d 1121 (9th Cir. 1978) ............................................................................. 15, 16

*United States v. Brewer,*
   947 F.2d 404 (9th Cir. 1991) ................................................................................... 1

*United States v. Brooke,*
   4 F.3d 1480 (9th Cir. 1993) .................................................................................... 6

*United States v. Causey,*
   609 F.2d 777 (5th Cir. 1980) ............................................................................... 2-3

*United States v. Curtin,*
   489 F.3d 935 (9th Cir. 2007) .................................................................................. 8

*United States v. Dellinger,*
   472 F.2d 340 (7th Cir. 1972) ................................................................................ 19

*United States v. Ell,*
   718 F.2d 291 (9th Cir. 1983) .................................................................................. 1

*United States v. Farnham,*
   791 F.2d 331 (4th Cir. 1986) .................................................................................. 2

*United States v. Goland,*
   959 F.2d 1449 (9th Cir. 1992) .............................................................................. 20

*United States v. Hill,*
   953 F.2d 452 (9th Cir. 1991) .................................................................................. 5

*United States v. Hooton,*
   662 F.2d 628 (9th Cir. 1981) ................................................................................ 18

*United States v. Juarez,*
   573 F.2d 267 (5th Cir. 1978) .................................................................................. 1

*United States v. Lewellyn,*
   481 F.3d 695 (9th Cir. 2007) ................................................................................ 13

*United States v. Luna,*
   21 F.3d 874 (9th Cir. 1994) ................................................................................... 7

*United States v. Mayans,*
   17 F.3d 1174 (9th Cir. 1994) ........................................................................... 5, 6, 7

*United States v. McNeil,*
   166 F.3d 943 (9th Cir. 1999) ................................................................................ 16

*United States v. Mehrmanesh,*
   689 F.2d 822 (9th Cir. 1982) ............................................................................... 6, 7

*United States v. Merino-Balderrama*,
    146 F.3d 758 (9th Cir. 1998) ............................................................................ 12

*United States v. Morley*,
    199 F.3d 129 (3rd Cir. 1999) ......................................................................... 6, 7

*United States v. Moussaoui, No. CR. 01-455-A*,
    2002 WL 1987955 (E.D. Va. Aug. 16, 2002) ................................................. 21

*United States v. Ortiz*,
    10 F. Supp. 2d 1058 (N.D. Iowa, 1998) ........................................................... 3

*United States v. Pineda-Doval*,
    614 F.3d 1019 (9th Cir. 2010) ................................................................... 15, 16

*United States v. Pulley*,
    922 F.2d 1283 (6th Cir. 1991) ......................................................................... 2

*United States v. Salim*,
    189 F. Supp. 2d 93 (S.D.N.Y. 2002) ..................................................... 14, 15, 16

*United States v. Sepulveda*,
    15 F.3d 1161 (1st Cir. 1993) ......................................................................... 1-2

*United States v. Spinner*,
    152 F.3d 950 (D.C. Cir. 1998) ......................................................................... 6

*United States v. Thomas*,
    835 F.2d 219 (9th Cir. 1987) ........................................................................... 2

*United States v. Vega*,
    188 F.3d 1150 (9th Cir. 1999) ....................................................................... 5, 6

*United States v. Vizcarra-Martinez*,
    66 F.3d 1006 (9th Cir. 1995) ........................................................................... 8

*United States v. Williams, No. CR 06-00079 JMS-KSC*,
    2014 WL 712598 (D. Haw. Feb. 21, 2014) ................................................... 21

**Federal Rules and Statutes**

18 U.S.C. § 115 ................................................................................ 1, 13, 14, 18

18 U.S.C. § 1201 ................................................................................... 1, 13

Fed. R. Crim. P. 16 .................................................................................. 4, 6

Fed. R. Crim. P. 17 .................................................................................... 4

Fed. R. Crim. P. 24 ................................................................................... 21

Fed. R. Evid. 403 .............................................................................. *passim*

Fed. R. Evid. 404 .................................................................................................. 4, 5, 6, 7

Fed. R. Evid. 615 ...................................................................................................... 1, 2, 3

## State Cases

*Cordero v. United States*,
    456 A.2d 837 (D.C. 1983) ...................................................................................... 19

*Newcomb v. State*,
    800 P.2d 935 (Alaska Ct. App. 1990) ................................................................... 22

## Other Authorities

ABA, *Criminal Justice Standards: Fair Trial and Public Discourse* § 8-5.3(e) (2013), *available at* https://www.americanbar.org/groups/criminal_justice/standards/crimjust_standards_fairtrial_blk/ (last accessed Sept. 26, 2023) ................................................................................................ 22

1

**INTRODUCTION**

2       David Wayne DePape files the following motions in limine in accordance with the Court's

3   pretrial scheduling order, issued on May 23, 2023. Pretrial Order, Dkt. No. 39-1. Mr. DePape is

4   charged with the following offenses: (1) Attempted Kidnapping of a Federal Officer or Employee—

5   to wit, Nancy Pelosi—in violation of 18 U.S.C. § 1201(d); and (2) Assault of an Immediate Family

6   Member of a Federal Official—to wit, Paul Pelosi—in violation of 18 U.S.C. § 115(a)(1)(A).

7   Indictment, Dkt. No. 3.

8       **ARGUMENT**

9   **I.   Motion In Limine #1: The Court Should Exclude Witnesses From All Trial Proceedings
        (Fed. R. Evid. 615)**

10      Federal Rule of Evidence 615 provides that "[a]t the request of a party the court shall order

11  witnesses excluded so that they cannot hear the testimony of other witnesses." Rule 615 is intended to

12  ensure a fair trial by preventing collusion of witnesses and fabrication of testimony, and by helping

13  reveal instances where such fabrication or collusion actually occurs. *See Geders v. United States*, 425

14  U.S. 80, 87 (1976) (observing that the rule "exercises a restraint of witnesses 'tailoring' their

15  testimony to that of earlier witnesses; and it aids in detecting testimony that is less than candid*"); see

16  also Taylor v. United States*, 388 F.2d 786, 788 (9th Cir. 1967) (stating that exclusion is designed to

17  "prevent the shaping of testimony by hearing what other witnesses say").

