1  JODI LINKER
   Federal Public Defender
2  Northern District of California
   ANGELA CHUANG
3  TODD BORDEN
   Assistant Federal Public Defenders
4  19th Floor Federal Building - Box 36106
   450 Golden Gate Avenue
5  San Francisco, CA 94102
6  Telephone: (415) 436-7700
   Facsimile: (415) 436-7706
7  Email:     Angela_Chuang@fd.org

8
   Counsel for Defendant DePape
9

10
11                    IN THE UNITED STATES DISTRICT COURT
12                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
13                            SAN FRANCISCO DIVISION
14

15 | UNITED STATES OF AMERICA, | **Case No.:** CR 22–426 JSC |
16 | Plaintiff, | **DEFENDANT'S REPLY IN SUPPORT OF MOTIONS IN LIMINE** |
17 | v. | |
18 | DAVID WAYNE DEPAPE, | **Court:** Courtroom 8, 19th Floor<br>**Hearing Date:** October 26, 2023 |
19 | Defendant. | **Hearing Time:** 1:00 p.m. |

20
21
22
23
24
25
26
27
28

DEF'S REPLY ISO MOT. IN LIM.
*DEPAPE*, CR 22–426 JSC

# INTRODUCTION

Mr. DePape submits his reply in support of his motions in limine in accordance with the pretrial schedule in this matter.

# ARGUMENT

I. **Reply In Support Of Motion In Limine #4: The Court Should Order All Government Witnesses Under Defense Subpoena And Order the Government to Provide an Accurate Witness List**

The government's description of its own witness list as "overinclusive" and its statement that "it does not intend to subpoena or call all the witnesses on its witness list," Dkt. 100 at 2, boils down to an explicit recognition that the witness list it filed is essentially meaningless. The government has yet to specify who or even how many of the 29 people on its witness list it expects to call at trial, leaving Mr. DePape to play a guessing game as to which witnesses will actually testify. With trial set to begin in less than three weeks, the government should know by now which witnesses it intends to call and which witnesses it will not call, and it should have provided the defense with that information, which is crucial to the defense team's ability to reasonably anticipate what government witnesses will appear and to prepare accordingly. Instead, due to this lack of information, the defense finds itself in the position of preparing as if every witness listed by the government will testify at trial. What is the point of a pretrial deadline for the filing of witness lists if a party is permitted to list every possible witness it can conceive of while only planning to call an undefined subset thereof?

The Court's inherent authority to manage a trial, as well as Mr. DePape's constitutional right to compulsory process, warrant an order deeming all government witnesses to be under defense subpoena. That is particularly necessary here, where the government has not provided a reasonably tailored list of anticipated witnesses. Additionally, the government must be ordered to identify which witnesses on its list **will not** be called at trial and continue to do so on an ongoing basis should circumstances change

II. **Reply In Support Of Motion In Limine #6: The Court Should Exclude Body-Worn Camera Footage And Photographs ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Under Rule 403**

A. **The government still seeks to introduce unduly prejudicial video, audio, and photographs of Mr. Pelosi's injuries**

The government has narrowed the scope of the evidence they intend to offer at trial relative to

1 its original exhibit list. Thirteen of the government's proposed exhibits, however, still contain
2 graphic, disturbing, and gratuitous video footage, audio, and photographs depicting Mr. Pelosi's
3 injuries. For example, the government initially intended to offer all of Exhibit 2, the body-worn
4 camera footage of San Fransisco Police Department Officer Willmes. They have now limited the
5 footage they intend to offer to a roughly three-minute segment from timestamps 00:38 to 03:49. But
6 most of the footage the government intends to offer, from timestamps 01:25 to 03:49, still contains
7 precisely the most unduly prejudicial footage the defense seeks to exclude. ▅▅▅▅▅▅▅▅▅▅
8 ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅
9 ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅
10 ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅
11 ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅
12 ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ These images are
13 repeated over and over throughout many of the other exhibits the government intends to offer. Based
14 on the government's revised proposed exhibit list,[1] (Dkt. 100 Ex. A) the defense now moves to
15 exclude the following evidence:

