Pages 1 - 26

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jacqueline Scott Corley, Judge

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
   VS.                         )   **NO. CR 22-00426-JSC**
                               )
DAVID WAYNE DEPAPE,            )
                               )
          Defendant.           )
_____)

                    San Francisco, California
                    Friday, November 3, 2023

                 **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
                    ISMAIL J. RAMSEY
                    United States Attorney
                    450 Golden Gate Avenue
                    San Francisco, California 94102
               BY:  **LAURA E. VARTAIN**
                    **HELEN L. GILBERT**
                    **ASSISTANT UNITED STATES ATTORNEYS**

For Defendant:
                    JODI H. LINKER
                    Federal Public Defender
                    450 Golden Gate Avenue
                    San Francisco, California 94102
               BY:  **JODI H. LINKER**
                    **ANGELA CHUANG**
                    **TODD M. BORDEN**
                    **ASSISTANT FEDERAL PUBLIC DEFENDERS**


          (APPEARANCES CONTINUED ON FOLLOWING PAGE)

Reported By:  Ruth Levine Ekhaus, RMR, RDR, FCRR
              Official Reporter, CSR No. 12219

```
 1   APPEARANCES:   (CONTINUED)

 2   For Interested Party "Target 1":
                            SWANSON & MCNAMARA
 3                          300 Montgomery Street - Suite 1100
                            San Francisco, California  94104
 4                  BY:  EDWARD W. SWANSON, ATTORNEY AT LAW
                         CARLY BITTMAN, ATTORNEY AT LAW
 5
     Also present:      Maddi Wachs, Paralegal
 6                      Sheree Cruz-Laucirica, Paralegal

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

PROCEEDINGS

| | |
|---|---|
| 1 | **Friday - November 3, 2023**                                    **10:01 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---o0o--- |
| 4 |         **THE CLERK:**  All rise.  This Court is now in session, |
| 5 | the Honorable Jacqueline Scott Corley presiding. |
| 6 |         Please be seated. |
| 7 |         Calling Criminal Action CR-22-0426, USA versus David Wayne |
| 8 | DePape. |
| 9 |         Please state your appearance. |
| 10 |         **MS. VARTAIN:**  Good morning, Your Honor.  Laura Vartain |
| 11 | and Helen Gilbert for the United States. |
| 12 |         **THE COURT:**  Good morning. |
| 13 |         **RIGHT:**  Good morning, Your Honor.  Angela Chuang, Jodi |
| 14 | Linker, and Todd Borden at the table on behalf of Mr. DePape, |
| 15 | who is present and in custody. |
| 16 |         **THE COURT:**  Good morning. |
| 17 |         Good morning, Mr. DePape. |
| 18 |         Okay.  So we have a few things to discuss.  First let's |
| 19 | start with the jurors that we can excuse. |
| 20 |         Thank you so much for working together and coming up with |
| 21 | the list, many of whom were on my list as well -- especially |
| 22 | the woman who's 38 weeks pregnant, and the other one training |
| 23 | for the Olympics; we cannot impede her representation of the |
| 24 | United States in the Olympics. |
| 25 |         So I will excuse -- and I will go through the numbers now: |

1          2, 11, 22, 39, 42, 48, 51, 56, 60, 62, 73, 77, 81, 84, 93,

2     and 109.

3          With respect to the ones that the parties disagree, as I

4     said, I will not excuse, and none of them were on my definite

5     excuse list.  My experience has been that a number of them will

6     just not show up.  For example, the juror who says he has to be

7     at the New York Marathon on Sunday, we'll see if he's here

8     Monday morning; it's very doubtful.  The two students who say

9     they have exams but they weren't specific about that, so I

10    think it's fair to have them come in and be questioned.  Okay.

11         MS. VARTAIN:  Your Honor, just for the record -- and I

12    can provide more detail, but the parties' agreement to exclude

13    wasn't entirely based on hardship, we also -- where we agreed

14    on cause, those were included in the list.  And I don't know if

15    the Court wants to go through those, but I want to be clear

16    that the parties' agreement was not limited to hardship.

