JODI LINKER
Federal Public Defender
Northern District of California
ANGELA CHUANG
TODD M. BORDEN
Assistant Federal Public Defenders
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:        Angela_Chuang@fd.org

Counsel for Defendant Depape

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAVID WAYNE DEPAPE,<br><br>Defendant. | **Case No.:** CR 22–00426 JSC<br><br>**DEFENDANT'S MOTION FOR A NEW TRIAL**<br><br>**Court:**          Courtroom 8, 19th Floor<br>**Hearing Date:**   March 27, 2024<br>**Hearing Time:**   10:00 a.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................1

ARGUMENT .....................................................................................................................4

    I.      The Court should grant a new trial under Rule 33.................................................4

          A.     The Court should grant a new trial based on instructional error, i.e., failure to instruct the jury on the meaning of "on account of the performance of official duties." .................................................................................................5

          B.     The government misstated the law concerning "performance of official duties" during its closing argument, prejudicing Mr. DePape. ......................................11

CONCLUSION .................................................................................................................12

# TABLE OF AUTHORITIES

## Federal Cases

*Fed. Election Comm'n v. Craig for U.S. Senate,*
   816 F.3d 829 (D.C. Cir. 2016) ................................................................. 11-12

*Jennings v. Woodford,*
   290 F.3d 1006 (9th Cir. 2002) ...................................................................... 10

*Nixon v. Shrink Missouri Gov't PAC,*
   528 U.S. 377 (2000) ...................................................................................... 11

*O'Gilvie v. United States,*
   519 U.S. 79 (1996) .......................................................................................... 8

*Reyes-Guerrero v. I.N.S.,*
   192 F.3d 1241 (9th Cir. 1999) ........................................................................ 8

*Smith v. United States,*
   390 F.2d 401 (9th Cir. 1968) .......................................................................... 5

*United States v. Alston,*
   974 F.2d 1206 (9th Cir. 1992) ........................................................................ 5

*United States v. Becker,*
   720 F.2d 1033 (9th Cir. 1983) ...................................................................... 12

*United States v. Berry,*
   627 F.2d 193 (9th Cir. 1980) ........................................................................ 11

*United States v. Duran,*
   59 F.3d 938 (9th Cir. 1995) ............................................................................ 5

*United States v. Escobar de Bright,*
   742 F.2d 1196 (9th Cir. 1984) ...................................................................... 10

*United States v. Fenton,*
   30 F. Supp. 2d 520 (W.D. Pa. 1998) .............................................................. 9

*United States v. Guthrie,*
   814 F. Supp. 942 (E.D. Wash. 1993) .............................................................. 5

*United States v. Jackson,*
   726 F.2d 1466 (9th Cir. 1984) ........................................................................ 6

*United States v. Johnson,*
   459 F.3d 990 (9th Cir. 2006) .......................................................................... 6

*United States v. Kayser,*
    488 F.3d 1070 (9th Cir. 2007) ............................................................... *passim*

*United States v. Marguet-Pillado,*
    648 F.3d 1001 (9th Cir. 2011) ....................................................................... 6

*United States v. Pate,*
    43 F.4th 1268 (11th Cir. 2022) .................................................................. 8, 9

*United States v. Raymer,*
    685 F. Supp. 1358 (S.D. Miss. 1988) ............................................................ 9

*United States v. Romero-Avila,*
    210 F.3d 1017 (9th Cir. 2000) ............................................................... 5-6, 7

*United States v. Saunders,*
    166 F.3d 907 (7th Cir. 1999) ......................................................................... 9

*United States v. Scroggins,*
    379 F.3d 233 (5th Cir. 2004) ......................................................................... 5

*United States v. Segna,*
    555 F.2d 226 (9th Cir. 1977) ....................................................................... 12

*United States v. Stewart,*
    420 F.3d 1007 (9th Cir. 2005) ....................................................................... 7

*United States v. Tipton,*
    964 F.2d 650 (7th Cir. 1992) ....................................................................... 11

*United States v. Valenzuela,*
    492 F. App'x 765 (9th Cir. 2012) ............................................................... 12

*United States v. Vicaria,*
    12 F.3d 195 (11th Cir. 1994) ......................................................................... 5

*United States v. Wall,*
    389 F.3d 457 (5th Cir. 2004) ......................................................................... 5

