1   ISMAIL J. RAMSEY (CABN 189820)
    United States Attorney
2
    MARTHA BOERSCH (CABN 126569)
3   Chief, Criminal Division

4   HELEN L. GILBERT (NYBN 4736336)
    LAURA VARTAIN HORN (CABN 258485)
5   Assistant United States Attorney

6       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
7       Telephone: (415) 436-7200
        FAX: (415) 436-7234
8       Helen.Gilbert@usdoj.gov
        Laura.Vartain@usdoj.gov
9
    Attorneys for United States of America
10

11                 UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                      SAN FRANCISCO DIVISION

14
    UNITED STATES OF AMERICA,            )   **CASE NO. 3:22-CR-426-JSC**
15                                        )
            Plaintiff,                    )   **UNITED STATES' OPPOSITION TO**
16                                        )   **DEFENDANT'S MOTION FOR A NEW TRIAL**
        v.                                )
17                                        )   Court: Hon. Jacqueline Scott Corley, Courtroom 8
    DAVID WAYNE DEPAPE,                   )   Hearing Date:      March 27, 2024
18                                        )   Hearing Time:      10:00 a.m.
            Defendant.                    )
19  _____ )

20

21

22

23

24

25

26

27

28

USA's OPPOSITION TO MOTION FOR NEW TRIAL
3:22-CR-426-JSC

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

RELEVANT BACKGROUND ...............................................................................................1

I.      Overview ..................................................................................................................1

II.     Jury Instructions .......................................................................................................2

III.    Closing Arguments ...................................................................................................4

        A.      Government's Closing Argument .................................................................4

        B.      Defendant's Closing Argument ....................................................................6

        C.      Government's Rebuttal Argument ................................................................7

LEGAL STANDARD .............................................................................................................8

ARGUMENT ..........................................................................................................................9

I.      The Final Jury Instructions Properly Stated the Law and Adequately Covered the
        Defense Theory While Defendant's Proposed Instructions Misstated the Law ...........9

        A.      Defendant's Initial Proposed Instruction Misstated the Law............................9

        B.      Defendant's Modified Proposed Instruction Also Misstated the Law and Was
                Unnecessary Because the Given Jury Instructions Adequately Covered the
                Defense Theory ................................................................................................12

II.     The Government's Rebuttal Argument Correctly Stated the Law.................................15

CONCLUSION.......................................................................................................................16

1

# <u>TABLE OF AUTHORITIES</u>

2

3

## CASES

4

*O'Gilvie v. United States*, 519 U.S. 79 (1996).................................................................. 14

*United States v. Alston*, 974 F.2d 1206 (9th Cir. 1992) ...................................................... 8

*United States v. Banks*, 514 F.3d 959 (9th Cir. 2008) ........................................................ 10

*United States v. Chen*, 754 F.2d 817 (9th Cir. 1985) .......................................................... 8

*United States v. Fenton*, 30 F.Supp.2d 520 (W.D. Pa. 1998) .............................................. 13

*United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009) .................................................... 8

*United States v. Jinian*, 2011 WL 5056978 (N.D. Cal. Oct. 24, 2011)
    (White, J.), *aff'd* 725 F.3d 954 (9th Cir. 2013) ............................................................. 8

*United States v. Juvenile Female*, 566 F.3d 943 (9th Cir. 2009) ........................................ 12

*United States v. Kellington*, 217 F.3d 1084 (9th Cir. 2000) ................................................ 8

*United States v. Ornelas*, 906 F.3d 1138 (9th Cir. 2018) .................................................... 11

*United States v. Pate*, 43 F.4th 1268 (11th Cir. 2022)........................................................ 14

*United States v. Pate*, 84 F.4th 1196 (11th Cir. 2023)........................................................ 14

*United States v. Pepe*, 81 F.4th 961 (9th Cir. 2023) ........................................................... 10

*United States v. Raymer*, 685 F. Supp. 1358 (S.D. Miss. 1988) .......................................... 15

*United States v. Rendleman*, 495 F. App'x 727 (7th Cir. 2012) .......................................... 10

*United States v. Rostenkowski*, 59 F.3d 1291 (D.C. Cir. 1995)...................................... 11, 16

*United States v. Saunders*, 166 F.3d 907 (7th Cir. 1999) .................................................... 15

*United States v. Smith*, 831 F.3d 1207 (9th Cir. 2016) ........................................................ 10

*United States v. Talley*, 164 F.3d 989 (6th Cir. 1999) ........................................................ 11

*United States v. Whittemore*, 776 F.3d 1074 (9th Cir. 2015)........................................... 9, 15

*United States v. Williamson*, 903 F.3d 124 (D.C. Cir. 2018)......................................... 10, 16

## STATUTES AND RULES

18 U.S.C. § 115............................................................................................................ 10, 15

18 U.S.C. § 2423 ............................................................................................................... 10

Federal Rule of Criminal Procedure 33 .............................................................................. 8

**INTRODUCTION**

On February 16, 2024, defendant David DePape filed a motion pursuant to Rule 33 of the Federal Rules of Criminal Procedure seeking a new trial for two reasons related to the jury instructions: first, because the Court failed to give the defendant's proposed instruction on the meaning of "on account of the performance of official duties," and second, because of the government's statements about the meaning of "performance of official duties" in its closing argument.  Dkt. 218.  No new trial is warranted because the jury instructions and the government's closing arguments properly stated the law, the jury instructions adequately covered defendant's theory of the case, and the defendant's proposed instruction misstated the law.  The government therefore respectfully requests that the Court deny defendant's Motion for a New Trial.