18      Witnesses should be excluded during motion hearings, opening statements, and closing

19  arguments, as well as during witness testimony. *United States v. Brewer*, 947 F.2d 404, 407–11 (9th

20  Cir. 1991) (holding that witness exclusion under Rule 615 applies during evidentiary hearings, such

21  as those in a motion to suppress*); United States v. Juarez*, 573 F.2d 267, 281 (5th Cir. 1978)

22  (affirming trial court's decision to exclude defendant's witnesses from closing arguments, "[b]ecause

23  closing arguments of counsel often restate witness testimony… thus jeopardizing the fairness of a

24  second trial should one be necessary"). Rule 615 requires that non-exempt witnesses be excluded

25  from the courtroom during all witness testimony; that is, that they should remain excluded even after

26  testifying. Fed. R. Evid. 615; *United States v. Ell*, 718 F.2d 291, 293 (9th Cir. 1983) (holding that

27  trial court erred by not excluding prosecution witness who had already testified); *United States v.

28  Sepulveda*, 15 F.3d 1161, 1175–77 (1st Cir. 1993) (holding that in addition to the power to exclude

DEF'S MOT. IN LIM.
*DEPAPE*, CR 22–426 JSC

1

1  under Rule 615 a district court retains inherent power to, "make whatever provisions it deems

2  necessary to manage trials,… including the sequestration of witnesses **before, during and after** their

3  testimony" (citing *Geders*, 425 U.S. at 87)) (emphasis added). Therefore, Mr. DePape requests that

4  the Court exclude witnesses from the courtroom.

5  **II.   Motion In Limine #2: No More Than One "Case Agent" May Be Designated As The Government's Representative (Fed. R. Evid. 615(2))**

6  
7         A federal agent, or a local law enforcement officer working with federal agents, qualifies under

8  Rule 615(2) for exemption from an exclusion order. *See* Fed. R. Evid. 615(2); *see also United States*

9  *v. Thomas*, 835 F.2d 219, 222–23 (9th Cir. 1987) (trial court did not err in allowing FBI agent who

10 also testified to sit at counsel table throughout trial, since agent qualified as officer representing the

11 government). The plain language of Federal Rule of Evidence 615(2), however, as well as the notes

12 of the Advisory Committee, indicate that only one agent can be exempted under this provision.

13        The rule speaks of an officer or employee of a party who is not a natural person being

14 designated as, "its representative." Fed. R. Evid. 615(2). The drafters chose the singular, rather than

15 the plural — the rule does not speak of an entity's right to designate "its representatives." In fact, the

16 Advisory Committee stated that, "[a]s the equivalent of the right of a natural-person party, a party

17 which is not a natural person is entitled to have a representative present." Fed. R. Evid. 615 Advisory

18 Committee's note. As the Sixth Circuit has observed, "'[a]' representative, like 'a' natural person, . . .

19 and 'an' officer or employee, is singular. . . we can discern no reason to convert the singular into the

20 plural." *United States v. Pulley*, 922 F.2d 1283, 1286 (6th Cir. 1991). The Advisory Committee's

21 note, as well as the analysis of this note, supports a literal reading of the rule.

22        Significantly, the majority of Circuit Courts that have addressed the issue of multiple witness-

23 representatives have concluded that only one agent, officer or employee should be designated under

24 Rule 615(2). *See id.*; *United States v. Farnham*, 791 F.2d 331, 334–35 (4th Cir. 1986) (holding as

25 error trial court's decision to allow two government agent-witnesses to remain in courtroom

26 throughout trial); *see also United States v. Causey*, 609 F.2d 777, 777–78 (5th Cir. 1980) (not

27 reaching the issue, but stating in dicta, "from its language it would reasonably be argued that [Rule

28 615(2)] does not grant counsel for a party the right to designate more than one representative.");

*Oliver B. Cannon and Son v. Fidelity and Cas. Co.*, 519 F. Supp 668, 679 (D. Del. 1981) (exception codified in Rule 615(2) held to be singular, thus plaintiff was unable to appoint more than one person as representative).

Accordingly, the Court should permit no more than one "case agent" to be designated as the government's representative under Rule 615(2).

**III.    <u>Motion In Limine #3:</u> The Court Should Exempt The Defense Investigator From Witness Exclusion Orders (Fed. R. Evid. 615(c))**

Just as the government is permitted one case agent to be present throughout the trial, the defense should be permitted the same. The presence of Public Defender investigator Catherine Goulet at trial is essential to the defense and she should be exempt from any witness exclusion order. She is in essence the defense's "case agent." Rule 615 includes an exception to witness exclusion for "a person whose presence a party shows to be essential to present the party's claim or defense." Fed. R. Evid. 615(c). This exception has been applied to permit defense investigators to be present at trial, even when it is anticipated that they may testify. *See United States v. Ortiz*, 10 F. Supp. 2d 1058 (N.D. Iowa, 1998). As the *Ortiz* court noted, exempting an essential defense investigator from a witness exclusion order is both authorized by statute and required by considerations of fairness:

> Even one case agent available to the government has access to almost unlimited law enforcement investigative resources—federal, state, and local—to perform the necessary footwork if unanticipated issues come up during trial. Against this full panoply of resources available to the government, a criminal defendant can reasonably show the presence of one investigator in the courtroom, who must also then perform the footwork of necessary investigations and testify upon the results of his or her investigations, is "essential" within the meaning of the Rule 615(3) exemption.

*Id.* at 1066.

Ms. Goulet has been assigned to this case since its inception and is familiar with the facts and witnesses. It is critical to the defense that she be permitted to remain in the courtroom so she can respond to witness testimony with prompt investigation and assist defense counsel. Consequently, she should be designated as essential and exempt from witness exclusion orders under Rule 615. It is the defense's understanding that the government does not oppose this request.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IV.   Motion In Limine #4: The Court Should Designate All Government Witnesses As Under Defense Subpoena Unless Released**

Government witnesses noticed for trial occasionally are released by the government without informing the defense, and thereafter become unavailable. In order for Mr. DePape to retain access to these witnesses, he requests this Court to order that any released government witnesses be considered under defense subpoena.

Indigent defendants such as Mr. DePape are provided the opportunity to have the government subpoena witnesses on their behalf by the Sixth Amendment and by Fed. R. Crim. P. 17(b). *United States v. Barker*, 553 F.2d 1013, 1019 (6th Cir. 1997). In addition, this Court has the inherent power to subpoena witnesses on behalf of indigent individuals. *See Lloyd v McKendree*, 749 F.2d 705, 706–07 (11th Cir. 1985); *Link v. Wabash*, 370 U.S. 626, 630 (1962) ("The inherent powers of the federal courts are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."). To safeguard against the loss of vital witness testimony and to ensure that this indigent defendant is provided all Fifth and Sixth Amendment rights, Mr. DePape requests that the Court exercise its inherent power to order that any released government witnesses be considered under defense subpoena for the duration of the trial.