- Ex. 2 (DEPAPE-0000173): Officer Willmes' body-worn camera footage from 01:25-03:49
- Ex. 30 (DEPAPE-0000735): Photograph of Paul Pelosi
- Ex. 31 (DEPAPE-0000736): Photograph of David DePape and Paul Pelosi
- Ex. 75 (DEPAPE-0000406): Photograph of Pelosi residence
- Ex. 76 (DEPAPE-0000539): Photograph of Pelosi residence
- Ex. 77 (DEPAPE-0000543): Photograph of Pelosi residence
- Ex. 84 (DEPAPE-0000666): Photograph of Pelosi residence
- Ex. 298 (DEPAPE-0003062): Photograph of Paul Pelosi's hand injury
- Ex. 305 (DEPAPE-0003069): Photograph of Paul Pelosi's elbow injury

---

[1] Similar to the government's witness list, the overinclusive dump of exhibits provided by the government has rendered the Court's pretrial scheduling order relatively meaningless and resulted in a significant waste of time by the defense.

- Ex. 310 (DEPAPE-0003074): Photograph of Paul Pelosi's head injury
- Ex. 312 (DEPAPE-0003077): Photograph of Paul Pelosi's head injury
- Ex. 314 (DEPAPE-0000171): Officer Najarro's body-worn camera footage from 00:43-01:12
- Ex. 315 (DEPAPE-000171): Officer Najarro's body-worn camera footage from 08:51-09:19

**B.  The probative value of the disputed evidence is extremely minimal and substantially outweighed by the risk of unfair prejudice**

The government argues that the disturbing videos and photos of Mr. Pelosi's injuries are "relevant specifically to intent, which will undoubtedly be at issue in this case on both charges." Dkt. 100 at 3. Yet the government fails to identify how, with any meaningful specificity, the disputed images and videos will aid the jury in determining any particular intent element as to either count, and instead invokes "intent" only in the broadest terms without elaboration. The government fails to connect the dots between graphic and disturbing videos and images ███████████████, and Mr. DePape's intent to kidnap Ms. Pelosi.

Moreover, as the government has observed, assault is a general intent crime.[2] *See* Dkt. 85 at 4. Accordingly, the government is not required to show that Mr. DePape intended to cause any particular injury to Mr. Pelosi. Showing the jury disturbing images and videos of the aftermath of the completed strike has no (or at most extremely marginal) probative value to determine whether Mr. DePape intentionally moved his arm to cause the hammer to make contact with Mr. Pelosi. After the police tackled, restrained, and detained Mr. DePape, nothing Mr. DePape did, and nothing that happened to Mr. Pelosi, has any bearing on whether Mr. DePape intended to strike Mr. Pelosi. Given the limitations of what the government must prove to show "intent," the government has failed to show with any specificity how the graphic videos and images of Mr. Pelosi's injuries are probative to

---

[2] Section 115(a)(1)(A) has a separate specific-intent requirement that the government prove the defendant had "intent to impede, intimidate, or interfere with such [federal official] while engaged in the performance of official duties, or with intent to retaliate against such [federal official] on account of the performance of official duties." 18 U.S.C. § 115(a)(1). The government does not attempt to explain any conceivable relevance the graphic videos and photos of Mr. Pelosi's injuries have to this element.