17         THE COURT:  Yes, I saw that some of them were not.

18    And I assumed there was a bit of horse trading, and that's

19    fine.  And, frankly, it will make it go more quickly and you

20    not have to use your time on Monday on someone who's going

21    to -- you know, one side or the other.

22         There were some definite views expressed that would

23    probably be hard to rehabilitate.  So let's -- good to get them

24    out in advance.  And we're going to have plenty of jurors and

25    I'm very pleased with, at least, what the questionnaires show.

**PROCEEDINGS**

1   I think we'll be able to get a fair jury.

2        So let me talk a little bit about how I think the jury

3   selection will go.

4        So I want -- the jurors will use their numbers as opposed

5   to their names.  I think that will be helpful, help respect

6   their privacy.  We'll also probably be likely to get candid

7   answers from the jurors.  You, of course, will know their

8   names, so let's refer to them by number.

9        There'll have their number, and they will come in and be

10  seated by number.  We're going to tell them we're like

11  Southwest Airlines.  So they'll line up outside by number, and

12  Ms. Means will seat them by number.  We'll have the 14 in the

13  box.  You can see Ms. Means has already started, and then we'll

14  have ten in each row on this side.

15       Now, what I'm envisioning is that we'll have -- I think I

16  came up with about -- is it through the third row there?  I

17  don't -- someone is sitting -- I don't know what the number

18  goes.  It's around 40 people.  So you only need to question,

19  when you have your hour, those 40 people.  Those are the 40 in

20  the box.

21       I don't want you spending your time having to question

22  people at the end who we're never going to get to, necessarily.

23  I want you to be able to use your time on the people who really

24  are at issue to begin with.  So you can just -- so those 40

25  will be, quote, be in our box who you can, then, question.

**PROCEEDINGS**

1        When we're done, each of you, with your time, we'll then

2    go to sidebar with the white noise here.  And you can make your

3    for-cause and, to the extent there are any, hardship

4    challenges.

5        I'll rule on those.  To the extent we have 30 left, then

6    we'll take a break so you can then work on your peremptories.

7    I think that's right, because we need 14 jurors and there are

8    16 total peremptories, 10 and 6, right.

9        If, however, after I rule on the hardship and for-cause

10   challenges, we have fewer than 30 people left, then we'll fill

11   those people who were excused with next jurors in order of

12   numbers.  And I'll give you more time to question them.  We'll

13   figure out how many are left, how much time to give you each to

14   question just the new jurors, not the jurors who have already

15   been questioned.

16       Let me ask you what your preference is in terms of seating

17   any replacement jurors.  Is it easier for you to keep track if

18   we just move everyone a seat, or if they replace in order the

19   people who have moved?

20       **MS. CHUANG:**  I think, for us, it would be easier if

21   everyone moves.

22       **THE COURT:**  That's what I've done in the past.

23   Does that work for the Government?

24       **MS. VARTAIN:**  Yes.

25       **THE COURT:**  So we'll do that.  We'll just have

1   everyone move down and then the new people will go at the end.

2       Let me -- for jury -- when we move to peremptories -- I'm

3   trying to remember how you do it.  I think -- what is it?  Two,

4   two -- how is it?

5       **MS. CHUANG:**  I usually just follow the sheet in terms

6   of the order; I don't know it off the top of my head.  But the

7   standard form that we pass back and forth, I think, tells us

8   what -- how many we do and how many the Government does.

9       **MS. VARTAIN:**  I don't have it in front of me, Your

10  Honor.

11      **THE COURT:**  All right.  You guys work it out.

12  Whatever you work out is fine.

13      And I used to sort of -- if you passed over someone, you

14  couldn't go back to them.  I've been persuaded that's not the

15  way you guys like to do it.  So if you want to skip somebody,

16  you can skip them and then come back to them.  But, of course,

17  if you skip a challenge, you lose that challenge, but you can

18  skip around the pool.