*United States v. Washington,*
    819 F.2d 221 (9th Cir. 1987) ......................................................................... 6

*United States v. Weaver,*
    882 F.2d 1128 (7th Cir. 1989) ..................................................................... 11

**Federal Rules and Statutes**

18 U.S.C. § 115 ................................................................................... *passim*

18 U.S.C. § 1201 ................................................................................................................ 1, 6

Fed. R. Crim. P. 29 ................................................................................................................. 5

Fed. R. Crim. P. 30 ................................................................................................................. 5

Fed. R. Crim. P. 33 ........................................................................................................ 4, 5, 12

**Other Authorities**

U.S. House of Representatives Committee on Ethics, *House Ethics Manual*, at 121–84 (2022), *available at* https://ethics.house.gov/sites/ethics.house.gov/files/documents/2022/House-Ethics-Manual-2022-Print.pdf................................................................................................................. 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

Defendant David DePape advanced a single theory of defense: that the government failed to prove he had the requisite mens rea for the charged attempted kidnapping of Nancy Pelosi and assault on Paul Pelosi. In this federal case, the government was required to prove that Mr. DePape intended to kidnap Ms. Pelosi "on account of the performance of official duties" as a Member of Congress, and that he assaulted Mr. Pelosi "with intent to impede, intimidate, or interfere with [Ms. Pelosi] while engaged in the performance of official duties" as a Member of Congress or "with intent to retaliate against [Ms. Pelosi] on account of the performance of official duties" as a Member of Congress. *See* 18 U.S.C. §§ 115(a)(1)(A), 1201(a)(5). Mr. DePape accordingly asked the Court to instruct the jury that "the government must prove beyond a reasonable doubt that Mr. DePape acted because of [Ms. Pelosi's] performance of official duties as a Member of Congress." *See* Dkt. 168 at 11. The Court's refusal to give this instruction (or any other instruction) defining "on account of the performance of official duties" requires reversal of Mr. DePape's convictions on both counts because this instruction is both supported by law and has foundation in the evidence presented at trial. *See, e.g., United States v. Kayser*, 488 F.3d 1070, 1073 (9th Cir. 2007). The Court must therefore grant Mr. DePape a new trial based on this reversible instructional error, which violated Mr. DePape's constitutional right to present a defense.

During its closing argument, the government accused the defense of concocting a false distinction between Ms. Pelosi's performance of official duties as a Member of Congress, and her conducting other political activities unrelated to her official duties, such as fundraising. The government thus misstated the law because there is a valid legal distinction between performance of official duties as a Congressperson and certain other political activities like fundraising. Because the government's misstatement of the law went to the very core of Mr. DePape's defense, the Court should grant a new trial on this basis as well.

## BACKGROUND

The grand jury charged Mr. DePape with attempted kidnapping of a federal officer or employee, in violation of 18 U.S.C. § 1201(d) (Count 1), i.e., that he attempted to kidnap Congresswoman Nancy Pelosi while she was engaged in and on account of the performance of her

official duties. It also charged him with assault of an immediate family member of a federal official, in violation of 18 U.S.C. § 115(a)(1)(A) (Count 2), i.e., that he hit Paul Pelosi, the spouse of Ms. Pelosi, in the head with a hammer with intent to impede, intimidate, interfere with, and retaliate against Ms. Pelosi while she was engaged in and on account of the performance of her official duties. (Dkt. 3.) Mr. DePape proceeded to trial, where he contested only the mens rea element of each count, i.e., he argued that he did not intend to kidnap Ms. Pelosi on account of the performance of her official duties, and that he did not assault Mr. Pelosi with intent to impede, intimidate, or interfere with Ms. Pelosi while she was engaged in the performance of her official duties, or with intent to retaliate against her on account of the performance of her official duties. (Reporter's Transcript (RT) 239–50, 927–52.) Specifically, Mr. DePape maintained that he did not intend to kidnap Ms. Pelosi or to assault Mr. Pelosi based on Ms. Pelosi's performance of her official duties in Congress, but was instead motivated by her partisan political campaign activities and his desire to attack the ruling class, Wall Street, and "pedo-activists," which he viewed Ms. Pelosi as belonging to or supporting. He also went to the Pelosi residence as a way to lure "Target 1," an academic living in San Francisco whom Mr. DePape believed to support pedophilia. Ms. Pelosi was the first of many targets whom Mr. DePape believed were part of a ruling class cabal that engaged in child molestation, including many figures who were not federal officials, like Target 1, Tom Hanks, and George Soros. (*Id.*)