**RELEVANT BACKGROUND**

**I.    Overview**

On November 9, 2022, a grand jury returned an indictment charging the defendant with two counts: attempting to kidnap a federal officer, Member and Speaker of the United States House of Representatives Nancy Pelosi, while she was engaged in or on account of the performance of official duties and assault on the immediate family member of a federal official, Speaker Pelosi's husband Paul Pelosi, with the intent to impede, intimidate, or interfere with Speaker Pelosi while engaged in official duties or with intent to retaliate against Speaker Pelosi on account of the performance of official duties.  Dkt. 3.

The jury trial on these counts took place from November 6, 2023 through November 16, 2023.  The court empaneled the jury on November 6, 2023.  The parties presented evidence over three days, on November 9, 13, and 14, 2023.  The government called fifteen witnesses to testify, and rested on November 14, 2023.  The defendant called four witnesses, including himself, to testify and also rested on November 14, 2023.  Later on November 14, 2023, the parties each proposed additional jury instructions and the Court held the charging conference.  On November 15, 2023, the parties gave their closing arguments and the court instructed the jury.  The next day, on November 16, 2023, the jury returned a guilty verdict on both counts.  Dkt. 180.

During a status conference on December 13, 2023, the Court ordered that defendant file any

1    post-trial motions by February 16, 2024, with the government's opposition due March 8, 2024,

2    defendant's reply due March 20, 2024, and a hearing set for March 27, 2024.  Dkt. 197.  Sentencing is

3    scheduled for on April 24, 2024.  *Id.*

4    **II.    Jury Instructions**

5          The parties were required to submit proposed jury instructions jointly pursuant to the pretrial

6    order. They met and conferred. Defendant did not propose any instruction to define official duties. On

7    October 18, 2023, the parties submitted Joint Proposed Jury Instructions and reserved the right to

8    request the withdrawal, modification, or addition of instructions depending on the course of the trial.

9    Dkt. 106.  There was no definition of official duties in those instructions.

10         On November 13, 2023, the Court issued Proposed Final Jury Instructions.  Dkt. 164.  The

11   instructions describing the elements and definitions for the two charged counts were the same as those

12   initially proposed by the parties. There was no definition of official duties in that set of instructions.

13         On November 14, 2023, prior to the charging conference held later that day, both parties

14   submitted additional proposed jury instructions.  Dkt. 168 (defendant's proposed instructions); Dkts. 170

15   & 171 (government's proposed supplemental jury instructions).  As relevant to the current Motion,

16   defendant for the first time proposed an additional jury instruction defining "on account of the

17   performance of official duties":

18                              PROPOSED INSTRUCTION No. 15

19         DEFINITION OF "ON ACCOUNT OF THE PERFORMANCE OF OFFICIAL DUTIES"

20         To prove that Mr. DePape's actions were taken on account of the performance of Nancy Pelosi's
     official duties, the government must prove beyond a reasonable doubt that Mr. DePape acted
21         because of her performance of official duties as a Member of Congress, and not for some other
     reason.  A Member of Congress's performance of official duties includes activities such as:
22         legislation, constituent services, and committee work.  A Member of Congress's performance of
     official duties does not include activities such as: fundraising; campaigning; work on behalf of
23         the Democratic party, the Democratic National Committee, or the Democratic Congressional
     Campaign Committee; or any personal matters not related to official duties.

24

25   Dkt. 168, at 4, 11.

26         As relevant to the current Motion, the government proposed an additional instruction regarding

27   mixed intent:

28

1

## PROPOSED INSTRUCTION REGARDING MIXED OR DUAL INTENT

2

3

A person may act with more than one intent. You may find that the defendant acted with the requisite intent even if you also find the defendant acted, in part, for other reasons.

4

Dkt. 170, at 2.

5

At the charging conference, the parties debated, among other things, adding jury instructions

6

defining "on account of" and "performance of official duties," terms that were in both Jury Instruction

7

No. 13 (attempted kidnapping elements) and Jury Instruction No. 14 (assault elements).  The Court

8

ultimately declined to do so and gave no further instruction beyond the Ninth Circuit model jury

9

instructions for these two counts.  RT:875:3-4; *see also* Dkt. 175 (Final Jury Instructions).

10

The Court first rejected defendant's proposed instruction defining the defendant's list of official

11

duties as too narrow based on a review of the case law.  RT 855:2-13.  The defendant then suggested

12

that the Court provide the jury with only the first sentence of his proposed instruction, which defined

13

"on account of":

14

15

16

To prove that Mr. DePape's actions were taken on account of the performance of Nancy Pelosi's official duties, the government must prove beyond a reasonable doubt that Mr. DePape acted because of her performance of official duties as a Member of Congress, and not for some other reason.

17

RT 865:12-17.  The government objected to this proposed instruction, arguing that requiring the

18

government to prove that defendant acted "because of" the performance of Speaker Pelosi's official

19

duties "and not for some other reason" would require the government to prove that the defendant acted

20

with a sole intent, which was a greater burden than the statutes' requirement that the government prove

21

the defendant acted "on account of" Speaker Pelosi's performance of official duties.  RT 865:18-22.