**V.   Motion In Limine #5: The Court Should Exclude Unnoticed And Irrelevant "Other Acts" Evidence, Including Any Reference To False Claims That Mr. DePape Sexually Molested His Children**

Mr. DePape moves under Federal Rules of Evidence 404(b) and 403, as well as Federal Rule of Criminal Procedure 16 and Local Rule 16-1, to exclude all "others acts" evidence from trial. The Ninth Circuit has made clear that such evidence is generally disfavored, especially in criminal cases. Moreover, the government here has not provided the requisite procedural notice of intent to offer such evidence. Nor has the government met its substantive burden of demonstrating the admissibility of such evidence under the criteria of Rules 404(b) and 403. Accordingly, Mr. DePape respectfully submits that the Court should exclude any and all "other acts" evidence from trial.

**A.   Evidence of prior bad acts is disfavored under Rule 404(b)**

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to

1   prove the character of a person in order to show action in conformity therewith." Fed. R. Evid.

2   404(b). The rule goes on to state that such evidence:

> may, however, be admissible for other purposes, such as proof of motive,
> opportunity, intent, preparation, plan, knowledge, identity, or absence of
> mistake or accident, **provided that upon request by the accused, the
> prosecution in a criminal case shall provide reasonable notice in
> advance of trial**, or during trial if the court excuses pretrial notice on good
> cause shown, of the general nature of any such evidence it intends to
> introduce at trial.

*Id.* (emphasis added). The Ninth Circuit has repeatedly explained that the limitations in Rule 404(b) are "designed to avoid a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the defendant is a bad man deserving of punishment." *United States v. Hill*, 953 F.2d 452, 457 (9th Cir. 1991) (citations and internal quotation marks omitted); *see also United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994) (noting that the reluctance to sanction the use of other acts evidence "stems from the underlying premise of our criminal system, that the defendant must be tried for what he did, not for who he is"). Moreover, even if admissible under Rule 404(b), such evidence still may be excluded as unfairly prejudicial, confusing, misleading, cumulative, delaying or a waste of time under Rule 403. *See* Fed. R. Evid. 403.

## B.    The government has not provided any notice of its intent to offer "other acts" evidence

Under the terms of Rule 404(b), the government must affirmatively and specifically provide reasonable notice in advance of trial its intention to introduce any particular evidence of "other crimes, wrongs, or acts." *See* Fed. R. Crim. P. 404(b)(2); *see also, e.g., United States v. Vega*, 188 F.3d 1150, 1152-53 (9th Cir. 1999) (quoting Rule 404(b)(2)). Similarly, Northern District Criminal Local Rule 16-1(c)(3) requires the government to disclose "a summary of any evidence of other crimes, wrongs or acts which the government intends to offer under Fed. R. Evid. 404(b), and which is supported by documentary evidence or witness statements in sufficient detail that the Court may rule on the admissibility of the proffered evidence." Crim. L.R. 16-1(c)(3); *see also Mayans*, 17 F.3d at 1183 (explaining that, without pretrial notice, the trial court cannot "make the focused determination of relevance mandated" by Rule 404(b)).

Failure to provide adequate notice, or obtain an excuse from the district court, categorically

1  "renders the other acts evidence inadmissible, whether the evidence is used in the prosecution's case-

2  in-chief or for impeachment." *Vega*, 188 F.3d at 1153. This categorical exclusion even applies to

3  evidence intended "for possible rebuttal." *Id*. at 1154. The categorical nature of the exclusion is

4  further explained in the rule's advisory committee notes: "Because the notice requirement serves as

5  **condition precedent** to admissibility of 404(b) evidence, the offered evidence is **inadmissible** if the

6  court decides that the notice requirement has not been met." Fed .R. Evid. 404(b) (adv. comm. notes–

7  1991 amend.) (emphasis added).

8      Moreover, merely "providing such evidence to the defense in discovery is not enough to satisfy

9  the notice requirements of Rule 404(b), which requires the government specifically to disclose 'the

10  general nature of any such evidence it intends to introduce at trial.'" *United States v. Spinner*, 152

11  F.3d 950, 961 (D.C. Cir. 1998). Indeed, the Ninth Circuit has repeatedly held that the Government

12  must not only provide notice, but must also identify how the noticed "other acts" evidence "is

13  relevant to one or more issues in the case; specifically, it must articulate precisely the evidential

14  hypothesis by which a fact of consequence may be inferred from the other acts evidence." *United*

15  *States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982) (citations omitted); *see also United States v.*

16  *Brooke,* 4 F.3d 1480, 1483 (9th Cir. 1993) (quoting *Mehrmanesh*). Courts have emphasized that the

17  "incantation of the proper uses of such evidence under the rules does not magically transform

18  inadmissible evidence into admissible evidence." *United States v. Morley*, 199 F.3d 129, 133 (3rd

19  Cir. 1999).

20      Here, the Court set a discovery cut-off date of August 15, 2023, including for materials covered

21  by Rule 16 and Local Rule 16-1 (citing Rule 404(b)). *See* Dkt. No. 39-1 at 2. To date, the government

22  has not provided any 404(b) notice regarding any evidence of other crimes, wrongs, or acts

23  committed by Mr. DePape that it might seek to introduce at trial. As a result, all "other acts" evidence

24  is categorically inadmissible as a procedural matter pursuant to the authority cited above.

25      This procedural bar is not a mere technicality. The Court has the duty to "make a focused

26  determination of relevance mandated by" the Federal Rules of Evidence, as well as the local criminal

27  rules, before any "other acts" evidence may be admitted. *Mayans*, 17 F.3d at 1183; *see also* Crim.

28  L.R. 16-1(c)(3). The Court cannot, however, make such a determination in this case, because the

government has not complied with its requirement of timely notice nor met its burden of proving that any such evidence is admissible in this case. Accordingly, the Court should preclude the government as a procedural matter from introducing at trial any "other acts" evidence.

### C. The Court should exclude any reference to irrelevant, inflammatory, and baseless claims that Mr. DePape sexually abused his children

Even where a defendant's alleged prior "other acts" are not as here procedurally barred by inadequate notice, the government still must then meet its substantive burden of demonstrating that such evidence is admissible under Rules 404(b), 401, and 403. Prior acts that are untethered to a legitimate Rule 404(b) purpose are inadmissible at trial because they raise the forbidden inference that "the defendant is guilty because he committed another [] crime." *United States v. Luna*, 21 F.3d 874, 882 (9th Cir. 1994).