1  whether Mr. DePape struck Mr. Pelosi intentionally. Any probative value would be extremely
2  minimal since the images and videos at issue were captured many minutes or hours *after* the assault
3  itself.
4      Thus, the only real relevance of the disputed evidence is to the penalty-enhancement element.
5  But as to that element, the government intends only to proceed on a theory that "a dangerous weapon
6  was used during and in relation to the offense," *see* 18 U.S.C. § 115(b)(1)(iv), not that the assault
7  resulted in serious bodily injury. *See* Dkt. 100 at 3. The need to enter in evidence graphic and
8  disturbing videos of Mr. Pelosi's injuries is only marginally relevant to the dangerousness of the
9  hammer, particularly since the jury will be shown the video of the assault itself and of Mr. Pelosi
10 falling to the ground, which will easily establish the element that a dangerous weapon was used. This
11 element, moreover, is undisputed, as Mr. DePape has agreed to stipulate and will not contest that a
12 dangerous weapon (a hammer) was used during and in relation to the offense, which greatly reduces,
13 if not negates, the government's need to prove it up at trial. *See United States v. Merino-Balderrama*,
14 146 F.3d 758, 762 (9th Cir. 1998).
15     Even though Mr. DePape is willing to stipulate to the penalty-enhancement element, the
16 government suggests this does not matter because, in its view, "*Old Chief* stands for the rule that the
17 prosecution can prove its case without accepting defense stipulations aside from those wholly
18 independent from the events of the case, like the predicate status of the felony conviction on a felon-
19 in-possession case." *See* Dkt. 100 at 4 (citing *Old Chief v. United States*, 519 U.S. 172 (1997)).
20 Unfortunately for the government, the Ninth Circuit has never cabined *Old Chief*'s holding so
21 narrowly. To the contrary, the Ninth Circuit has applied *Old Chief* more broadly, including to graphic
22 images of child pornography, which were surely not wholly independent from the events of that case.
23 *See, e.g., Merino-Balderrama*, 146 F.3d at 762–63.
24     Rather than discussing how the disputed evidence is tied to specific elements of the offense, the
25 government argues that this evidence "goes to the full story of Defendant's assault, as well as his plan
26 to kidnap Congresswoman Pelosi and his unwillingness to be deterred from that plan." *See* Dkt. 100
27 at 3. But Rule 403's analysis is an elements-centric one, and the probative value of evidence that goes
28 only to the government's "story" is minimal. *See, e.g., United States v. Gonzalez-Flores*, 418 F.3d

1093, 1098 (9th Cir. 2005) ("The probative value of evidence against a defendant is low where the evidence does not go to an element of the charge."). Further, excluding the disputed inflammatory evidence would not preclude the government from telling its full story. The responding officers and Mr. Pelosi will presumably testify as to what happened after Mr. Pelosi fell to the ground. Instead, Mr. DePape seeks only to exclude under Rule 403 specific video, audio, and photographs that are graphic and disturbing, which risks "trigger[ing] an emotional response from the jury members" that is unfairly prejudicial to Mr. DePape. *See id.* at 1099. ██████████████████████

██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
████████████████████

The government's counter analysis of Ninth Circuit precedent is also unpersuasive. *See* Dkt. 100 at 4–5. It first cites *United States v. Miguel*, 87 F. App'x 67 (9th Cir. 2004), an unpublished case[3] involving a hate crimes prosecution for murder, where the jurors were shown photographs of the victim's corpse. But in *Miguel*, one of the disputed elements necessary to establish that the offense was a hate crime was "whether the crime was conducted in a depraved and heinous manner indicative of a hate crime." *Id.* at 69. Here, Mr. DePape is willing to stipulate to the enhanced penalty element, and in any event the penalty element here is entirely different and requires only a determination that a dangerous weapon was used, and not that the alleged assault was "depraved and heinous." *Cf. id.*

---

[3] The government's citation of an unpublished Ninth Circuit decision from 2004 is improper. *See* Ninth Cir. R. 36-3(c) (prohibiting citation to unpublished Ninth Circuit dispositions issued before January 1, 2007 in "the courts of his circuit" except in limited circumstances not applicable here).

Next, it cites *United States v. Boise*, 916 F.2d 497 (9th Cir. 1990), for the proposition that "[t]he Ninth Circuit has permitted admission of photographs that were prejudicial." *See* Dkt. 100 at 4. But the entirety of *Boise*'s discussion of the issue consists of the following two sentences: "Boise argues that the use of an autopsy photograph was prejudicial under Rule 403. We find no abuse of discretion." 916 F.2d at 504. *Boise* also predated *Old Chief*, making its sparse reasoning even less salient. Likewise, the government cites a habeas case, *Batchelor v. Cupp*, 693 F.2d 859 (9th Cir. 1982), for the same proposition as above. *See* Dkt. 100 at 5. But because *Batchelor* was a habeas case reviewing a state court judgment, it did not actually address Rule 403 at all; instead, it concerns the defense's claim of a due-process violation. 693 F.2d at 865. In *Batchelor*, the defense objected to a photograph of the victim which showed her genital area, which the defense posited could have unfairly led the jury to believe the victim had been sexually assaulted, even though that was not the case. *Id.* The federal appellate court merely determined that the state trial court's ruling "[would] not be disturbed on due process grounds . . . unless the admission of the photographs rendered the trial fundamentally unfair." *Id.* This case is not relevant here.