19      Does that make sense?

20      **MS. CHUANG:**  So we could, for example, use a strike on

21  let's say Juror 12 and, then, on a later strike, go back and

22  strike Juror 4 if we want to.

23      **THE COURT:**  Correct.

24      **MS. CHUANG:**  Yes.

25      **THE COURT:**  That's how you would prefer to do it.

**PROCEEDINGS**

1    Okay.  All right.  So that's how we will do that.

2          **MS. VARTAIN:**  Yes.

3      Your Honor, will you do any further hardship questioning

4    yourself when they're seated?

5          **THE COURT:**  I don't think so.  I don't think so.  I

6    think the questionnaire was so detailed and we really -- and

7    we've excused the people, I think -- and I don't want to start

8    that:  Oh, I have this.  I have that.

9      They had an opportunity if they had travel or whatever it

10   would be.  So, no, I'm not going to do that.

11         What I am going to do is -- and maybe, Ms. Means, could

12   you put it up?

13         **THE CLERK:**  I'm sorry?

14         **THE COURT:**  The PowerPoint.

15         **THE CLERK:**  Yeah, I can do it right now.

16         **THE COURT:**  I have a little PowerPoint, as I go

17   through -- and why don't we go through it and so you can see

18   how I'm going to do when they sit here, before you start

19   questioning them.  I tell them about the case.  I really

20   emphasize the "no research," the "no talking to anyone," all

21   that kind of stuff.

22     I introduce the case.  I'll have you -- even though your

23   names were on that list, have you all introduce the people at

24   your table.  And then I'll ask them again, now that they've

25   seen you, whether they recognize any of you -- identify the

**PROCEEDINGS**

1  name of my staff, because they were not on the list to see if

2  any of them know them, and then I also tell them our

3  anticipated schedule, because, for a lot of them, that will be

4  a pleasant surprise and I think that might help.

5           **MS. CHUANG:**  That also reminds me that the Government

6  and -- we still need to submit a list of additional names about

7  whether they personally know them.  We will have that ready for

8  Monday morning.

9           **THE COURT:**  I thought for Monday for Target 1 --

10          **MS. CHUANG:**  Right.

11          **THE COURT:**  -- but you want me to do that.

12          **MS. CHUANG:**  Right.  Because it's not just Target 1.

13  Target 1, I know we would ask the seated jury at the end, but

14  other people, other names, most -- essentially public figures

15  on that list that they may personally know.

16          **THE COURT:**  Okay.  I can add that.  I can add that in.

17  I'll ask them.

18      And then, lastly, I do have a slide of -- summarizing the

19  two charges that I want you to look at, and what I was thinking

20  of saying.

21          **MS. VARTAIN:**  Okay.  Thank you.

22      And we did meet and confer and have a proposal, but we can

23  take a look at the Court's --

24          **THE COURT:**  Okay.

25          **THE CLERK:**  I need some time.

PROCEEDINGS

1          **THE COURT:**  Okay.  We'll come back to that.  Let's

2    come back to that.

3          All right.  So let's, then, talk about Target 1.  I see

4    Mr. Swanson is it here.

5          **MR. SWANSON:**  Good morning, Your Honor.

6          **THE COURT:**  Good morning.

7          So, Mr. Swanson, we agree we'll refer to Target 1 by

8    "Target 1."  The jury will be shown Target 1's name, like on a

9    piece of paper, once they're seated, but before I let anyone

10   go, so we can make sure none of them personally know Target 1.

11   Assuming that's the case, then we'll seat that jury and let the

12   rest of the people go.

13         **MR. SWANSON:**  I appreciate that.

14         I do have other comments on this, but they are not sort of

15   in the order of voir dire, so I could raise that at the end.

16         **THE COURT:**  No, we'll raise it now while you're here.

17         **MR. SWANSON:**  Okay.  So when we last appeared, Your

18   Honor, we were talking about the procedures for how to handle

19   Target 1 at the time they testified.  And since I was last

20   here, we had an opportunity to meet with the Defense, and had a

21   conversation about, generally, the scope of topics that they

22   might be interested in.  I'm not going to, obviously, reveal

23   any of those here.