On November 14, 2023, the Court held the charging conference. (RT 841–79.) Prior to the conference, Mr. DePape sought a theory-of-the-defense instruction, proposing the following:

> **DEFINITION OF "ON ACCOUNT OF THE PERFORMANCE OF OFFICIAL DUTIES"**
>
> To prove that Mr. DePape's actions were taken on account of the performance of Nancy Pelosi's official duties, the government must prove beyond a reasonable doubt that Mr. DePape acted because of her performance of official duties as a Member of Congress, and not for some other reason. A Member of Congress's performance of official duties includes activities such as: legislation, constituent services, and committee work. A Member of Congress's performance of official duties does not include activities such as: fundraising; campaigning; work on behalf of the Democratic party, the Democratic National Committee, or the Democratic Congressional Campaign Committee; or any personal matters not related to official duties.

(Dkt. 168 at 11.)

The bulk of the charging conference was spent discussing how and whether to instruct the jury

1  concerning the official-duties element. (RT 844–76.) As to the theory-of-the-defense instruction, the

2  Court was initially receptive, noting that

> I do think that something on account of the performance of official duties
> is needed because there is -- to say that there is -- there has to be a causal
> connection between the charged conduct and Nancy Pelosi's official
> duties. So there must be a causality connection between the charged
> conduct and Nancy Pelosi's actions as a member of Congress.

6  (RT 854–55.) In the same vein, the Court stated that "there must be a causal connection between the

7  charged conduct and the actions as a member of Congress." (RT 857.) Defense counsel suggested

8  that the Court could offer a shorter version of its proposed theory-of-the-defense instruction,

9  including only the first sentence, and omitting the listed examples of official duties of a Member of

10  Congress. (RT 865.) The government still objected to this proposal. (RT 865–66.)

11       The Court again suggested a possible instruction requiring a "causal connection between the

12  charged conduct and Nancy Pelosi's actions as a member of Congress." (RT 866.) Defense counsel

13  then suggested a further revision to its proposed instruction, limiting it only to the first sentence, and

14  omitting the final clause "and not for some other reason." (RT 866.) Such an instruction would thus

15  have read, "To prove that Mr. DePape's actions were taken on account of the performance of Nancy

16  Pelosi's official duties, the government must prove beyond a reasonable doubt that Mr. DePape acted

17  because of her performance of official duties as a Member of Congress." (*Id.*; Dkt. 168 at 11.) The

18  Court then opined that the defense's proposed "because of language" was improper because the

19  statute said "on account of." (RT 867–68.) Defense counsel responded that "because of" is another

20  way to express a causal connection, later noting that "because of" does not imply "only" intent. (RT

21  868, 872.) The Court then proposed the following instruction: "To prove that Mr. DePape's actions

22  were taken on account of the performance of Nancy Pelosi's official duties, there must be a causal

23  connection between . . . Mr. DePape's actions and Nancy Pelosi's performance of her official duties

24  as a member of Congress and the speaker of the house." (RT 869.)

25       The government, however, objected to the Court's formulation, stating that even asking the jury

26  to find a "causal connection" would require it to prove that Mr. DePape had a sole intent. (RT 870.)

27  After a short recess, the Court ruled that it would give no instruction at all defining "on account of

28  performance of official duties." (RT 875.) Consistent with this ruling, the Court ultimately gave no

instruction defining "on account of the performance of official duties." (RT 895–97.)

During its initial closing argument, despite knowing the entire theory of Mr. DePape's mens rea defense, the government made only fleeting references to the official-duties element. (RT 899, 902, 922, 925–26.) Specifically, the government highlighted Mr. DePape's testimony that he viewed Ms. Pelosi as the "leader of the pack," opining that he must have meant "Speaker of the House" (RT 922), and that he assaulted Mr. Pelosi because Ms. Pelosi "was the evil corrupt leader of the pack of Democrats" (RT 924). In his closing, Mr. DePape focused solely on the official-duties element of each offense, arguing that Mr. DePape attempted to kidnap Mr. Pelosi and assaulted Mr. Pelosi not on account of Ms. Pelosi's official duties as a Member of Congress, but based on her political campaigning as a prominent member of the Democratic political party, as well as his beliefs that she was part of a ruling class cabal engaged in corruption and the sexual abuse of children, and as part of larger plan to attack other members of the cabal, which included Target 1, whom Mr. DePape hoped to lure through Ms. Pelosi. (RT 930–45.)