22

The Court declined to give this version of defendant's proposed instruction, holding that "on account of"

23

does not mean "the only reason" or the sole reason.  RT 868:8-12, 872:19-23.  The Court also declined

24

to give the government's proposed dual intent instruction, holding that it would confuse the jury.  RT

25

877:3-4.  But the Court also prohibited the defense from arguing that the government had to prove that

26

defendant was solely motivated by the performance of Speaker Pelosi's official duties.  RT 876:9-11.

27

During the charging conference, the parties also litigated the meaning of "while engaged in" in

28

Jury Instruction No. 14, regarding the assault charge.  Defendant argued that "while engaged in the

1  performance of her official duties" meant that Speaker Pelosi had to be currently engaged in official

2  duties, such being "on the House floor taking an important vote," when the defendant assaulted Mr.

3  Pelosi.  RT 851:6-17; *see also* 852:17-18; 853:23-25.  The Court rejected this interpretation of "while

4  engaged in," noting that the statute did not use temporal language such as "at the time" or "currently."

5  RT 852:13-19.  It further stated that the problem with defendant's narrow interpretation of "while

6  engaged in" was that it would not cover an assault on Mr. Pelosi even if Speaker Pelosi was standing

7  next to Mr. Pelosi and someone threatened to hit Mr. Pelosi with a hammer unless Speaker Pelosi

8  promised to vote to not certify the election.  RT 851:18-25.  The Court held that the statute intended to

9  "criminalize violence on family members of these elected officials as a way to intimidate them in their

10  performance of their official duties."  RT 854:10-18.

11  **III.    Closing Arguments**

12      **A.    Government's Closing Argument**

13      In its closing argument, as relevant to this Motion, the government repeatedly argued that the

14  defendant acted with the requisite intent for both counts.

15      In the beginning of its closing argument, the government stated:

16      The evidence has shown that Mr. Pelosi was here, in this next moment, laying on the floor [after
    the assault], only because his wife had an important job.  She was the speaker of the U.S. House
17      of Representatives.  She was the head of the Democratic Party in the House.  That was her job.
    And because of her job, the defendant targeted her.
18

19  RT:897:23 – 898:2.  While walking through defendant's statements to Mr. Pelosi before the assault, the

20  government said:

21      They go back into the Pelosis' bedroom.  That's when the defendant tells Mr. Pelosi that Nancy
    is the leader of the pack and that he had to take her out and that he would wait for her.  That's
22      when we start to understand why the defendant is there in the first place.

23  RT 914:2-6.

24      In the last portion of the government's closing argument, it focused on defendant's intent: "I

25  want to switch gears. . . . Why did the defendant come after Nancy Pelosi?  What did he plan to do to

26  her, and why did he assault Paul Pelosi?"  RT 919:20-22.  The government then played clips of

27  defendant's statements which evinced his intent.  First, it played a portion of Exhibit 5, part of

28  Lieutenant Hurley's post-arrest interview of defendant.  RT 919:23 – 920:1.  The government then noted

1   defendant's response to Lieutenant Hurley's question asking him if there was a reason for his conduct

2   and how it showed he targeted Speaker Pelosi because of her official duties:

3       What does he say in response?  He talks about Washington.  He describes Speaker Pelosi as the
        leader of the pack.  This is what defendant is talking about with Russiagate.  That's what he's
4       describing here.  He calls it a record-breaking crime spree of who?  The Democratic Party.

5       He notes that Hillary didn't have a position.  Who had a position?  Nancy Pelosi had a position.
        She is the speaker.  Special Agent Littlejohn testified that when Nancy Pelosi served as the
6       speaker of the house, she was the top Democrat in the House.  That was her official position, and
        that is why the defendant went to her home.

7

8   RT 920:6-16

9       The government then played a portion of Exhibit 4, the statements made by defendant to the

10  paramedics minutes after the assault.  RT 920:17-21.  The government argued that defendant was

11  focused on "the lies and the shit coming out of Washington, D.C." and that he said "he came here to

12  have a little chat with his wife" because, as he told both Mr. Pelosi and Lieutenant Hurley, she was the

13  "leader of the pack."  RT 920:23 – 921:1.

14      The government focused on defendant's statements in Exhibit 5, in his post-arrest statement to

15  Lieutenant Hurley, where he said he planned to break Speaker Pelosi's kneecaps and then wheel her into

16  Congress as evidence that he intended to kidnap Speaker Pelosi on account of the performance of her

17  official duties and that he intended to interfere with Speaker Pelosi while she was engaged in the

18  performance of her official duties:

19      He was going to break her kneecaps to teach her a lesson, that her endless fucking lies
        and corruption had a price.  That's what he says.  And this is key, he says, "Every time she goes
20      into Congress, every other fucking corrupt piece of shit in there is going to see her wheeling in in
        a wheelchair; they're going to realize that there is a fucking consequence for being the most evil
21      fucking people on the planet."  This is intent to impede, to intimidate, to interfere with a federal
        official, Speaker Nancy Pelosi, while she is engaged in the performance of her official duties.

22

23      This is the center of the evil and of the lies and of the corruption that the defendant is
        talking about.  What is this?  He tells you, it's Congress, where Nancy Pelosi performs her
24      official duties; in fact, she is the leader of Congress.  Who better to teach a lesson to than the
        leader of the pack?  The defendant uses the word "leader of the pack."  I use the word "speaker."
25      To him, they are the same thing.  There is no daylight there.  He intends to seize and confine
        Speaker Pelosi on account of the performance of her official duties as the speaker.