Specifically, to admit prior acts under this rule, the government must clearly demonstrate why the proffered "bad" acts evidence "is relevant to one or more issues in the case; specifically, it must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." *Mehrmanesh*, 689 F.2d at 830; *see also Huddleston v. United States*, 485 U.S. 681, 689 (1988) (stating that relevance is not an inherent characteristic, and that prior bad acts are not intrinsically relevant to motive, opportunity, intent, or absence of mistake); *Mayans*, 17 F.3d at 1181 (stating that reluctance to sanction use of other bad acts evidence stems from the principle that "guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by showing that the defendant has engaged in other acts of wrongdoing"); *see also Morley*, 199 F.3d at 133 (stating that "[e]vidence that is not relevant, by definition, cannot be offered for a proper purpose, and evidence that may be relevant for some purposes may be irrelevant for the purpose for which it is offered").

In addition, the government, as the proponent of the proffered "other acts" evidence, must demonstrate on the merits that each incident meets the requirements of a four-part test developed by the Ninth Circuit for evaluating that admissibility of such other acts evidence under Rule 404(b). Specifically, the government must show as to each proffered other act: 1) that the evidence is sufficient to support a finding that the defendant committed the other act; 2) that introduction of the

1   other act tends to prove a material point at the trial on the charged offense; 3) that the other act is not

2   too remote in time; and 4) that, in cases where knowledge and intent are at issue, the other act is

3   similar to the charged offense. *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir.

4   1995); *see also United States v. Curtin*, 489 F.3d 935, 958 (9th Cir. 2007) (en banc) (emphasizing

5   that the government has the burden of proving the materiality of the element for which the other acts

6   evidence is offered).

7       Moreover, even if the Court were to determine that the government had met its procedural

8   disclosure obligations and that it had substantively demonstrated admissibility under Rule 404(b) and

9   relevance under Rule 401, the Court still must exclude such evidence under Rule 403 if its probative

10  value is substantially outweighed by the danger of unfair prejudice, or other pertinent considerations

11  such as wasting time. *See, e.g., Curtin*, 489 F.3d at 958 ("Because evidence of other crimes, wrongs,

12  or acts carries with it the inherent potential to see the defendant simply as a bad person . . . a trial

13  court must take appropriate care to see that this does not happen.").

14      Here, overwhelmingly prejudicial claims have been aired in the media that Mr. DePape

15  sexually abused his three children years ago. This issue was also brought to the Court's attention

16  during change of venue litigation. *See* Reply in Support of Motion to Change Venue, Dkt. No. 48 at

17  4–5. As noted at that time, and certainly no less true now, such allegations of child sexual abuse and

18  incest are highly inflammatory, prejudicial, and indeed false. As for any probative value to the

19  charged offenses, there is absolutely none. Mr. DePape is accused of attempting to kidnap then-

20  Speaker Nancy Pelosi and assaulting her husband, Paul Pelosi. These charges have nothing to do with

21  his family's history. It would strain credulity to even attempt to find any relevance between these

22  claims of sexual abuse and the incident he is charged with here. Not only that, but this purported

23  abuse supposedly occurred roughly fifteen years ago—far too remote in time to possibly have any

24  bearing on the case at hand. Indeed, it is hard to imagine something more inflammatory than these

25  types of claims. Considering the visceral reaction that many people have towards child sexual abuse,

26  allowing any evidence of these claims would be unduly prejudicial. It would also confuse the jury as

27  to why they are hearing about child sexual abuse in this case, waste time because the defense would

28  be forced to refute the claims, and would invite the jury to punish Mr. DePape because they believe

1    he is a child molester rather than for the actual charges in the case.

2        Finally, and perhaps most importantly, these claims that Mr. DePape sexually abused his

3    children are categorically false and unsubstantiated. The government would be entirely unable to

4    offer sufficient evidence supporting a conclusion that Mr. DePape committed these other acts because

5    that evidence simply does not exist. ████████████████████████████████████████

6    ████████████████████████████████████████

7    ████████████████████████████████████████████

8    ████████████████████████████████████████

9    ████████████████████████████████████████

10   ████████████████████████████████████████

11   ████████████████████████████████████████████

12   ████████████████████████████████████████

13   ████████████████████████████████████████████

14   ████████████████████████████████████████

15   ████████████████████████████████████████

16   ████████████████████████████████████████████

17   ████████████████████████████████████████

18   ████████████████████████████████████████

19   ████████████████████████████████████████

20   ████████████████████████████████████████

21   ████████████████████████████████████████

22   ████████████████████████████████████████

23   ████████████████

24   ████████████████████████████████████████

25   ████████████████████████████████████████████

26   ████████████████████████████████████████

27   ████████████████████████████████████████

28   ████████████████████████████████████████████

1  ███████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████

3  ██████████████████████████████████

4      Accordingly, the Court should exclude any reference to claims that Mr. DePape sexually

5  abused his children. The government has indicated that it intends to introduce as a trial exhibit Mr.

6  DePape's recorded post-arrest statement to the SFPD, portions of which reference these allegations.

7  *See* Chuang Decl., Ex. B (Post-Arrest Interview Audio). The Court should order that this exhibit be

8  redacted to exclude such references, specifically the portions at the following timestamps: 36:19–

9  36:37; 36:56–37:06; 37:46–38:07.[1]

10 **VI.   <u>Motion In Limine #6:</u> The Court Should Exclude Portions Of Body-Worn Camera

11  Footage And Photographs Depicting** ████████████████████████████████
    █████████████████████████████

12      Under Rule 403, Mr. DePape moves to exclude the following portions of police officers' body-

13  worn camera footage and photographs depicting ███████████████████████████████

14  ████████████████████████████████████████████████████████████

15  ██████████████████████ Specifically, Mr. DePape seeks to exclude the government's

16  follow proposed trial exhibits:[2]

17      • DEPAPE-0000173: body-worn camera footage from SFPD Officer Willmes, from

18        01:25–9:50;

19      • DEPAPE-0000171: body-worn camera footage from SFPD Officer Najarro, from

20        00:43–01:38 and 02:14–11:45;

21      • DEPAPE-0000406–12; DEPAPE-0000539; DEPAPE-0000543–45; DEPAPE-

22        0000550–51; DEPAPE-0000666–68; DEPAPE-0000672; DEPAPE-0000734–36;

23        DEPAPE-0000740–42; DEPAPE-0000753; DEPAPE-0000775–77; DEPAPE-

24        0000794–813: photographs of alleged crime scene and Mr. Pelosi's injuries;

25

26  ─────────────────────

27  [1] For the Court's reference, a transcript of the interview will be filed as well. The transcript excerpts
    that correspond to the timestamps set out above are lines 17–24 on DEPAPE-16674, lines 9–13 on
    DEPAPE-16675, and lines 4–17 on DEPAPE-16676. *See* Chuang Decl., Ex. C (Post-Arrest Interview

28  Transcript).
    [2] Attached hereto and filed under seal as Exhibits D–H respectively. *See* Chuang Decl., Exs. D–H.