The government's citation to a 1966 case, *Maxwell v. United States*, fares no better. *See* Dkt. 100 at 5 (citing 368 F.2d 735 (9th Cir. 1966)). In *Maxwell*, the doctor that performed the decedent's autopsy testified as to the picture in question—an autopsy photo—and said that he knew the decedent when he was alive, and therefore could identify the decedent, Donald Short, by name. *Id.* at 739. The government, therefore, needed the photograph to prove that it was indeed Donald Short who had been killed. *Id.* Furthermore, the court noted that the picture in question was "relatively innocuous," and not "of such gruesome and horrifying nature that its probative value was outweighed by the danger of inflaming the jury against [the defendant]." *Id.* at 739–40. The question here is not simply whether the evidence has *any* probative value. The question is whether "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Unlike in *Maxwell*, the graphic and disturbing videos and images at issue here do not address any disputed issue of fact, and they are not "innocuous"; ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Cf. id.*

Finally, the government also cites *United States v. Weber*, 599 F. Supp. 3d 1025 (D. Mont.

2022), noting that "the Ninth Circuit has upheld convictions in child pornography cases where the government has showed the images after refusing to stipulate." *See* Dkt. 100 at 5. But both *Weber* and the case upon which it most relies, *United States v. Ganoe*, 538 F.3d 1117, 1119 (9th Cir. 2008), involved situations where the defense's proffered stipulation did not fully satisfy an element of the government's case; namely, "the government was obligated to prove that [the defendant] knew the downloaded images were child pornography [to which the defendant] would not stipulate." *Ganoe*, 538 F.3d at 1220. The court noted that "the proffered stipulation was incomplete" and therefore "the images themselves . . . were highly probative of the state of mind with which the files were received and possessed." *Id.* at 1123–24. Here, by contrast, Mr. DePape's offered stipulation is complete as to the penalty element, and the government has failed to articulate the probative value of the disputed evidence to any other element of either offense. Accordingly, in light of this complete stipulation, the marginal probative value of the graphic and disturbing videos and images is low to nil. It is for that reason that the risk of unfair prejudice substantially outweighs the evidence's probative value under Rule 403, and the cases relied upon by the government are inapposite.

### III. Reply In Support Of Motion In Limine #7: The Court Should Exclude The Testimony Of All Treating Physicians Under Rule 403

While the government states that it "expects" to only call one physician "at present," it does not commit to that because its' "assessment is ongoing." *See* Dkt. 100 at 7. With trial starting in less than three weeks, and the government's witness list due September 13, 2023, the government's unwillingness to commit further supports Mr. DePape's motion to exclude this testimony.

Even if the government does commit that it seeks only to introduce the testimony of one physician witness at trial, the Court should still exclude that testimony under Rule 403 based on its extremely low probative value and the substantial risk of wasting time and needlessly presenting cumulative evidence. The probative value of the treating physician's testimony is especially low since the government is proceeding only on a dangerous-weapon theory of why the enhanced-penalty element should apply—not the serious-bodily-injury theory. *See* Dkt. 100 at 3. Even aside from the fact that Mr. DePape is already willing to stipulate that "a dangerous weapon was used during and in relation to the offense," *see* 18 U.S.C. § 115(b)(1)(iv), the proposition that a hammer is a dangerous

weapon—particularly when swung at the head of another human being—is incredibly obvious and could easily be established based on the video of the assault itself, Mr. Pelosi's testimony, and the testimony of the responding police officers. Having a neurosurgeon testify as to precise medical details of Mr. Pelosi's injuries is incredibly attenuated from the relevant legal issue: whether Mr. DePape used a dangerous weapon during and in relation to the charged assault. Any marginal probative value of "the" neurosurgeon's testimony—whichever of three the government seeks to offer—would be substantially outweighed by the danger of wasting time, unfair prejudice, and needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403.