24         I did not come away understanding, with any precision,

25   what it is that the Defense is seeking, but at least I had a

**PROCEEDINGS**

1  broad sense of what they might be seeking.

2       With that knowledge, I, then, spent time with our client

3  to understand what our client might know on any of the topics

4  that I understood within that very broad scope.  I, then,

5  proffered that back to the Defense and said:  Although I do not

6  know what it is you exactly wish to pursue, I think, within the

7  scope of everything I have said, is, presumably, the material

8  you're looking for.

9       Based on what I understand from my client, and

10  specifically what my client actually knows, and how my client

11  actually knows those things, I don't believe anything that my

12  client would have to offer within this scope could be relevant

13  and admissible, and therefore, ask the Defense in light of that

14  proffer, to withdraw the subpoena.

15       They have not done so.

16       What I would propose is this, if the Court would be

17  willing to accept it:  I would like, in the context of a 104

18  determination, a preliminary question determination of

19  relevance, to submit to the Court that proffer -- it's a sworn

20  declaration -- for the Court's consideration.

21       The Court already has, obviously, the Defense

22  submission -- which I don't have.  But it would, then, have

23  before it what the Defense is seeking, what this witness

24  actually has to offer in terms of testimony on those topics.

25       As far as I know, I think I have covered the waterfront

PROCEEDINGS

1    here.  So within there, presumably, there will be a match

2    between what the Defense is seeking and what it is this witness

3    has to offer.

4         The Court could then look at that and make a 104

5    determination, which I think could be one of three things:

6         Either I see this and I think the Defense has something

7    they can extract from this testimony that is relevant and

8    admissible.  We're past the 104 threshold.  This witness is

9    going to testify.

10        I see this and they don't, and therefore this witness will

11   not.

12        I see this and I need more information and, therefore, we

13   need to have a 104 hearing, where, outside the presence of the

14   jury, the Defense can question this witness to see if, in fact,

15   they could extract anything from the witness that would be

16   relevant and admissible.

17        While it's somewhat unusual, I do believe, if the Court

18   had an opportunity to see this information beforehand, and in

19   the context of a witness for whom there is concern of danger by

20   being called, it would be an appropriate process for the Court

21   to make a preliminary determination of admissibility.

22        And I will say, again, without knowledge of precisely what

23   the Defense is looking for, but a general sense of what they

24   may be looking for, I think there are genuine concerns about

25   whether there is anything that this witness could actually

**PROCEEDINGS**

1    offer that would be relevant, admissible testimony.  And I

2    would like, at least, the opportunity to submit to the Court --

3    ex parte, not sharing it with the Government, since it might

4    reveal, at least, the scope of what I think the Defense is

5    looking for -- a declaration.  And I'd be happy to serve that

6    on the Defense as well, so they would have the opportunity to

7    see it.

8            **THE COURT:**  Well, do you have any objection to them

9    submitting that declaration to be served on you?

10           **MS. CHUANG:**  I don't think I have an objection to the

11   submission of the declaration.  We do have an objection to any

12   type of Rule 104 hearing or determination.  I think this is

13   really just calling a reconsideration of the motion to quash,

14   which was denied, by another name.

15       Rule 104 hearings are exceedingly rare.

16           **THE COURT:**  I note that Judge Kaplan just did one in

17   the FTX of the defendant, which is probably even more rare.

18           **MS. CHUANG:**  They're generally used for things like

19   conditional relevancy, or to determine if a witness is just

20   competent to testify in the trial.

21       So, you know, this is not a situation where we're trying

22   to determine whether a declarant actually believed they were

23   dying, that would support a dying declaration hearsay

24   exception, where that foundation, if it doesn't exist or if

25   it's insufficient would prejudice the jury by hearing it during

**PROCEEDINGS**

1    testimony during the trial; right?