At the outset of the government's rebuttal argument, it accused Mr. DePape of forwarding a "made-up distinction" between Ms. Pelosi's performance of official duties as a Member of Congress and her other political activities, such as fundraising. The government then twice specifically drew attention to the fact that the phrase "[o]n account of the performance of her official duties" was not defined anywhere in the jury instructions as to either count, again accusing the defense of concocting a "made up" distinction. (RT 952.) After the government continued in this vein for a few minutes, defense counsel objected that the government was misstating the law, which the Court summarily overruled. (RT 952–56.)

After approximately eight hours of deliberations over two days, the jury returned guilty verdicts on both counts. (RT 969–70.) The Court tolled the time for filing a motion for a new trial under Rule 33, ordering that the defense's post trial motion is due on February 16, 2024. (RT 972–73; Dkt. 197.)

## ARGUMENT

### I.    The Court should grant a new trial under Rule 33.

A court may vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). The "power to grant a motion for a new trial is much broader than [the] power

to grant a motion for judgment of acquittal [under Federal Rule of Criminal Procedure 29]." *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992). Any reversible error is a sufficient ground for a new trial. *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004) ("[A]ny error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial." (internal quotation marks omitted)).

An erroneous instruction to the jury can therefore merit a new trial. *United States v. Guthrie*, 814 F. Supp. 942, 947 (E.D. Wash. 1993) ("A district court can grant a new trial to cure improper instructions."), *aff'd* 17 3.d 397 (9th Cir. 1994) (unpublished). On appeal, whether a defendant's proposed theory-of-defense instruction accurately reflects the law is reviewed de novo. *See, e.g., United States v. Duran*, 59 F.3d 938, 941 (9th Cir. 1995). Reversible error is not, however, a necessary condition for a new trial. *See United States v. Vicaria*, 12 F.3d 195, 198 (11th Cir. 1994) ("The basis for granting a new trial under Rule 33 . . . . is not limited to cases where the district court concludes that its prior ruling, upon which it bases the new trial, was legally erroneous."). The broad interest-of-justice standard permits granting a new trial even without finding error. *United States v. Scroggins*, 379 F.3d 233, 255 (5th Cir. 2004) ("A miscarriage of justice warranting a new trial in certain circumstances may occur even when there has been no specific legal error."), *vacated on other grounds*, 543 U.S. 1112 (2005).

**A.    The Court should grant a new trial based on instructional error, i.e., failure to instruct the jury on the meaning of "on account of the performance of official duties."**

Under Rule 30, "[a]t the close of evidence or such earlier time as the trial court reasonably directs, any party may file written requests that the court instruct the jury on the law set forth in the requests." Fed. R. Crim. P. 30(a); *see also Smith v. United States*, 390 F.2d 401, 403 (9th Cir. 1968) ("[i]f an instruction is desired it should be prepared and requested at the conclusion of evidence"). If the defendant timely requests a jury instruction relating to a legitimate theory of defense, then the trial court *must* grant that request, or provide a substantially similar instruction. *See, e.g., United States v. Romero-Avila*, 210 F.3d 1017, 1023 (9th Cir. 2000) ("A defendant is entitled to have the judge instruct the jury on his theory of the defense, provided that it is supported by law and has some foundation in the evidence. A failure to give such instruction is reversible error; but it is not

1   reversible error to reject a defendant's proposed instruction on his theory of the case if other

2   instructions adequately cover the defense theory." (citations omitted)). The right to a theory-of-the-

3   defense instruction is rooted in the constitutional right to a fair trial. *See United States v. Marguet-*

4   *Pillado*, 648 F.3d 1001, 1006 (9th Cir. 2011) ("A criminal defendant has a constitutional right to have

5   the jury instructed according to his theory of the case.") (quoting *United States v. Johnson*, 459 F.3d

6   990, 993 (9th Cir. 2006))).