26      RT 921:19 – 922:14

27      The government then argued that defendant transferred this intent to harm and kidnap Speaker

28  Pelosi to her husband, Paul Pelosi.  It played an excerpt of Exhibit 10, defendant's call to a local news

reporter and argued:

> [Defendant] doesn't say, "I'm sorry I didn't get any of them," he says, "I'm sorry I didn't get more of them." Who did he get? He got Paul Pelosi. He transferred his intent to go after Nancy Pelosi to her husband, to Paul.

RT 922:19 – 923:6.

The government also played excerpts of Exhibits 6 and 7, additional portions of defendant's post-arrest interview with Lieutenant Hurley to explain why defendant assaulted Mr. Pelosi. RT 924:4 – 925:15. In Exhibit 6, Lieutenant Hurley asks defendant "Why did you hit him, then?" and the government noted that in response, defendant said, "I am here for the fight" and "If you stop me from going after evil, you will take the punishment instead." RT 924:7-10. The government then argued that this showed defendant's intent when he assaulted Mr. Pelosi:

> Take a moment with that. What is evil? To the defendant, it's Washington, it's Congress, it's the leader of the pack, it's Speaker Nancy Pelosi, the head of the Democratic Party. That is her official position.
>
> Take the punishment instead, in her stead. That is why he assaulted Paul Pelosi. The defendant inflicted the punishment he meant for Nancy Pelosi; he meant for her because, as we would say, she was the speaker of the House, the official top Democrat. As the defendant would say, because she was the evil corrupt leader of the pack of Democrats. There is no daylight between those two things. That is the same thing. We just used different words than the defendant.
>
> The defendant transferred the intent he had to break Nancy Pelosi's kneecaps and have her wheeled out onto the floor of Congress, which was an intent to impede, intimidate, interfere with her while she's engaged in the performance of her official duties. He transferred that to Mr. Pelosi. And that punishment he meant for Nancy Pelosi, he inflicted that on Paul. That is retaliation. Retaliation against Speaker Pelosi on account of the performance of her official duties.

RT 924:11 – 925:8.

## B.   Defendant's Closing Argument

As relevant to this Motion, in the defense team's closing argument, they argued that defendant did not target Speaker Pelosi because of her official duties but because "[s]he was just one part of a larger plan to root out the corruption of the ruling class, the cabal, to stop the molestation of children, and to expose the truth to everyone." RT 930:12-18. Defense counsel argued that defendant put Speaker Pelosi on his "list" because of her actions separate from the performance of her official duties, that is, "her prominence as the leader, the face of the Democratic Party her involvement with the [Democratic National Committee] and its persecution of a rival campaign and her spreading of lies in

1   the media on behalf of a political party." RT 931:5-11. And they argued that the fact that defendant had

2   other people on his "list" and planned to target them as well established that he lacked the requisite

3   intent when he attempted to kidnap Speaker Pelosi and assaulted Mr. Pelosi. *See, e.g.*, RT 932:18-20

4   ("You know there was a larger plan from the other evidence in this case . . . ."); RT 934:9-12 ("[The

5   defendant] was going to be on the road, because he had a larger plan to find all the other targets on his

6   list.").

7          The defense team also argued to the jury a narrow definition of performance of official duties

8   based on the ethics rules for Members of Congress. They said that Speaker Pelosi had "a work life, a

9   personal life, and a political life," and that her political activities, such as "campaigning for Democrats,

10  campaigning against Republicans, acting on behalf of a political party" were not part of her official

11  duties. RT 936:24-25; *see also* RT 937-38. The defense team argued that defendant targeted Speaker

12  Pelosi because she was "the leader of the Democratic Party, the political party, not [because she was] the

13  leader of the Democrats in Congress" and therefore, that defendant did not target her because of the

14  performance of her official duties. RT 943:23-25; *see also* RT 949:5-15 (distinguishing politics from

15  official duties); RT 931:17-22 (providing examples of official duties such as passing legislation, voting

16  and giving speeches on the House floor).

17         Regarding the assault charge, the defense argued that Speaker Pelosi "clearly wasn't engaged in

18  the performance of official duties when Mr. DePape hit Mr. Pelosi with that hammer. It was the middle

19  of the night. She was probably sleeping. There's been no evidence to prove otherwise." RT 946:10-14.

20  The defense further argued that defendant did not assault Mr. Pelosi to retaliate against Speaker Pelosi,

21  but instead committed the assault "in a flash of desperation because his larger plan was thwarted, and he

22  wouldn't be able to get to his other targets." RT 948:12-14; *see also* RT 947:16-19.

23     **C.    Government's Rebuttal Argument**

24         As relevant here, in rebuttal, the government argued that defense team's distinction between

25  politics and official duties was a fallacy: there was no distinction in the jury instructions and more

26  importantly, there was no evidence that defendant made such a distinction. RT 952:8 - 953:4.

27  Furthermore, the government argued that there was no distinction between politics and official duties for

28  Members of Congress, who are elected a members of a political party, and especially for the Speaker,

1  whose official position at the time was the leader of the Democrats in the U.S. House of Representatives.