1

2

- DEPAPE-0002225–27; DEPAPE-0002230–32: photographs of the scene of the alleged crime;
- DEPAPE-0002742–56; DEPAPE-0003062–77: photographs of Mr. Pelosi's injuries; and
- Any additional similar evidence the government may seek to offer at trial.

Mr. Depape is willing to stipulate to the only element of the offense to which this evidence could even remotely bear: that a dangerous weapon (i.e., hammer) was used and/or that the assault resulted in serious bodily injury to Mr. Pelosi. These exhibits are not probative in establishing any disputed issue of fact material to the charged offenses, particularly given the alternative evidence available in the form of testimony from police officers, medical personnel, and Mr. Pelosi himself. As such, admission of this evidence would be unfairly prejudicial and cumulative under Federal Rule of Evidence 403.

**A.    The Court should exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice and needlessly presenting cumulative evidence, especially when the defense is willing to stipulate to the element of the offense on which the evidence bears**

Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Unfair prejudice is "an undue tendency to suggest a decision on an improper basis, commonly . . . an emotional one." Fed. R. Evid. 403 (adv. comm. note). Unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

While the government generally has discretion to try its case using whatever admissible evidence it chooses, where a defendant offers to stipulate to an element of a charged offense, this must be weighed in the balancing test for Rule 403 to determine whether the evidence should be admitted. *Old Chief*, 519 U.S. at 186–87; *see also United States v. Merino-Balderrama*, 146 F.3d 758, 762 (9th Cir. 1998) ("*Old Chief* held that a defendant's offer to stipulate to an element of a crime is relevant evidence that must be factored into a district court's analysis under Rule 403." (citation and footnote omitted)) (reversing conviction where district court admitted images of child pornography at trial notwithstanding defendant's offer to stipulate). In *Old Chief*, the Supreme Court emphasized that "a party's concession is pertinent to the court's discretion to exclude evidence on the point conceded," and that "[s]uch a concession . . . will sometimes call for the exclusion of evidence offered to prove [the] point conceded by the opponent." 519 U.S. at 184 (internal quotations omitted). While factually *Old Chief* concerned the right of a defendant to stipulate to a prior felony conviction as an element of the offense of possession of a firearm by a convicted felon, the case stands for the broader proposition that, while the government should be afforded latitude in constructing the narrative that forms the basis of its case, that latitude is subject to limitations to avoid unfair prejudice under Rule 403. *See id.* at 190.

Mr. DePape is charged with two offenses: attempting to kidnap Nancy Pelosi (Count 1) and assaulting Paul Pelosi (Count 2). *See* Dkt. 3. The graphic videos and photographs have no relevance

1    to the kidnapping offense, which contains no element of physical contact, nor injury, nor use of a

2    weapon; and which does not even involve Mr. Pelosi. *See* 18 U.S.C. § 1201(d). Nor are they relevant

3    to the core elements of the assault offense, including federal jurisdiction, intent, threat, or physical

4    contact. *See* 18 U.S.C. § 115(a)(1)(A). The government can satisfy core elements of the assault

5    offense easily by showing that the hammer made unwanted contact with Mr. Pelosi. *See, e.g., United*

6    *States v. Lewellyn*, 481 F.3d 695, 698 (9th Cir. 2007) (holding that when defendants make unwanted

7    physical contact with victims, they satisfy the element of assault). Thus, the alleged physical contact

8    element was completed when the hammer made contact with Mr. Pelosi. *See id.*

9          The government can, therefore, prove the core elements of the assault by showing only the

10   events that happened in the seconds preceding Mr. Pelosi falling to the floor. And because police

11   officers tackled Mr. DePape to the floor and apprehended him immediately after the incident with

12   Mr. Pelosi, any further conduct after that point is irrelevant to either the assault or kidnapping

13   offenses.

14         The only conceivable relevance the graphic videos and photographs have here is as proof that

15   Mr. DePape meets the requirements for an enhanced penalty. Mr. DePape faces a potential 30-year

16   maximum sentence based on two possible findings, either of which, on its own, satisfies the

17   requirements for the enhanced penalty: that a dangerous weapon was used, or that the assault resulted

18   in serious bodily injury to the victim. *See* 18 U.S.C. § 115(b)(1)(iv) (allowing for increased maximum

19   sentence of 30 years in prison "if the assault resulted in serious bodily injury" or if "a dangerous

20   weapon was used during an in relation to the offense"); *see also Apprendi v. New Jersey*, 530 U.S.

21   466, 476 (any fact that increases the maximum penalty for a crime must be charged in the indictment

22   and proven to the jury). As to the allegation that a dangerous weapon was used, the graphic videos

23   and photographs have no or at most extremely marginal relevance because the proposition that a

24   hammer is a dangerous weapon is an obvious one, and at the very least, the jury could easily find that

25   the hammer was dangerous based on seeing Mr. Pelosi fall to the ground alone, without being shown

26   graphic images.

27         Thus, any relevance of the graphic videos and photos of Mr. Pelosi pertains only to the "serious

28   bodily injury" means of proving the enhanced-penalty element, which is one of two independent

ways the government may establish this element, illustrating that the probative value of this evidence is quite minimal and superfluous. But its probative value is even lower because Mr. DePape does not dispute and is willing to stipulate to both ways of establishing the enhanced-penalty *Apprendi* element: that Mr. Pelosi suffered serious bodily injury and that a dangerous weapon, i.e., a hammer, was used during and in relation to the offense. *See* 18 U.S.C. § 115(b)(1)(B)(iv). This stipulation is "not merely relevant but seemingly conclusive evidence of the [enhanced-penalty] element." *Old Chief*, 519 U.S. at 186.