### IV. Reply In Support Of Motion In Limine #8: The Court Should Permit Counsel To Inquire About Prospective Jurors' Political Party Affiliation And Whether They Voted For Nancy Pelosi

The government objects to allowing counsel to inquire of prospective jurors' political party affiliation, or whether they voted for Nancy Pelosi, arguing that such questions are unnecessary and impinge on the secret ballot. *See* Dkt. 100 at 7–9. As an initial matter, asking about political party affiliation in no way impinges on the secret ballot. Indeed, the jury questionnaire already asks a broad range of far more intrusive questions about prospective jurors' employment, family, whether they have been the victim of a crime, and numerous other matters. Asking prospective jurors in private about their political affiliation is not unduly intrusive and is relevant to considering possible biases of jurors in a case where the alleged victim is a prominent political figure. Further, as the Supreme Court has long recognized, the voir dire process often entails asking prospective jurors private, personal questions, about matters far more sensitive than politics. *See, e.g., Press-Enterprise Co. v. Superior Ct. of California, Riverside Cnty.*, 464 U.S. 501, 511–12 (1984) (outlining hypothetical disclosure by prospective juror that she or a family member had been the victim of a sexual assault).

The government further suggests that asking prospective jurors who reside in California's 11th congressional district whether they voted for Ms. Pelosi would undermine the secret ballot. *See* Dkt. 100 at 9. But the voir dire process necessarily entails asking private questions to determine whether a juror can be fair. *See, e.g., Press-Enterprise*, 464 U.S. at 511–12; *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981). And asking questions about a prospective juror's personal opinions about the alleged victim of a crime is entirely unremarkable and relevant to the voir dire process, and it is

highly salient for the defense to know whether any prospective juror residing in Ms. Pelosi's district personally selected her to serve as their elected representative in Washington. Choosing to register with a political party or to vote for or against a candidate is an intentional choice that arguably reveals more about a juror's potential biases than whether they happen to be related to someone who works in law enforcement—a question routinely posed to jury pools and that involves far less volition than one's vote or party registration. Alternatively, the Court should exclude all prospective jurors who currently reside in California's 11th congressional district. This would obviate the need for any inquiry about whether jurors personally voted for Ms. Pelosi. It would also reduce a potential source of bias by prospective jurors who may have occasion to rely on Ms. Pelosi for a broad range of constituent services, be it help with the immigration and naturalization process for a relative, resolving a dispute with the Social Security administration, nominating a child to attend a military Service Academy, or getting a passport more quickly—all services of which and more Ms. Pelosi provides to her 11th district constituents. *See* https://pelosi.house.gov/how-can-i-help-you (last accessed Oct. 18, 2023).

**V.     Reply In Support Of Motion In Limine #9: The Court Should Increase The Number Of Defense Peremptory Challenges In Light Of The Pervasive Prejudicial Pretrial Publicity**

The government objects to the Court exercising its authority to increase the number of peremptory challenges based on the prejudicial pretrial publicity in this matter, arguing that the defense's request to double the number of peremptory challenges from 10 to 20 is "arbitrary." *See* Dkt. 100 at 9–10. Of course, any request for an increased number of challenges will always be arbitrary to some degree, as the case law concerning increased peremptory challenges has never crystallized any precise formula. Indeed, Rule 24's allotment of six peremptory challenges to the government and 10 to the defense in non-capital felony trials is itself arbitrary. But given the substantial prejudicial pretrial publicity in this case—which the government does not dispute—this is precisely the sort of case where judges have exercised their discretion to increase the number of challenges to guard the defendant's Sixth Amendment right to a fair trial by an impartial jury. *See, e.g., United States v. Blom*, 242 F.3d 799, 804 (8th Cir. 2001) (noting that trial court's increase in the number of peremptory challenges mitigated prejudicial effect of extensive media coverage).

1    The government further argues that increasing the number of peremptory challenges is
2 unwarranted in a single-defendant case. *See* Dkt. 100 at 10. While some of the cases cited by the
3 defense did involve multiple defendants, not all did. *See, e.g., Blom*, 242 F.3d at 804 (granting
4 additional peremptory challenges in a single-defendant prosecution for being a felon in possession of
5 a firearm). Accordingly, in light of the extremely high level of pretrial publicity in this case, the
6 Court should grant Mr. DePape's request for additional peremptory challenges to protect his Sixth
7 Amendment right to trial by an impartial jury.

## CONCLUSION

For the foregoing reasons, Mr. DePape respectfully requests that the Court grant his motions in limine.

Dated:     October 18, 2023                    Respectfully submitted,

                                               /S
                                               ANGELA CHUANG
                                               JODI LINKER
                                               TODD BORDEN
                                               Counsel for Mr. DePape