2        It's not a situation where there's discussion of a

3    privilege applying to Target 1's testimony, where that's often

4    what Rule 104 hearings are used for.  The Court has already

5    determined that Target 1 has relevant testimony to this case,

6    so that should be the end of the question, Your Honor.

7            **THE COURT:**  And maybe the declaration will just

8    confirm that; right?  Maybe that will just confirm that --

9    because the relevance determination, I'm not going to

10   reconsider in terms of what was proffered to me by the Defense.

11       Now, if it turns out the witness -- I'd be surprised, but

12   if it turns out the witness doesn't know anything about that,

13   then, I guess, that -- I'd be surprised, but that would be

14   different.

15       And I think what -- you may start seeing these more

16   because we're just in a different world in terms of safety --

17   right? -- and concerns about that with the Internet and the

18   like.  And so that's why I think maybe it's an unusual

19   situation.  But, given Target 1's concerns and things that have

20   happened in the past, I don't think it's inappropriate or -- at

21   least to allow them to submit the declaration.

22       But I don't intend to reconsider my relevance

23   determination.

24           **MS. CHUANG:**  Right.  So I mean, what I would say to

25   that, Your Honor, is that if this is trying to go back to some

1   sort of 403 balancing against the potential burden to the

2   witness -- right? -- that's not a factor under Rule 403.

3        **THE COURT:**  That's not the factor.  That's not the

4   factor.  The factor would be if the witness, for example, the

5   answer is going to be, "I don't know.  No.  No.  No.  No" --

6   right? -- it's just not going to elicit the testimony that

7   you're anticipating.

8        **MS. CHUANG:**  Sure.  And I won't go into details, but

9   based on the proffer that Mr. Swanson gave us yesterday about

10  what would potentially be said, we do believe that there is

11  information in there that we would seek to elicit during the

12  trial.

13       **THE COURT:**  Like I said, I think that's probably

14  likely the case, but I'll allow him to submit his declaration

15  and, as you said, we're not necessarily having a hearing.  The

16  answer may be:  Okay.  I stand by my ruling and the witness

17  will have to testify.

18       **MS. CHUANG:**  Would that be a declaration from

19  Mr. Swanson proffering what his client has said or a

20  declaration from the client?

21       **THE COURT:**  I think it would need to be the client.

22       **MR. SWANSON:**  I was intending to submit it from my

23  client, Your Honor.

24       **THE COURT:**  She submitted a declaration before as

25  well.

**PROCEEDINGS**

1          **MR. SWANSON:**  As to the procedure that would take

2    place with our witness at trial, my understanding -- I was not

3    at the last pretrial conference, but my understanding is the

4    Court was not inclined to seal the courtroom.

5          Is it the Court's view that that is not possible or is

6    the Court's view that that is possible and, under these

7    circumstances, we have not met our burden?  Because I do

8    believe that it is something the Court can do, and there is

9    certainly precedent, for witness safety, for sealing the

10   courtroom.

11         Is it the Court's determination that we have not met our

12   burden for that at this point?

13         **THE COURT:**  Yes.

14         **MR. SWANSON:**  All right.

15         **THE COURT:**  Target 1 -- it's public, number one;

16   right?  It's already been made public.  So you would have to

17   find some circumstance where that's -- and I just don't believe

18   the evidence is sufficient to show a threat sufficient to the

19   testimony of it being public.

20         It's not -- it's not public in the sense, it's not

21   publicized.  No one is allowed to take any photographs.  We're

22   not going to use Target 1's name, and -- even though the

23   Defense offered and -- that's not the end of the matter --

24   right? -- because the public has a right as well.  And so I do

25   believe it would be -- at least the showing that was made has

1    not been sufficient.

2         MR. SWANSON:  I appreciate that.  We may submit

3    something further on that with further evidence.  But I

4    understand the Court's ruling now is that, as the record

5    stands, there's not sufficient evidence to warrant sealing,

6    without prejudice to our providing additional evidence that

7    might affect that.