7       The legal standard for granting a theory-of-the-defense instruction is "generous," and "a

8   defendant is entitled to an instruction concerning his theory of the case if the theory is legally sound

9   and evidence in the case makes it applicable, even if the evidence is weak, insufficient, inconsistent,

10   or of doubtful credibility." *United States v. Kayser*, 488 F.3d 1070, 1076 (9th Cir. 2007) (quoting

11   *United States v. Washington*, 819 F.2d 221, 225 (9th Cir. 1987)). "A defendant needs to show only

12   that 'there is evidence upon which the jury could rationally sustain the defense.'" *Id.* (quoting *United*

13   *States v. Jackson*, 726 F.2d 1466, 1468 (9th Cir. 1984) (per curiam)).

14       Both § 115(a)(1) and § 1201(a)(5) have elevated mens rea requirements. Indeed, the parties and

15   Court all agreed that to prove a violation of § 1201(a)(5) and (d), Count 1, the government must

16   establish beyond a reasonable doubt that (1) the defendant *intended* to seize, confine, kidnap, abduct,

17   or carry away and hold a federal officer against her will, *on account of the performance of her official*

18   *duties*; and (2) the defendant did something that was a substantial step toward committing the crime.

19   *See* Dkt. 175 at 15. Thus, the government was required to prove that Mr. DePape specifically

20   intended to kidnap Ms. Pelosi "on account of the performance of her official duties." *See id.* If he did

21   not have that intent when he attempted to kidnap her, he would not be guilty of violating § 1201(a)(5)

22   and (d). While the jury instructions defined both "federal officer" and "substantial step," no

23   instruction was given to define "performance of official duties." *See id.*

24       Likewise, § 115(a)(1) requires proof that (1) the defendant forcibly assaulted a member of the

25   immediate family of a United States official; (2) the defendant did so *with intent* to impede,

26   intimidate, or interfere with the federal official *while engaged in the performance of her official*

27   *duties*, or *with intent to retaliate against the federal official on account of the performance of her*

28   *official duties*; and (3) the defendant used a dangerous weapon during and in relation to the offense.

1   *See* Dkt. 175 at 16. Thus, the government was required to prove that Mr. DePape assaulted Mr. Pelosi

2   with intent to impede, intimidate, or interfere with Ms. Pelosi while she was engaged in the

3   performance of her official duties,[1] or with intent to retaliate against her on account of her

4   performance of official duties. *See id.* Again, the jury was instructed about the meaning of "United

5   States official" and "dangerous weapon," but no instruction was given defining "on account of the

6   performance of official duties." *See id.* In interpreting § 115(a)(1) specifically, the Ninth Circuit has

7   held that the plain text of the statute requires specific intent to commit the illegal conduct "on account

8   of the officials' performance of official duties." *See United States v. Stewart*, 420 F.3d 1007, 1017

9   (9th Cir. 2005) ("Moreover, by its express language, section 115(a)(1)(B) contains a specific intent

10   element: it punishes only threats made regarding enumerated officials with the intent to impede,

11   intimidate, interfere with, or retaliate against such officials on account of the officials' performance

12   of official duties.").

13      The Court's refusal to give any instruction defining "on account of the performance of official

14   duties" was error. *See, e.g., Kayser*, 488 F.3d at 1076. Mr. DePape requested many different variants

15   of such an instruction in his pleading and during the charging conference. *See* Dkt. 175; RT 844–76.

16   After much colloquy, Mr. DePape specifically requested that the Court instruct the jury: "To prove

17   that Mr. DePape's actions were taken on account of the performance of Nancy Pelosi's official

18   duties, the government must prove beyond a reasonable doubt that Mr. DePape acted because of her

19   performance of official duties as a Member of Congress." *See* Dkt. 168 at 11; RT 866. This

20   instruction was both supported by law and had a foundation in the evidence at trial. *See Romero-*

21   *Avila*, 210 F.3d at 1023.