2  RT 954:14 - 955:9.

3      The government next argued that the defense's interpretation of "while engaging" was too

4  narrow, stating "They want to read 'while engaging' really narrowly.  They want you to think the only

5  way that this can be violated is Nancy Pelosi's got to be on the floor voting on a bill when the defendant

6  comes in and attacks her husband.  That is not what the instruction says."  RT 956:6-12.  Defense

7  objected after this statement, claiming that it misstated the law, and the Court overruled the objection.

8  RT 956:13-14.  The government then stated that that "while engaging" meant "whether the defendant

9  was going after [Speaker Pelosi] because of her position."  RT 956:15-16.

10                                    **LEGAL STANDARD**

11      Under Federal Rule of Criminal Procedure 33, the Court may, upon the defendant's motion,

12  vacate a judgment and grant a new trial "if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  In

13  general, "[a] district court's power to grant a motion for a new trial is much broader than its power to

14  grant a motion for judgment of acquittal."  *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir.

15  2000) (quotation omitted).  For example, when evaluating a motion for a new trial, "[t]he court is not

16  obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the

17  evidence and evaluate for itself the credibility of the witnesses."  *Id.*  "By the plain terms of Rule 33,

18  however, th[e] Court's focus must be whether failing to grant a new trial would result in manifest

19  injustice."  *United States v. Jinian*, 2011 WL 5056978, at *7 (N.D. Cal. Oct. 24, 2011) (White, J.), *aff'd*

20  725 F.3d 954 (9th Cir. 2013).

21      In general, a court should grant a motion for a new trial only in "exceptional circumstances,"

22  *United States v. Chen*, 754 F.2d 817, 821 (9th Cir. 1985), in which "a serious miscarriage of justice may

23  have occurred," *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992).  A decision to grant a new

24  trial is "within the sound discretion of the district court."  *Alston*, 974 F.2d at 1212 (quotation omitted).

25  Indeed, so long as the trial court has applied the appropriate legal rule, its resolution of a motion for a

26  new trial will only be overturned if it "resulted from a factual finding that was illogical, implausible, or

27  without support in inferences that may be drawn from the facts in the record."  *United States v. Hinkson*,

28  585 F.3d 1247, 1263 (9th Cir. 2009) (*en banc*).

**ARGUMENT**

The Court correctly decided the jury instructions at the charging conference.  The various versions of defendant's proposed additional instruction are not supported by the law and the given jury instructions adequately permitted defense to argue their theory of the case to the jury.  The Court was correct to not supplement the jury instructions.  Furthermore, the government did not misstate the law in its rebuttal argument.  Therefore, there is no basis to grant a new trial, much less the "exceptional circumstances" required to do so under Rule 33.

**I.    The Final Jury Instructions Properly Stated the Law and Adequately Covered the Defense Theory While Defendant's Proposed Instructions Misstated the Law**

Defendant argues that the Court violated his constitutional right to present a defense by not giving his proposed jury instruction defining "on account of the performance of official duties."  A defendant is entitled to instruct the jury on his theory of the defense if it has some foundation in evidence, is supported by law, and the given instructions do not adequately cover the defense theory. *See United States v. Whittemore*, 776 F.3d 1074, 1078 (9th Cir. 2015).  Defendant's proposed instruction was not supported by law and therefore, the Court did not err in refusing to give it.  And the given instructions adequately covered the defense theory such that defendant's modified proposed instruction was unnecessary.

**A.    Defendant's Initial Proposed Instruction Misstated the Law**

Defendant's initial proposed instruction had two key errors.  First, it proposed instructing the jury that "on account to the performance of official duties" meant that the government had to prove that defendant acted *solely* because of Speaker Pelosi's performance of official duties.  The proposed instruction provided,

> To prove that Mr. DePape's actions were taken on account of the performance of Nancy Pelosi's official duties, the government must prove beyond a reasonable doubt that Mr. DePape acted *because of* her performance of official duties as a Member of Congress, *and not for some other reason*.

(emphasis added).  As the Court properly found at the charging conference, the statutory language "on account of" does not require that the government prove that defendant acted with a sole intent.  RT 868:8-12, 872:19-23.  Defendant cited no legal authority during the trial and cites no legal authority now

1  to support his proposed sole intent requirement.  Although the government could find no case law

2  rejecting a sole intent requirement for the two statutes charged here, a review of statutes with analogous

3  intent requirements show that none require the government to prove a defendant acted with a sole intent.

4  *See United States v. Smith*, 831 F.3d 1207, 1217–18 (9th Cir. 2016) (for obstruction of justice charges,

5  "reject[ing] the claim that a defendant's unlawful purpose to obstruct justice must be sole or primary,"

6  indicating without holding that "substantial" purpose to obstruct is required, and rejecting "incidental"

7  or "dominant" purpose requirements); *United States v. Banks*, 514 F.3d 959, 969 (9th Cir. 2008)

8  (VICAR purpose need not be "primary or sole purpose" but must be "substantial purpose"); *United*

9  *States v. Pepe*, 81 F.4th 961, 978 (9th Cir. 2023) (for travel with intent to engage in illicit sexual conduct

10  under 18 U.S.C. § 2423(b), reiterating that "motivating purpose" is sufficient for conviction).