## B.   The defense's offered stipulation would obviate the need to present the unfairly prejudicial evidence, and hence also radically reduce its probative value

Evidence containing graphic and disturbing sounds and imagery is especially likely to carry a substantial risk of unfair prejudice, and excluding such evidence is often warranted under Rule 403. *See United States v. Salim*, 189 F. Supp. 2d 93, 98 (S.D.N.Y. 2002). For example, in *Salim*, the court thoroughly reviewed the federal case law on Rule 403 objections to bloody photographs of victims and concluded that "the graphic or disturbing nature of a photograph alone is not enough to render it inadmissible. Rather, the analysis hinges upon whether the photograph is relevant to some disputed point at trial or otherwise aids the jury in a factual determination." *Id.* (citations omitted). Where photographs offered in evidence have little or no probative value concerning an issue disputed at trial, they are inadmissible. For example, the Seventh Circuit held that color photographs of a bar floor covered with the victim's blood in a murder case should have been excluded under Rule 403. *Ferrier v. Duckworth*, 902 F.2d 545 (7th Cir. 1990). "The killing was not denied; the only issues were whether Ferrier had been drunk or insane when he did the killing. Those issues were not illuminated by the photographs. The only conceivable reason for placing them in evidence was to inflame the jury against Ferrer." *Id.* at 548. The court applied the same analysis in a subsequent case where graphic photographs were introduced to display gunshot wounds suffered by the victim, noting that neither the fact of the victim's death nor the cause of the death were disputed at trial. *Gomez v. Ahitow*, 29 F.3d 1128, 1139 (7th Cir. 1994).

████████████████████████████████████████████████████

████████████████████████████████████████████████████

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████. Thus, as in

4 *Ferrier*, given Mr. DePape's offer to stipulate, there is no need for the government to offer graphic

5 images in evidence to prove either the dangerous-weapon or injury element; the only conceivable

6 reason the government may have for offering the graphic videos and photographs is for their

7 inflammatory and sensationalist effect on the jury. *See* 902 F.2d at 548.

8          On the other end of the spectrum, courts have been reluctant to exclude photographic evidence

9 under Rule 403 when it does not depict images so graphic as to generate an improper emotional

10 response from the jury, *see, e.g., United States v. Pineda-Doval*, 614 F.3d 1019 (9th Cir. 2010), or

11 when the evidence may elicit a slight emotional response from the jury yet is highly probative of a

12 central issue at trial, *see, e.g., United States v. Brady*, 579 F.2d 1121 (9th Cir. 1978). For example, in

13 *Pineda-Doval*, the Ninth Circuit held that admission of photographs of uninjured accident victims

14 was not prejudicial under Rule 403. 614 F.3d at 1036. The court deemed the picture of one victim

15 "unremarkable" since it merely depicted him "sitting on gravel, looking stunned and perhaps a little

16 sad, but uninjured." *Id.* The court found that a photograph of a second victim, who died in the

17 accident in question, was not prejudicial since it was a "family photograph taken well before the

18 accident" and merely depicted the victim "standing by herself with no expression on her face." *Id.*

19 Likewise, in *Brady*, an alien smuggling case, the Ninth Circuit held that there was no undue prejudice

20 under Rule 403 of photographs of aliens inside the drive-shaft compartment of the vehicle in which

21 they were being transported. 579 F.2d at 700. The court reasoned that the photographs provided the

22 "best and clearest evidence" that was "probative of the central issue at trial." *Id.* While the court

23 acknowledged that there was "some potential that the jurors would have an emotional response to the

24 photograph," the potential for unfair prejudice was nevertheless low since the photograph was "not so

25 graphic or shocking that it would be likely to engender a strong and improper emotional response

26 against the Defendant," particularly since the photograph merely showed the aliens looking

27 "frightened and bewildered." *Id.*

28 ████████████████████████████████████████████████████

1 ██████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████

3 ██████████████████████████████████████████████████████

4 ██████████████████████████████████████████████████████

5 ██████████████████████████████████████████████████████

6 ████████████████████████████████████████████

7 █████████████████████

8 ████████████████████████████████████████████

9 ██████████████████████████████████████████████████

10 ██████████████████████████████████████████████████████

11 ██████████████████████████████████████████████████████

12 ████████████████████████████████████████████

13 ██████████████████████████████████████████████████████

14 ██████████████████████████████████████████████████████

15 ████████████ This risk substantially outweighs the probative value of the videos and photographs in

16 proving serious bodily injury or the use of a dangerous weapon, to which the defense is willing to

17 stipulate, and which the government can easily establish by other, less prejudicial means in any event,

18 as argued below.

19      **C.**   **The availability of less prejudicial evidentiary alternatives diminishes the marginal probative value of the videos and images in question and heightens the risk of**

20            **unfair prejudice if the government chooses to nevertheless use a *more* prejudicial means of proving the same issue**

21

22      Rule 403 also excludes evidence that is needlessly cumulative. Fed R. Evid. 403. And both the

23 Advisory Committee's notes, as well as case law discussing Rule 403, indicate that the availability of

24 alternative evidence to establish a given fact is a relevant consideration in weighing the probative

25 value of the evidence against the risk of unfair prejudice. *See, e.g.*, Fed. R. Evid. 403 (adv. comm.

26 note); *see also United States v. McNeil*, 166 F.3d 943, 946 (9th Cir. 1999) (requiring the use of phrase

27 "residential program" rather than "work release center" to avoid indirectly presenting evidence of

28 defendant's prior criminal convictions to the jury). For example, in *Old Chief*, the Supreme Court

1 emphasized that if an item of evidence is found to carry a substantial risk of unfair prejudice and less

2 prejudicial alternatives are available, "sound judicial discretion would discount the value of the item

3 first offered." 519 U.S. at 183. Critical to the holding in *Old Chief* was the fact that "the functions of

4 the competing evidence are distinguishable only by the risk inherent in the one and wholly absent

5 from the other." *See id.* at 191.

6     Here, there is ample alternative evidence—in addition to the defense's offered stipulation—to

7 establish that Mr. Pelosi suffered serious bodily injury and that the hammer used in the incident is a

8 dangerous weapon—either one of which would be independently sufficient to establish that Mr.

9 DePape is subject to an enhanced penalty. For example, instead of offering the graphic body-worn

10 camera footage and photographs to prove serious bodily injury, the government can offer the

11 testimony of the SFPD officers that responded to the Pelosi home on the night in question, or of

12 course, from Mr. Pelosi himself. As to the dangerous-weapon element, the government can simply

13 show the video of the hammer making contact with Mr. Pelosi and his falling to the ground, it can

14 enter the hammer itself into evidence, and it can elicit testimony form the responding officers or Mr.