8         THE COURT:  Correct.  Okay.

9       Okay.  When can you submit that declaration?

10         MR. SWANSON:  Would Monday be sufficient?

11         THE COURT:  Yes.  I don't think the witness would be

12   called until the following week, so...

13         MR. SWANSON:  Our understanding is not before the

14   following week, the 13th or 14th.

15         THE COURT:  Okay.

16         MR. SWANSON:  Thank you, Your Honor.

17         THE COURT:  So submit it under seal; right?

18         MR. SWANSON:  Yes.

19         THE COURT:  And with a copy to the Defense.

20         MR. SWANSON:  And nothing to the Government.

21         THE COURT:  Nothing to the Government.

22       Sorry.

23         MR. SWANSON:  All right.  Thank you, Your Honor.

24         THE COURT:  Thank you.

25       Is the PowerPoint ready?

PROCEEDINGS

1        **THE CLERK:**  Yeah.  Do you see it?

2        **THE COURT:**  Okay.  Can you just -- so the PowerPoint

3   should be up.  And if you can help me -- maybe I can do it.

4        **THE CLERK:**  I don't know, can you just go to the --

5        **THE COURT:**  Can you just go to the last slide?  That

6   one is giving them an example of a headline from a case in

7   which a mistrial was declared because a juror did independent

8   research, and I want to tell them it actually really happens.

9      So this is how I was going to describe --

10       **MS. LINKER:**  I'm sorry.  Can you close the little box?

11   On the bottom right corner there is a box on --

12       **THE COURT:**  That "TeamViewer."

13       **MS. LINKER:**  That TeamViewer, it's blocking what we

14   see on the screen.

15       **THE COURT:**  I was able to do that.  Is it gone now?

16   It's gone from my screen.

17       **MS. LINKER:**  It's not from any of these others.

18      It's gone.

19       **THE COURT:**  It's gone.  Great.  Thank you.

20      So I was just -- as was proffered, just going to use the

21   language from the statute.

22                    (Pause in proceedings.)

23       **MS. VARTAIN:**  That's fine with the Government, Your

24   Honor.

25       **MS. CHUANG:**  I think what we -- Count 1 is missing

**PROCEEDINGS**

1  part of the language that it would have to occur while

2  Ms. Pelosi was engaged in or on account of performance of her

3  official duties.  I can also hand up the language that the

4  parties have met and conferred about.

5          **THE COURT:**  Have the parties agreed on something?  I

6  can just change it.

7                    (Pause in proceedings.)

8          **THE COURT:**  Okay.  I can do that.  And I'll just do

9  two slides, one for each count, because it's wordier.  That's

10 fine.  All right.

11     Is that all right with the Government?  I'll do two

12 slides.

13         **MS. VARTAIN:**  Thank you, Your Honor.

14         **THE COURT:**  I do think -- because as we know from some

15 of the questionnaires some people said, "Oh, you know, he's

16 guilty."  But, of course, they don't know -- guilty of what?

17 What is he charged with in this case?

18     So I do think it's important, before you start

19 questioning, they, at least, know what the charges are.

20         **MS. VARTAIN:**  I agree.  In fact, I was curious whether

21 the Court might do some voir dire in light of the fact that

22 they now have more information about what the charges are.

23 Because some portion of the venire has assumed that assault is

24 the -- with no intent, is the charge.

25     So I was just curious whether -- obviously, the parties

**PROCEEDINGS**

1    will do that.  But I wondered if the Court was considering

2    taking up that issue first.

3           THE COURT:  You mean, individually?

4           MS. VARTAIN:  To the entire venire, asking them if,

5    now they've seen the instruction, that changes --

6           THE COURT:  No.  I leave that to the parties.  Yeah.

7    No.  I leave that to the parties.  But the reason I wanted to

8    do this is to emphasize that this is what is at issue in this

9    case.

10          And then I will tell them, the idea is can they make a

11   decision based solely on the evidence presented here in court,

12   period, and decide if the Government has met its burden of

13   proof.  Putting aside anything they might think, can they just

14   decide if the Government has met its burden of proof?