22      Mr. DePape's proposed instruction was supported by law. As the Court itself repeatedly noted,

23   "on account of" implies a causal relationship. *See* RT 854–55, 857, 866, 868–69, 872, 875. The

24   Supreme Court agrees. In interpreting a provision of the Internal Revenue Code, which like the

25   statutes at issue here was also promulgated in the 1980s, the Supreme Court has interpreted the

26

27

---

28   [1] Mr. DePape continues to maintain that it was inappropriate to instruct the jury on the "while engaged in" variant of § 115(a)(1) because the government did not adduce sufficient evidence to support such a theory. *See* Dkt. 168 at 5–6.

DEFENDANT'S MOTION FOR A NEW TRIAL
*DEPAPE*, CR 22–00426 JSC

7

1   phrase "on account of" to mean "for the sake of: by reason of: because of." *O'Gilvie v. United States*,

2   519 U.S. 79, 83 (1996) (citing *Webster's Third New International Dictionary* 13 (1981)). This was

3   exactly what Mr. DePape requested in his proposed jury instruction, i.e., that the government must

4   prove he "acted because of [Ms. Pelosi's] performance of official duties as a Member of Congress."

5   *Cf. id.*; *see also* Dkt. 168 at 11; RT 866. The Ninth Circuit, like the Supreme Court in *O'Gilvie*, has

6   also interpreted the phrase "on account of" in a different statutory context as requiring proof of a

7   causal connection. *See, e.g., Reyes-Guerrero v. I.N.S.*, 192 F.3d 1241, 1244–45 (9th Cir. 1999)

8   (interpreting definition of "refugee" in 8 U.S.C. § 1101(a)(42)(A), which contains the phrase "well-

9   founded fear of persecution *on account of*," inter alia, "political opinion" as requiring "a 'causal

10  connection' between the persecution and the political opinion").

11          In a now-vacated opinion, a three-judge panel of the Eleventh Circuit cited *O'Gilvie* to interpret

12  a federal criminal statute that prohibits filing false liens on property of federal officials "on account

13  of the performance of official duties" by the official. *See United States v. Pate*, 43 F.4th 1268, 1271

14  (11th Cir. 2022), *reh'g en banc granted, opinion vacated*, 56 F.4th 1336, 1272–73 (11th Cir. 2023),

15  *and on reh'g en banc*, 84 F.4th 1196 (11th Cir. 2023) (interpreting 18 U.S.C. § 1521). The court then

16  held that the phrase "on account of the performance of official duties" in section 1521 "establishes

17  the prohibited purpose of filing a false lien or encumbrance, i.e., creating a causal connection

18  between the filing of a false lien or encumbrance and some act taken by a federal officer or employee

19  as part of his official duties." *Id.* at 1273 (citing *O'Gilvie*, 519 U.S. at 81, 83). Stated differently, the

20  court formulated the official-duties element as requiring proof that the illegal lien was filed "against

21  the property of a federal officer of employee *because of* some he *did* as a part of his official duties."

22  *Id.* at 1273 (first emphasis added). This phrasing comports exactly with the instruction Mr. DePape

23  requested, i.e., that the jury be required to find that "Mr. DePape acted because of her performance of

24  official duties as a Member of Congress." *See id.*; Dkt. 168 at 11; RT 866.

25          The panel opinion in *Pate* ultimately held that § 1521's "on account of the performance of

26  official duties" requirement extended to actions taken against former federal officials on account of

27  their past actions as officials. *See id.* at 1273–76. The en banc Eleventh Circuit later read § 1521 more

28  narrowly, to apply only to false liens filed against current federal officials. *See Pate*, 84 F.4th at 1198.

The en banc court in *Pate* did not dispute the panel's holding that there was a causal element implied by the phrase "on account of the performance of official duties." Instead, it held that the § 1521 also contained a temporal element, i.e., that the victim must have been a federal official at the time the illegal lien was filed. *See id.* at 1203–05. Accordingly, the *Pate* panel opinion remains persuasive authority for the purposes that Mr. DePape cites it, i.e., that the phrase "on account of the performance of official duties" requires the jury to find that the defendant committed the alleged illegal act *because of* the victim's *performance* of her official duties.