11     Defendant's proposed instruction also misstated the law in its proposed definition of

12  "performance of official duties," which provided:

13     A Member of Congress's performance of official duties includes activities such as: legislation,
       constituent services, and committee work.  A Member of Congress's performance of official
14     duties does not include activities such as: fundraising; campaigning; work on behalf of the
       Democratic party, the Democratic National Committee, or the Democratic Congressional
15     Campaign Committee; or any personal matters not related to official duties.

16  The few courts that have opined on the definition of "performance of official duties" in criminal statutes

17  have rejected such a narrow definition.  In *United States v. Williamson*, 903 F.3d 124, 131 (D.C. Cir.

18  2018), the Court of Appeals for the District of Columbia addressed the same language in 18 U.S.C.

19  § 115(a)(1)(B), which criminalizes threats against officials on account of the performance of their

20  official duties.  The Court held:

21     The statute speaks in terms of a threat made 'on account of the performance of official duties,'
       not to draw attention to a particular official duty, but instead to assure that the threat generally
22     relates to the officer's performance of official duties rather than to a personal dispute having
       nothing to do with the officer's job functions.  For instance, the statute would not reach a threat
23     arising from a personal dispute with a neighbor who happens be a law enforcement officer,
       where the subject of the disagreement is entirely unconnected to the officer's performance of his
24     job.

25  *Id*.  The D.C. Circuit drew a distinction not between particular official duties, as defendant's proposed

26  instruction attempted to do, but instead between an officer's job functions generally and an entirely

27  personal dispute.  *See also United States v. Rendleman*, 495 F. App'x 727, 731 (7th Cir. 2012) (holding

28  in threats case charging 18 U.S.C. § 115(a)(1)(B) that "[t]he government had to prove that Rendelman

1  retaliated against a federal official for the performance of his or her duties, but did not have to prove that

2  Rendelman was retaliating against particular official acts"); *United States v. Talley*, 164 F.3d 989, 1003-

3  04 (6th Cir. 1999) (applying the U.S.S.G. § 3A1.2 official victim enhancement where defendant was

4  convicted of soliciting the killing of an FBI agent because offense "was motivated by the fact that the

5  victim was a government officer or employee" instead of "by mere personal animus").

6      In *United States v. Rostenkowski*, 59 F.3d 1291 (D.C. Cir. 1995), the D.C. Circuit discussed the

7  unique circumstances presented by trying to define the official work of a Member of Congress.

8  Defendant Rostenkowski, a former United States Congressman from Illinois, brought two interlocutory

9  appeals challenging his criminal prosecution for misappropriation of congressional funds. *Id*. at 1294.

10  His challenges to the indictment, as relevant here, depended on the Court's ability to draw a line

11  between "official" services and "personal" services obtained by the then-Congressman, as he was

12  authorized to use congressional funds for official work but not personal benefit. *Id*. at 1306-12.  The

13  Court described its analysis as "overly cautious" in allowing that some activities that were most likely

14  personal might have been official because, among other reasons, "the life of a congressman—as

15  incumbent legislator and perpetual candidate for office, whose official day ends only after a round of

16  nominally 'social' events at which he is obliged to appear, and whose weekends and holidays are only

17  an opportunity to reconnect with his constituents—makes the line between 'official work' and 'personal

18  services' particularly difficult to draw." *Id*. at 1312.  The Court continued: "For the 'ordinary person,'

19  unlike a legislator, the distinction between work and life may be relatively clear.  For a Congressman, it

20  is not so clear; service in the United States Congress is not a job like any other, it is a constitutional role

21  to be played upon a constitutional stage." *Id*.

22      The D.C. Circuit's analysis in *Rostenkowski* helps explain why the Ninth Circuit cases defining

23  "official duties" are less helpful in the context of a victim who was not just a Member of Congress but

24  the Speaker of the House.  In *United States v. Ornelas*, 906 F.3d 1138, 1149 (9th Cir. 2018), the Ninth

25  Circuit upheld an "official duties" jury instruction that provided that the test for determining whether an

26  officer is "[e]ngaged in the performance of official duties" is "whether the officer is acting within the

27  scope of his employment, that is, whether the officer's actions fall within his agency's overall mission,

28  in contrast to engaging in a personal frolic of his own."  The Ninth Circuit used similar language in

1   *United States v. Juvenile Female*, 566 F.3d 943, 949-50 (9th Cir. 2009), where it described the test for

2   whether an officer was engaged in an official duty under 18 U.S.C. § 111 as "whether he is acting within

3   the scope of what he is employed to do, as distinguished from engaging in a personal frolic of his own."

4   Both *Ornelas* and *Juvenile Female* involved defendants charged with assaulting a federal officer while

5   the officer was engaged in the performance of their official duties.  In both cases, the federal officer was

6   a law enforcement officer.  *Ornelas*, 906 F.3d at 1142; *Juvenile Female*, 566 F.3d at 944.  These

7   situations are distinct from Members of Congress and the Speaker of the House, who does not go off

8   duty like a law enforcement officer and who can be targeted "on account of the performance of her

9   official duties" by someone targeting her because she is the Speaker of the House of Representatives.

10  Defendant's proposed instruction limiting the definition of "performance of official duties" to legislative

11  activity was too narrow and unsupported by the law.