15 Pelosi about the hammer and its dangerousness.

16     As to the probative value of the evidence, because the government can make use of alternative

17 evidence that is relevant on the same issues as the images and videos in question, their marginal

18 probative value—relative to the alternatives—is minimal. This is particularly true where, as here, the

19 defense does not dispute the enhanced-penalty element to Count Two and has offered to stipulate to

20 both means of establishing the element. The available alternatives, as well as this stipulation, render

21 the evidence the government seeks to admit as cumulative under Rule 403. Additionally, the lower

22 marginal probative value of the evidence here given the alternatives—compared against the high risk

23 of unfair prejudice—further supports exclusion under Rule 403. Accordingly, the availability of non-

24 prejudicial evidentiary alternatives warrants exclusion of the videos and images in question under

25 Rule 403 both for its prejudicial effect and as needlessly cumulative.

26     Thus, the Court should exclude the specified photographs and portions of body cam footage.

27 ████████████████████████████████████████

28 ████████████████████████████████████████. The risk of

1  unfair prejudice substantially outweighs the evidence's extremely limited probative value given that

2  the defense is willing to stipulate to both ways of establishing the enhanced-penalty element of Count

3  Two, and that there exist ample non-inflammatory ways for the government to establish that element,

4  thus also rendering the evidence cumulative.

5  **VII.   Motion In Limine #7: The Court Should Also Exclude Under Rule 403 The Testimony Of**
   **The Government's Three Proposed Physician Witnesses As Wasting Time And Needlessly**
6  **Presenting Cumulative Evidence**

7       Mr. DePape also asks the Court to exclude the government's proposed testimony from Dr.

8  Michael Huang, Dr. Geoffrey Manley, and Dr. Steven Straube, all of whom were physicians at San

9  Francisco General Hospital, who treated Mr. Pelosi the night of the charged conduct. Their

10  testimony's only conceivable relevance to any element of the charged offenses would be to the

11  *Apprendi* enhanced-penalty element for the assault charge, i.e., to establish that Mr. Pelosi suffered a

12  "serious bodily injury." *See* 18 U.S.C. § 115(b)(1)(B)(iv). As noted above, however, the government

13  need only prove either that a serious bodily injury resulted from the offense, or that a dangerous

14  weapon was used during and in relation to it—not both. *See id.* Nevertheless, Mr. DePape is willing

15  to stipulate to both prongs of the enhanced-penalty element, meaning that this proposed physician

16  testimony does not even concern a disputed fact in this case, but instead only a collateral issue.

17       Further, as noted above, in addition to Mr. DePape's offered stipulation, there is already ample

18  other testimony establishing this penalty element, including testimony from responding officers and

19  Mr. Pelosi, who will no doubt testify that he was seriously injured. And the dangerous-weapon

20  variant of the penalty element will likewise be incredibly obvious from the video showing a hammer

21  making contact with Mr. Pelosi's head, and from the testimony of Mr. Pelosi and the officers who

22  witnessed the event. Accordingly, any probative value of these physicians' testimony is incredibly

23  minimal. By contrast, this minimal probative value is substantially outweighed by the danger of

24  undue delay, wasting time, and needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403;

25  *see, e.g., United States v. Hooton*, 662 F.2d 628, 636 (9th Cir. 1981) (finding no abuse of discretion

26  in excluding "marginally relevant" cumulative evidence that the defendant was a hobbyist gun

27  collector, when numerous other witnesses testified to the same).  At the very least, the Court should

28  limit the government to presenting the testimony of a single physician concerning Mr. Pelosi's

1    injuries. *See id.*

2    **VIII.  <u>Motion In Limine #8:</u> The Court Should Permit Counsel To Inquire During Voir Dire**
3    **About Prospective Jurors' Political Party Affiliations And Whether They Voted For Or**
     **Against Nancy Pelosi**

4            At the hearing on Mr. DePape's motion to transfer venue, the Court stated that it intended to

5    conduct a thorough and extensive voir dire of prospective jurors because of the extensive pretrial

6    publicity concerning this case. The Court specifically mentioned, however, that it was unsure whether

7    it was permissible to conduct voir dire concerning prospective jurors' political affiliation or whether

8    they had voted for or against Nancy Pelosi (if they currently or previously resided in her district).[3]

9    Such voir dire questioning is both permissible and appropriate in this case.

10           "*Voir dire* plays a critical function in assuring the criminal defendant that his Sixth Amendment

11   right to an impartial jury will be honored. Without an adequate *voir dire* the trial judge's

12   responsibility to remove prospective jurors who will not be able impartially to follow the court's

13   instructions and evaluate the evidence cannot be fulfilled. Similarly, lack of adequate *voir dire*

14   impairs the defendant's right to exercise peremptory challenges where provided by statute or rule, as

15   it is in the federal courts." *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981). Especially in

16   high-profile trials with a political valence, such as this one, voir dire about prospective jurors'

17   political views and attributes is appropriate and necessary. *See, e.g., United States v. Dellinger*, 472

18   F.2d 340, 367–70 (7th Cir. 1972) (finding that district court erred in the Chicago Seven trial by

19   conducting insufficient voir dire of prospective jurors about political attitudes relevant to the trial);

20   *Cordero v. United States*, 456 A.2d 837, 841–45 (D.C. 1983) (reversing conviction for disrupting

21   Congress by an anti-war protestor because trial court failed to ask in voir dire questions about, inter

22   alia, whether prospective jurors' or their close friends' or family's membership in "any organization

23   which had as one of its objectives opposition to Communism"). Indeed, "[c]ourts have held that

24   controversial matters requiring careful inquiry include . . . political attitudes." *Cordero*, 456 A.2d at

25   842 (collecting cases); *see also Dellinger*, 472 F.2d at 368 ("Some questions may appear tangential to

26   the trial but are actually so integral to the citizen juror's view of the case, especially one with publicly

27   _____

28   [3] The Court could also obviate the need to ask this question by removing all prospective jurors who
     are currently represented by Ms. Pelosi.

DEF'S MOT. IN LIM.
*DEPAPE*, CR 22–426 JSC

controversial issues, that they must be explored.").

As to voir dire about political party affiliation or whether a prospective juror voted for an elected official who was an alleged victim of a criminal offense, the Ninth Circuit has not categorically prohibited such inquiry. The only Ninth Circuit decision to touch on this topic that undersigned could locate is *United States v. Goland*, which was a prosecution charging the defendant with violating campaign-finance laws in the 1986 United States Senate election in California. *See* 959 F.2d 1449, 1451 (9th Cir. 1992). The defendant supported the incumbent Democrat and spent money on television commercials supporting a third-party candidate in an effort to syphon votes away from the Republican candidate; however, Goland falsely stated that the commercials were paid for by the third-party candidate's committee, not himself. *See id.* at 1451–52. The district court did not allow Goland to question prospective jurors about which candidate they voted for in the 1986 election or with which political party they were registered. *See id.* at 1454.