15          Okay.  Great.

16          Can you just remind me, because I just want to put it as

17   part of an order, what the agreement is with the exchange of

18   witnesses names, of who's coming next, the timing?

19          MS. VARTAIN:  On the 8th by noon, we will provide the

20   Defense with our list for the 9th.  And I believe it was by --

21   and someone will correct me if I'm wrong, by 5:00 p.m. each day

22   prior.

23          MS. CHUANG:  Exactly.

24          THE COURT:  And it's -- it was the 9th for the 13th?

25          MS. CHUANG:  Yes, each court day prior.

**PROCEEDINGS**

1     **THE COURT:**  Right, each court day prior.  Okay.

2    And then 5:00 p.m. the 13th for the 14th.

3     **MS. VARTAIN:**  Correct.

4     **THE COURT:**  Okay.

5     **MS. CHUANG:**  Your Honor, I did have one question.

6    So for our hour of questioning the venire, we would like

7    to split it between myself and Ms. Linker, if the Court is fine

8    with that.

9     **THE COURT:**  I'm fine with that.

10    And the Government can do the same, if you want.

11     **MS. VARTAIN:**  Thank you, Your Honor.

12    Will it be one hour for the Government, straight, or one

13    hour for the Defense, straight, or do we trade back and forth?

14     **THE COURT:**  You can reserve some time.  Would you like

15    to reserve ten minutes or five minutes or --

16     **MS. VARTAIN:**  Yes.

17    Do you need the answer as to how much time now, Your

18    Honor?  I mean, I know that we would want to reserve some time.

19     **THE COURT:**  You can tell me Monday morning, but you

20    get to reserve time as well, but not more than ten minutes.

21     **MS. VARTAIN:**  Understood.

22     **THE COURT:**  All right.  Anything else we should

23    discuss?

24     **MS. VARTAIN:**  I have one more question for Your Honor,

25    which is for the -- I'm switching out of jury selection.

PROCEEDINGS

1     Assuming we start on the 9th, we've got our jury -- I'm

2  sure that will happen.  Where does the Court intend to seat the

3  jury?  Will they be entirely in the -- this feeds into our AV

4  jack actually.

5     Will they be seated entirely in the jury box or does

6  the Court anticipate some spread out such that they're seated

7  in the pews as well?

8         **THE COURT:**  No, we're not doing any COVID -- I should

9  also tell you, for masks, I don't require anyone to be masked.

10 I do tell them they're absolutely welcome to be masked, if

11 they're more comfortable with it, but not required.

12    No, the 14 jurors will be right in the jury box, right

13 there.

14    And the other thing is, I know you each probably have

15 teams of people assisting you who will not be at the table.

16 And I think Ms. Means is working with you to maybe reserve some

17 space -- it will be on this side of the courtroom, for jury

18 selection and thereafter.  And then there will be a Zoom

19 feed -- you can let other people know -- to the media room.

20    And we'll have a sign outside that also lets people who

21 can't get in -- particularly on Monday, because half the

22 courtroom will be taken with the jury -- that there will be a

23 zoom feed to the media room.

24    The Zoom feed, I believe is just from the back.  It won't

25 actually even show the jurors.

**PROCEEDINGS**

1       **MS. VARTAIN:**  Thank you, Your Honor.

2       **MS. CHUANG:**  Nothing else from us.

3       **THE COURT:**  All right.  Thanks again for working so

4  well together.  And we will see you Monday.

5       What time will you be here, Ms. Means?

6       **THE CLERK:**  7:30.

7       **THE COURT:**  You don't need to come that early.

8       But I don't expect the jury will be down before 9:00, but

9  probably maybe by 9:00.  We're the only jury being selected on

10  Monday.

11       **MS. CHUANG:**  So we can be here 8:30?

12       **THE COURT:**  8:15.  You never know what's come up.

13       **MS. CHUANG:**  Sure.