Decisions of other courts interpreting similar criminal statutes support Mr. DePape's requested instruction. For example, the Seventh Circuit, in a threats case against a federal judge, held that there was sufficient evidence to sustain a § 115(a)(1) conviction because the defendant's statements "could have been interpreted by the jury as a threat to kill Judge Manning *because of* the rulings she made in [the defendant's] cases." *See United States v. Saunders*, 166 F.3d 907, 914 (7th Cir. 1999) (emphasis added); *see also United States v. Raymer*, 685 F. Supp. 1358, 1359 (S.D. Miss. 1988), *aff'd*, 876 F.2d 383 (5th Cir. 1989) ("The Court finds that the essence of Section 115 is to protect persons who could be threatened or killed *because of* the performance of their official duties." (emphasis added)). And a federal court has specifically rejected the government's expansive reading of § 115(a)(1) as applying at all times to a Member of Congress, holding that the statute contains a specific nexus requirement between a defendant's illegal actions and the performance of official duties as a Member of Congress. *See United States v. Fenton*, 30 F. Supp. 2d 520, 528 (W.D. Pa. 1998) (rejecting government's contention "that the defendant need only intend to impede, intimidate or interfere with the Congressman 'during the time that' he is performing official duties") (granting motion for judgment of acquittal).

As recounted above, there is also ample evidentiary basis in the trial record to support giving a specific definition of "on account of the performance of official duties." Mr. DePape's post-arrest interview, and his own testimony showed that he was motivated by his belief that Ms. Pelosi was part of a cabal of ruling elites, whose origin possibly lies with the Jesuits and the Vatican, who engaged in corruption and child abuse. *See, e.g.,* RT 709–60. Mr. DePape easily satisfies the "generous" standard for when theory-of-defense instructions should be given based on the evidence presented at trial. *See*

*Kayser*, 488 F.3d at 1076 ("[A] defendant is entitled to an instruction concerning his theory of the case if the theory is legally sound and evidence in the case makes it applicable, even if the evidence is weak, insufficient, inconsistent, or of doubtful credibility.").

Finally, the Court's refusal to give the jury any definition of "on account of the performance of official duties" was exceptionally prejudicial.[2] Mr. DePape's defense was laser-focused on this single element of both counts. The fact the jury deliberated for eight hours over two days in a case with two-and-half days of witness testimony illustrates that the jury was torn about this sole contested issue in this case. *See, e.g., Jennings v. Woodford*, 290 F.3d 1006, 1019 (9th Cir. 2002) (looking to length of jury's deliberations to analyze possible prejudice). Further, the Court gave specific definitions of numerous other phrases contained in the jury instructions, including "federal officer," "substantial step," "United States official," and "dangerous weapon," all of which were far shorter and less technical than the phrase "on account of the performance of official duties." *See* Dkt. 175 at 15–16. Yet the Court refused to define for the jury this phrase, which was the sole basis for Mr. DePape's defense. Even more prejudicial was the government's rebuttal closing argument, the last word the jury heard from the parties, which weaponized the Court's refusal to define "on account of the performance of official duties" by repeatedly telling the jury that "nowhere" in the jury instruction is "on account of the performance of official duties" defined, urging the jurors to discount Mr. DePape's mens rea defense on that basis. *See* RT 952. The government's argument, absent Mr. DePape's requested instruction, allowed the jury wrongly to believe it could convict if Ms. Pelosi was a government official at the time of the incident, making obsolete the causal requirement ("on account of") *and* the action rather than mere status requirement ("performance of").

Because Mr. DePape's proposed instruction defining "on account of the performance of official duties" correctly stated the law, and because there was ample evidentiary basis in the trial record to instruct the jury on this hotly contested issue, the Court committed reversible constitutional error by

---

[2] Under Ninth Circuit precedent, however, a defendant need not demonstrate prejudice when a district court refuses to give a theory-of-defense jury instruction that is supported by law and has some foundation in the evidence. Automatic reversal is required. *See United States v. Escobar de Bright*, 742 F.2d 1196, 1201 (9th Cir. 1984) (holding that erroneous refusal to give a theory-of-defense instruction is per se reversible error, not subject to harmless-error review).

failing to give this instruction. *See, e.g., Kayser*, 488 F.3d at 1076–77. The Court must grant Mr. DePape a new trial on this basis alone.