12      **B.      Defendant's Modified Proposed Instruction Also Misstated the Law and Was
            Unnecessary Because the Given Jury Instructions Adequately Covered the Defense
13          Theory**

14          At the charging conference, defendant suggested a modified version of his defense instruction,

15  specifically: "To prove that Mr. DePape's actions were taken on account of the performance of Nancy

16  Pelosi's official duties, the government must prove beyond a reasonable doubt that Mr. DePape acted

17  because of her performance of official duties as a Member of Congress."  RT 866:7-11.  The Court

18  properly rejected this, finding that the statute's use of "on account of" was different from "because,"

19  which could be incorrectly interpreted to require that the government prove defendant acted with a sole

20  intent.  RT 866:12-16; 867:24-868:12.  Indeed, defense counsel suggested multiple times during the

21  charging conference that they intended to argue that the statutes required the government to prove that

22  defendant had the sole intent to act on account of the performance of Speaker Pelosi's official duties.

23  *See, e.g.*, RT 872:18 ("And we can argue that [the statute] does require [a sole intent].").  The Court

24  rejected this interpretation of the statutes, correctly holding that "on account of" does not mean sole.  RT

25  872: 19-23.  Therefore, defendant's proposed instruction replacing "on account of" with "because of"

26  misstated the law to the extent that it could be interpreted as requiring that defendant had the sole intent

27  to act on account of the performance of Speaker Pelosi's official duties.

28          To the extent that defendant now argues that "because of" does not mean "only," defendant's

1    proposed instruction added nothing to the jury instructions, which faithfully stated the requirement that

2    the government prove defendant intended to kidnap Speaker Pelosi "on account of the performance of

3    her official duties" and that defendant assaulted Mr. Pelosi with the intent to retaliate against Speaker

4    Pelosi "on account of the performance of her official duties" or with the intent to impede, intimidate, or

5    interfere with Speaker Pelosi while engaged in the performance of her official duties.  Dkt. 175, 15-16.

6    The given jury instructions adequately covered the defense's theory that defendant targeted Speaker

7    Pelosi for reasons outside the performance of her official position, which they argued to the jury.  But

8    the jury concluded that the evidence supported conviction, and defendant does not challenge the

9    sufficiency of the evidence.  During its deliberations, the jury sent only one note asking, "Which exhibit

10   number has Depape saying 'wheel her out in a wheelchair.'  We think Sgt. Hurley."  Dkt. 179.  This

11   showed the jury's focus on defendant's statement in Exhibit 5 that he targeted Speaker Pelosi because he

12   wanted to break her kneecaps and parade her around Congress.  Specifically, defendant said, "Every

13   time she goes into Congress, every other fucking corrupt piece of shit in there is going to see her

14   wheeling in in a wheelchair; they're going to realize that there is a fucking consequence for being the

15   most evil fucking people on the planet."  This clearly supported the jury's conclusion that defendant

16   acted "on account of the performance" of Speaker Pelosi's official duties (or for the assault charge,

17   alternatively, with intent to impede, intimidate, or interfere with Speaker Pelosi while engaged in the

18   performance of her official duties[1]), as he himself linked his actions to her role in Congress.

19        The government does not contest that the statutes charged here require a causal connection

20   between defendant's intent and Speaker Pelosi's performance of her official duties.  That causal

21

22   _____

23        [1]  Defendant notes in a footnote that he continues to maintain that it was "inappropriate to
     instruct the jury on this alternative theory because the government did not adduce sufficient evidence to
     support such a theory."  Def. Mtn. at 7 n.1.  This passing, single-sentence assertion is insufficient to

24   grant defendant's motion for a new trial.  Moreover, the government introduced sufficient evidence for a
     reasonable juror to convict defendant on this basis.  Specifically, the evidence showed that Speaker

25   Pelosi held a constitutional position and was at all times serving as Speaker of the House, and that
     defendant's actions were intended to interfere with the performance of her official duties.  Specifically,

26   Exhibit 5 showed defendant admitting that he wanted to assault Speaker Pelosi so that he could wheel
     her onto the floor of Congress to show everyone else (presumably other Members of Congress) that

27   there were consequences to their actions.  *See United States v. Fenton*, 30 F.Supp.2d 520, 524 (W.D. Pa.
     1998) (describing the mens rea requirement in section 115(a)(1) as "(1) intent to prospectively interfere

28   with the victim's exercise of official duties; or (2) intent to retaliate against the victim for the past
     exercise of official duties.").

connection is apparent in the statutory language and Congress's decision to use the term "on account of" in both charged statutes. The jury instructions included the "on account of" language and the government did not argue contrary to these instructions.[2] No additional instruction was required to further define "on account of," especially where the defense team intended to argue that "because" required the government to prove that defendant acted with a singular intent.

Defendant suggests that other cases interpret "on account of" to mean "because" and therefore, not including his proposed instruction was error. This is an overly broad reading of these other cases, none of which address the statutes charged here. In *O'Gilvie v. United States*, 519 U.S. 79, 81-83 (1996), the Supreme Court interpreted a provision of the Internal Revenue Code to determine whether petitioners had to pay taxes on a punitive damage award. The Court's interpretation relied on the text of the whole statutory provision, not simply on the term "on account of," which excluded from taxable gross income the "amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness." The Court considered and rejected petitioners request for a broad reading of the provision that would require no more than a "but-for" connection between "any" damages and a lawsuit for personal injuries, such that all personal injury lawsuit damages would fall under this provision (because without the injury, there would be no lawsuit, and without the lawsuit, there would be no damages). The Court held that a stronger causal connection than that suggested by petitioner was warranted but had no reason to decide the question raised in this case: whether the term "because" imposes a higher intent requirement than "on account of."