While the Ninth Circuit found no abuse of discretion in this ruling, the court notably did not hold that asking such questions was categorically improper. *See id.* Instead, the court emphasized that it found no abuse of discretion in that specific case because other politics-related questions that were asked, such as "whether they had voted in the 1986 election, were active in politics, had participated in any federal campaign, or were familiar with the FEC or federal election law," as well as "whether any of the potential jurors supported [the candidates] in the 1986 election in a way other than voting, such as by actively campaigning or contributing campaign funds." *See id.* Here, unlike in Goland, however, this case directly involves an elected official as the alleged victim of the offense. *Cf. id.* Asking prospective jurors about their attitudes toward an alleged victim of an offense is always highly salient. Indeed here, if a prospective juror has a significant bias in favor of Nancy Pelosi by virtue of having voted for her such that they would be unable to fairly evaluate the facts adduced at trial, such information would result in excusal for cause, in addition to being relevant to Mr. Depape's reasonable use of peremptory challenges. Accordingly, in light of the specific nature of this case, which involves a prominent elected official as an alleged victim, the Court should permit inquiry during voir dire into prospective jurors' political party affiliation, and whether they ever voted for Nancy Pelosi.

1  IX.  **Motion In Limine #9:** **Due To The Extensive Prejudicial Pretrial Publicity In This Case,**
2       **The Court Should Increase The Number Of Peremptory Challenges To Mitigate The Risk**
       **Of Biased Jurors**

3          Ordinarily, in a non-capital felony trial, the government receives six peremptory challenges,

4  and the defendant receives 10. *See* Fed. R. Crim. P. 24(b)(2). But in cases that have been subject to

5  extensive prejudicial pretrial publicity, district courts may increase the number of peremptory

6  challenges in order to ensure the defendant's Sixth Amendment right to a fair trial. *See, e.g., United*

7  *States v. Blom*, 242 F.3d 799, 804 (8th Cir. 2001) (finding no abuse of discretion in district court's

8  denial of motion to change venue because district court took measures to mitigate the effect of

9  pretrial publicity, including "increasing the number of peremptory strikes for each side"); *United*

10 *States v. Williams*, No. CR 06-00079 JMS-KSC, 2014 WL 712598, at *4 (D. Haw. Feb. 21, 2014)

11 (recognizing authority to grant additional peremptory challenges based on extensive pretrial

12 publicity). Mr. DePape respectfully requests that the Court grant the defense an additional 10

13 peremptory challenges, i.e., a total of 20, to mitigate against the pervasive negative pretrial publicity

14 about Mr. DePape and his alleged conduct.

15         As outlined in Mr. DePape's motion to transfer venue, the alleged offense and this trial have

16 been the subject of extensive pretrial publicity, with 77% of prospective jurors in the San Francisco

17 Division being already familiar with this case and 77% of prospective jurors already believing Mr.

18 DePape is guilty of assaulting Paul Pelosi. *See* Dkt. 41 at 5–11; Dkt. 44-1 at 2–3. Even more

19 concerning, a large majority of prospective jurors said they would have a difficult time being

20 convinced that Mr. DePape is not guilty, with Mr. DePape facing a presumption of guilty rather than

21 of innocence. *See* Dkt. 44-1 at 4 (68.2% of San Francisco jurors would have a hard time being

22 convinced that Mr. DePape is not guilty of assaulting Paul Pelosi). In cases with such high levels of

23 pretrial publicity, courts will grant additional peremptory challenges to mitigate the risk of seating

24 biased jurors. *See Blom*, 242 F.3d at 204 (affirming granting of additional peremptory challenges

25 when a highly publicized search for a missing sales clerk preceded defendant's arrest in relation to

26 her rape and murder); *United States v. Moussaoui*, No. CR. 01-455-A, 2002 WL 1987955, at *1 (E.D.

27 Va. Aug. 16, 2002) (granting additional peremptory challenges in trial of Zacarias Moussaoui for

28 conspiracy to commit the 9/11 attacks); *United States v. Bonanno*, 177 F. Supp. 106, 123 (S.D.N.Y.

1959) (granting additional peremptory challenges in order to mitigate prejudicial pretrial publicity in case involving mafia figures).

Likewise, the American Bar Association's influential *Criminal Justice Standards* have long suggested that granting additional peremptory challenges in cases that have "been the subject of significant publicity." *See* ABA, *Criminal Justice Standards: Fair Trial and Public Discourse* § 8-5.3(e) (2013), *available at* https://www.americanbar.org/groups/criminal_justice/standards/crimjust_standards_fairtrial_blk/ (last accessed Sept. 26, 2023). And courts have looked to these standards when deciding whether to grant additional peremptory challenges in high-publicity cases. *See, e.g., Newcomb v. State*, 800 P.2d 935, 940 (Alaska Ct. App. 1990) (noting that Alaska courts have adopted this ABA standard "broadening the defendant's right to disqualify jurors for cause in a high publicity case" and encouraged "trial judges to freely allow additional peremptory challenges in high publicity cases").

Here, in light of the extensive, negative pretrial publicity, *see* Dkt. 41 at 5–11, Mr. DePape respectfully requests that he receive 10 additional peremptory challenges for a total of 20, to mitigate the effect of the prejudicial publicity. Because the pretrial publicity has been far more prejudicial to the defense, and because only Mr. DePape has a Sixth Amendment right to a trial before an impartial jury, affording only Mr. DePape additional peremptory challenges is warranted. *See, e.g., Bonanno*, 177 F. Supp. at 123 ("award[ing] the defense 42 peremptory challenges, which is 32 more than is required by the Federal Rules of Criminal Procedure, while the government will be held to its 6 challenges" based on pretrial-publicity concerns). At the very least, Mr. DePape respectfully requests the Court double the number of peremptory challenges for both parties, granting Mr. DePape 20 and the government 12.

## CONCLUSION

For the foregoing reasons, Mr. DePape respectfully requests that the Court grant his motions in limine as set forth above.

1

2    Dated:       September 27, 2023                    Respectfully submitted,

3

4                                                              /S
                                                       ANGELA CHUANG
5                                                      TODD BORDEN
                                                       JODI LINKER
6                                                      Counsel for Mr. DePape

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28