14       **THE COURT:**  Good practice for the other days.

15       All right.  Great.  Thank you.

16       **MS. VARTAIN:**  Thank you, Your Honor.

17       **MS. CHUANG:**  Thank you.

18                    (Recess taken at 10:29 a.m.)

19                 (Proceedings resumed at 10:40 a.m.)

20       **THE CLERK:**  Go ahead.

21       **THE COURT:**  Okay.  We're back on the record.

22       I understand from Ms. Means, the parties would like an

23  extra juror, 15 instead of 14.

24       Mr. DePape is not present, do you excuse his presence at

25  the moment?

1          **MS. CHUANG:**  Yes, we're waiving his appearance.

2          **THE COURT:**  All right.  So I just want to put that on

3    the record.

4      And does that involve additional peremptories?  Because I

5    think for every --

6          **MS. LINKER:**  It does, under the rule.

7          **MS. CHUANG:**  I think it's one peremptory each for each

8    alternate.

9          **MS. LINKER:**  It's not that.  It goes:  One or two has

10   a certain number.  And then three or four alternates has

11   another number.  So...

12         **THE COURT:**  Make sure you speak --

13         **MS. LINKER:**  Under Rule 24(c)(4)(B), we would move up

14   to three or four alternates, and that makes two additional

15   peremptory challenges permitted.

16         **THE COURT:**  So the Defense would have 12, and the

17   Government 8.

18         **MS. CHUANG:**  Yes, total.

19         **THE COURT:**  Okay.  All right.  So we will have 15

20   jurors.

21      I think I will seat the extra where -- well, I think where

22   you're sitting and you can sit -- we'll put a chair for you --

23   where Ms. Malone is sitting.  But I don't know that they can --

24   can they -- can you see the screen there?

25         **THE LAW CLERK:**  Well, I can't see the screen there.

1          **MS. VARTAIN:**  There's also the concern, if we're going

2   to be showing some things to the -- I guess, it's going to go

3   to the jury as well.

4       You can see that -- can you see that screen?

5          **THE LAW CLERK:**  I can see this screen, but I wouldn't

6   be able to read it.

7          **THE COURT:**  I guess maybe it would be better to put a

8   chair right there.  And then they could see that screen.

9       So we'll put the 15 -- or it might be Number 1, I guess,

10  who's right there.

11      Okay.  And then I understand, given that the parties

12  were -- let's see.  So then we have -- put 45 in our

13  additional -- and our initial pool to be questioned then.

14         **MS. VARTAIN:**  That's what the parties think would be

15  preferable.

16         **THE COURT:**  That's right.  What I was anticipating

17  seems unlikely, but you never know, that there will be more

18  than ten for-cause or hardship excuses.  So the ideal thing

19  would be that we could do it all at once.  But if we need to,

20  we need to.  So I think 45 would work.  And I think Ms. Means

21  can figure it out.

22         **MS. VARTAIN:**  I think, Your Honor, just returning to

23  the number of peremptories, the additional peremptories,

24  I believe apply only to the alternates.

25         **THE COURT:**  Oh.  You -- in other words -- in other

**PROCEEDINGS**

1    words, your additional --

2          **THE CLERK:**  I'm done.  Sorry.

3          **THE COURT:**  Each side's additional two could only be

4    used to strike someone that comes after our first 12?

5          **MS. VARTAIN:**  Yes.

6          **MS. CHUANG:**  Yes.

7          **THE COURT:**  Yes.  Good.  We are in agreement.  I learn

8    something new every day.  Okay.  We're in agreement then.

9          **MS. CHUANG:**  Yes, we are.

10          **THE COURT:**  Thank you.

11          **MS. CHUANG:**  Thank you.

12          **MS. VARTAIN:**  Thank you, Your Honor.

13               (Proceedings adjourned at 10:43 a.m.)

14                          ---o0o---

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:   Sunday, December 24, 2023


_____
Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219
Official Reporter, U.S. District Court