**B.     The government misstated the law concerning "performance of official duties" during its closing argument, prejudicing Mr. DePape.**

"A prosecutor should not misstate the law in closing argument." *United States v. Berry*, 627 F.2d 193, 200 (9th Cir. 1980). And the Court may also grant a new trial on this basis. *See, e.g., United States v. Tipton*, 964 F.2d 650, 655–56 (7th Cir. 1992) (noting that Due Process Clause prohibits prosecutors from making misstatements of law during closing argument; and that "[t]he touchstone of such a constitutional claim is the fairness of the trial, not the culpability of the prosecutor") (quoting *United States v. Weaver*, 882 F.2d 1128, 1140–41 (7th Cir. 1989))).

Here, the government in its rebuttal closing argument repeatedly accused the defense of concocting a made-up distinction between Ms. Pelosi's performance of official duties as a Member of Congress, and of her engaging in fundraising and other political activities unrelated to her performance of official duties as a Member of Congress. *See* RT 952–56. As argued above, both statutes require proof beyond a reasonable doubt that Mr. DePape intended to commit the charged acts on account of Ms. Pelosi's performance of her official duties as a Member of Congress. *See* Section I.A. The core constitutional duty of a Congressperson is legislation. *See* U.S. Const. art. I. And contrary to the government's statement at closing, the law about the official duties of Members of Congress is quite clear that fundraising, work on behalf of political party organizations, or any other personal matters are not official duties. *See, e.g.,* U.S. House of Representatives Committee on Ethics, *House Ethics Manual*, at 121–84 (2022), *available at* https://ethics.house.gov/sites/ethics. house.gov/files/documents/2022/House-Ethics-Manual-2022-Print.pdf (outlining prohibition against using official resources for campaign and political purposes by Members of the House); *Nixon v. Shrink Missouri Gov't PAC*, 528 U.S. 377, 409 (2000) (Kennedy, J., dissenting) (contrasting "fundraising" from the "official duties" of elected officials); *Fed. Election Comm'n v. Craig for U.S. Senate*, 816 F.3d 829, 839 (D.C. Cir. 2016) (holding that Senator's spending of campaign funds to defend against criminal charges of disorderly conduct and interference with privacy were not in connection with his official duties). Accordingly, the government's statement that everything Ms.

1     Pelosi did that was in any way related to politics constituted performance of her official duties as a

2     Member of Congress misstated the law. *See id.*

3          The government's misstatement of the law, moreover, was especially prejudicial to Mr.

4     DePape, as it went to the core of his defense, and to the sole contested element of each count, i.e.,

5     whether he had the requisite intent to commit the charged offenses on account of Ms. Pelosi's

6     performance of her official duties as a Member of Congress. *Cf. United States v. Becker*, 720 F.2d

7     1033, 1036 (9th Cir. 1983) (finding no reversible error when government misstated the law during

8     closing argument because "[t]he misstatement in this case had no bearing on the elements of the

9     offense, the burden of proof, the weight of the evidence, the credibility of the witnesses, nor any other

10    aspect of the trial proceedings."); *see also United States v. Valenzuela*, 492 F. App'x 765, 767 (9th

11    Cir. 2012) (finding no reversible plain error based on prosecutor's misstatement of the law at closing

12    because the misstatement of law "was isolated, the prosecutor did not misstate the law governing the

13    charged crimes, and the district court instructed the jury that the prosecutor's statements during

14    closing argument were not evidence").

15         Indeed, when a prosecutor's misstatement of law goes to the "only contested issue" in a case,

16    the error is especially likely to be deemed prejudicial and warranting reversal. *See, e.g., United States*

17    *v. Segna*, 555 F.2d 226, 231 (9th Cir. 1977) (reversing conviction on plain-error standard when

18    government misstated the legal standard that applied to the insanity defense). Accordingly, the Court

19    should also grant Mr. DePape's motion for a new trial based on the government's misstatement of the

20    law during its rebuttal closing argument.

21                                         **CONCLUSION**

22         For these reasons, the Court should grant Mr. DePape's motion for a new trial under Rule 33.

23

24

25

26

27

28

1

2

Dated:    February 16, 2024                Respectfully submitted,

3

4                                          JODI LINKER
Federal Public Defender
5                                          Northern District of California

6                                              /S

7                                        ANGELA CHUANG
TODD M. BORDEN
8                                        Assistant Federal Public Defenders

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION FOR A NEW TRIAL
*DEPAPE*, CR 22–00426 JSC                                    13