Defendant also relies on the panel decision in *United States v. Pate*, 43 F.4th 1268 (11th Cir. 2022), which it acknowledges was later vacated by the Eleventh Circuit sitting en banc in *United States v. Pate*, 84 F.4th 1196 (11th Cir. 2023). The central issue before that Court was whether former officials

---

[2] Defendant claims that the government argued for an expansive reading of section 115(a)(1) that would apply to a Member of Congress at all times, apparently regardless of any connection to performance of official duties. Mtn. at 9. This is simply incorrect. The government has at all times argued that defendant's actions were intended to target Speaker Pelosi on account of the performance of her official duties. *See, e.g.*, RT 955:22-956:2 ("[The defendant] didn't try to kidnap and assault [Speaker Pelosi] because she cut in front of him at Safeway. He didn't try to kidnap and assault her because she cut him off in traffic. He wasn't casing the neighborhood looking for a house to break into. He deliberately targeted her because of her job, because of her role in our political system, because of her official duties.").

were covered by a statute criminalizing the filing of false liens against federal officials on account of the performance of their official duties.  84 F.4th at 1199-1200.  As the Court sitting en banc stated, defendant did not challenge the third element, which required that he filed the liens "on account of" the officer's performance of official duties.  *Id*. at 1200.  Furthermore, the jury instructions regarding this element stated that the government had to prove that "[d]efendant filed the document on account of the federal employee or official's performance of his/her official duties" not "because of" or based on some causal connection.  *See United States v. Pate*, Court's Instructions to the Jury, 1:18-cr-00045-RSB-BWC, Dkt. 88 (S.D. Ga. Oct. 17, 2019) (Attachment 1).  The jury instructions did not define "on account of," defendant did not challenge this portion of the instructions on appeal, and the Court of Appeals had no occasion to determine whether "on account of" should have been defined as "because."

The other cases on which defendant relies merely use the term "because of" in passing to describe 18 U.S.C. § 115 but none required an instruction defining "on account of" as "because" or otherwise address the arguments defendant makes here.  *See United States v. Saunders*, 166 F.3d 907, 914 (7th Cir. 1999) (holding that the evidence supported defendant's conviction for threatening to kill a federal judge on account of her official duties); *United States v. Raymer*, 685 F. Supp. 1358, 1359 (S.D. Miss. 1988) (describing the purpose of § 115 while determining that the statute covers threats made against former officials).  Therefore, the Court did not err by not giving defendant's proposed jury instructions because the given instructions properly stated the law and adequately covered the defense theory.  *See United States v. Whittemore*, 776 F.3d 1074, 1078 (9th Cir. 2015).  No new trial is warranted on this basis.

## II.   The Government's Rebuttal Argument Correctly Stated the Law

Defendant's second argument in support of his new trial motion is that the government's "statement that everything Ms. Pelosi did that was in any way related to politics constituted performance of her official duties as a Member of Congress misstated the law."  Def. Mtn. 11-12.  This mischaracterizes the government's rebuttal argument, which properly stated the applicable legal standards.

The government correctly noted in rebuttal that there was no definition of "official duties" in the jury instructions that distinguished between political activities and official activities.  RT 952:8-20.  As

1   noted above, the Court rejected defendant's attempt to define "official duties" narrowly at the charging

2   conference, and the D.C. Circuit has recognized that this language should be read broadly, or certainly

3   more broadly than defendant proposes here. *See Williamson*, 903 F.3d at 131; *see also Rostenkowski*, 59

4   F.3d at 1312.

5          In response to defendant's argument that he targeted Speaker Pelosi because of her political

6   activity and that this activity was entirely separate from her official duties, RT 937:17-938:23; RT

7   943:6-9, the government noted that there was no evidence that defendant made such a distinction or was

8   aware of the ethical rules imposed by the U.S. House of Representatives on their members. Instead, the

9   government focused on defendant's own statements about wheeling an injured Speaker Pelosi into

10  "Congress." RT 952:21-953:16. The government then relied on a defense witness to explain that

11  Speaker Pelosi's official position included her party role, that she was elected to be the lead democrat in

12  the U.S. House of Representatives. RT 954:14-955:9. Far from misstating the law, the government

13  explained that the evidence supported the conclusion that defendant targeted Speaker Pelosi because of

14  the performance of her official duties, and that those official duties included a political role as the lead

15  Democrat in the U.S. House of Representatives.

16         The defense team was permitted to argue its theory to the jury – that defendant targeted Speaker

17  Pelosi because he believed she was part of an elite, corrupt cabal and because of her role as the head of

18  the Democratic Party. RT 931:5-22. The Court properly instructed the jury on the legal requirements

19  for both charges and the government did not misstate these requirements in its jury addresses. The jury

20  rejected the defense theory of the case and instead convicted defendant. A new trial is not warranted.

21                                    **CONCLUSION**

22         For the foregoing reasons, defendant's motion should be denied.

23

24  DATED:  March 8, 2024                    Respectfully submitted,

25                                           ISMAIL J. RAMSEY
                                             United States Attorney
26
                                                  /s/
27                                           HELEN L. GILBERT
                                             LAURA VARTAIN HORN
28                                           Assistant United States Attorneys