JODI LINKER, Bar Number 230273
Federal Public Defender
Northern District of California
ANGELA CHUANG, Bar Number 313445
TODD M. BORDEN, Bar Number 269092
Assistant Federal Public Defenders
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:    (415) 436-7706
Email:          Angela_Chuang@fd.org

Counsel for Defendant DePape

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>DAVID WAYNE DEPAPE,<br><br>　　　　　　Defendant. | **Case No.:** CR 22–00426 JSC<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR A NEW TRIAL**<br><br>**Court:**　　　　Courtroom 8, 19th Floor<br>**Hearing Date:**　March 27, 2024<br>**Hearing Time:**　10:00 a.m. |

### INTRODUCTION

Defendant David DePape moved for a new trial under Federal Rule of Criminal Procedure 33 based on the Court's refusal to give a theory-of-the-defense instruction defining the phrase "on account of the performance of official duties," which was a phrase contained in the mens rea element for both offenses he was charged with committing, and which was the sole element of both offenses that Mr. DePape contested. *See* Dkt. 218. Mr. DePape's proposed modified instruction—that the jury must find he "acted because of [Nancy Pelosi's] performance of official duties as a Member of Congress"—correctly stated the law and had more than adequate evidentiary support in the record.

The government's contrary arguments boil down to its assertions that the phrase "because of" is somehow distinct from the phrase "on account of," and that the other jury instructions adequately covered Mr. DePape's theory of the defense. *See* Dkt. 219 at 9–15. As to its first argument, the government tellingly cites no legal authority for its fine distinction between "because of" and "on account of," which in any event numerous dictionaries and courts have held are synonyms. As to its second argument, the other instructions given by the Court did not encompass the defense theory because none of the other instructions ever specified that "performance of official duties" pertained only to performance of official duties by Nancy Pelosi *as a Member of Congress*. Accordingly, under binding Ninth Circuit precedent, the Court committed per se reversible error in refusing to give Mr. DePape's proposed modified instruction defining "performance of official duties," and must therefore grant his Rule 33 motion.

## ARGUMENT

### I. The Court should grant a new trial under Rule 33.

The parties agree that the Court has broad authority to grant a motion for a new trial under Rule 33. *Compare* Dkt. 218 at 4–5, *with* Dkt. 219 at 8. The government does not dispute that numerous authorities agree that Rule 33 motions should be granted if there is a reversible trial error. *See, e.g., United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (collecting cases); 3 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 589 & n.2 (5th ed. 2023) ("Courts have concluded that any error sufficient to require a reversal on appeal is an adequate ground for granting a new trial.") (collecting cases). This rule makes good sense because any trial error that warrants reversal on appeal would of course require a new trial anyway, and granting a Rule 33 motion before an appeal promotes judicial economy.

The government emphasizes that the appellate standard of review for the denial of a Rule 33 motion is abuse of discretion. *See* Dkt. 219 at 8. But here, the two issues presented in Mr. DePape's Rule 33 motion—the Court's failure to give a theory-of-the-defense instruction and the prosecutor's misstatement of the law during closing argument—are both subject to de novo review by the appellate court. *See United States v. Marguet-Pillado*, 648 F.3d 1001, 1006 (9th Cir. 2011) (reviewing de novo whether defendant's proposed theory-of-the-defense instruction is supported by

law); *United States v. Velazquez*, 1 F.4th 1132, 1136–37 (9th Cir. 2021) (de novo review of improper statements by prosecutor during closing argument)[1]. Accordingly, in the event of an appeal by Mr. DePape, the two issues raised in his Rule 33 motion will be reviewed de novo, with no deference to this Court's rulings. *See id.*

### A. The Court should grant a new trial based on its erroneous refusal to instruct the jury on the meaning of "on account of the performance of official duties."

In the Ninth Circuit, district courts must give a theory-of-the-defense instruction requested by a defendant if the instruction "is supported by law and has some foundation in the evidence." *United States v. Kayser*, 488 F.3d 1070, 1073 (9th Cir. 2007). "The district court's failure to give a defendant's requested instruction that is supported by law and has some foundation in the evidence warrants per se reversal, unless other instructions, in their entirety, adequately cover that defense theory." *Marguet-Pillado*, 648 F.3d at 1006 (cleaned up). Here, the government does not dispute that Mr. DePape's requested instructions defining "on account of the performance of official duties" had some foundation in the evidence. *See* Dkt. 219 at 9–15. Nor could it, as there was substantial evidence that Mr. DePape was motivated by factors other than Ms. Pelosi's performance of official duties as a Member of Congress, such as his desire to use her to gain access to Target 1, *see* Dkt. 218 at 2, 9–10, which easily satisfies the "generous" standard for when a theory-of-the-defense instruction should be given, *see, e.g., Kayser*, 488 F.3d at 1076 ("[A] defendant is entitled to an instruction concerning his theory of the case if the theory is legally sound and evidence in the case makes it applicable, even if the evidence is weak, insufficient, inconsistent, or of doubtful credibility." (quoting *United States v. Washington*, 819 F.2d 221, 225 (9th Cir. 1987))). Instead, the government argues that Mr. DePape's proposed instructions misstated the law. *See* Dkt. 219 at 9–15. Not so.

#### 1. Mr. DePape's proposed theory-of-the-defense instruction is supported by law.

The government primarily focuses on the initial proposed instruction sought by Mr. DePape

---

[1] The Ninth Circuit in *Velazquez* noted that there is a possible intra-circuit split on whether de novo or abuse-of-discretion review applies to claims of improper prosecutorial comments during closing argument. *See* 1 F.4th at 1137. But the Court emphasized that it need not resolve the issue because it would reverse regardless of the standard of review, citing "a close case involving a prosecutor's misstatement of the law" in which it reversed even on plain-error review. *Id.* (citing *United States v. Segna*, 555 F.2d 226, 230–32 (9th Cir. 1977)).

REPLY IN SUPP. OF MTN. FOR NEW TRIAL
*DEPAPE*, CR 22–00426 JSC

1 defining "on account of the performance of official duties," arguing that this instruction misstated the
2 law. *See* Dkt. 219 at 9–12. Specifically, the government argues that the list of duties of a
3 Congressperson that Mr. DePape included in his proposed instruction—like legislation, constituent
4 services, and committee work—was too narrow, and that it was sufficient for the government to
5 prove only that Mr. DePape was "generally" motivated by Ms. Pelosi's work as a Congressperson or
6 in politics, relying heavily on *United States v. Williamson*, 903 F.3d 124, 131 (D.C. Cir. 2018). *See*
7 Dkt. 219 at 10–11.

8 But *Williamson* sheds no light on the scope of the official duties of a Member of Congress (or
9 indeed of any government official) because the case involved an FBI agent. *See* 903 F.3d at 128.
10 More importantly, *Williamson* did not purport to address how a jury should be instructed about the
11 "on account of the performance of official duties" element of the offense, or even the scope of that
12 element, because the case arose in the context of a motion to dismiss the indictment. *See id.* at 130–
13 32. Specifically, the defendant had moved to dismiss the indictment, which simply parroted the
14 language of the statute, arguing that the indictment needed to specify which particular official duties
15 the victim FBI agent was performing that motivated the defendant's threat. *See id.* The D.C. Circuit
16 held that indictments that parrot the statutory language are generally legally valid, except in cases
17 where the indictment fails to charge the "very core of criminality" of a particular offense, so as to fail
18 to give defendants fair notice of the charges against them, a standard articulated by the Supreme
19 Court in *Russell v. United States*, 369 U.S. 749 (1962). *See id.* at 131 (quoting *Russell*, 369 U.S. at
20 764). The court then held that the particular official duties of the FBI agent in question did not go to
21 the "very core of the criminality" under § 115(a)(1)(B) so as to require them to be specifically
22 charged in the indictment under the Supreme Court's rule in *Russell*. The *Williams* court was thus not
23 opining on the precise scope of the official-duties element, and was instead merely discussing how
24 core that element was to a violation of § 115(a)(1)(B) for the purposes of complying with the
25 constitutional requirement that an indictment give defendants fair notice of the charges against them.
26 *See id.* at 130–32.

27 Further, the government still fails to articulate any clear definition of where the line lies
28 between the "official duties" of a Member of Congress and activities that are not official duties,

instead articulating a standard—based on a misreading of *Williams*—that a defendant is liable if his motivations "generally" related to the job functions of a Congressperson and were not purely "personal." *See* Dkt. 10–11. Criminal defendants cannot be deprived of their liberty based on such an amorphous and ambiguous legal standard requiring proof only that their motivations "generally related" to a federal official's performance of her official duties. *See, e.g., Skilling v. United States*, 561 U.S. 358, 410 (2010) (interpreting honest-services wire-fraud statute narrowly to exclude an "amorphous category of cases" to avoid constitutional void-for-vagueness concerns). Not only that, but the government's reading fails to account for activities that are neither purely "personal" nor related to a Congressperson's job function that would not be considered "official duties"—for example, if a Member of Congress also served on a board of directors for a non-profit organization or taught courses as an adjunct professor.

The government further argues that Mr. DePape's modified proposed instruction—which told the jury that it could convict Mr. DePape only if the government proved beyond a reasonable doubt that he "acted because of [Ms. Pelosi's] performance of official duties as a Member of Congress"—also misstated the law, apparently because the statutory language—"on account of"—is somehow different from the simpler and clearer English phrase "because of." *See* Dkt. 219 at 12. The government tellingly cites no authority contradicting Mr. DePape's obvious semantic proposition, and merely quibbles with the cases cited by Mr. DePape.[2] *See id.* at 14–15. Dictionary definitions also confirm Mr. DePape's position, uniformly agreeing that the phrase "on account of" means "because of." *See, e.g., Account*, Oxford English Dictionary (2023), *available at* https://www.oed.com/search/dictionary/?scope=Entries&q=on+account+of (last accessed Mar. 19, 2024) (defining "on account of" as "For the sake of, in consideration of; by reason of, because of"); *On account of something*, Cambridge Dictionary (2024), *available at* https://dictionary.cambridge.org/us/dictionary/english/on-account-of (last accessed Mar. 19, 2024) (defining "on account of something" as "because of something"); *Account* Merriam-Webster Dictionary (2024), *available at* https://www.

---

[2] Some of the government's cases are also entirely inapposite, like *United States v. Talley*, 164 F.3d 898, 1003–04 (6th Cir. 1999), which was interpreting the Sentencing Guidelines official-victim enhancement, which turns on the victim's status alone, and does not even contain the statutory phrase relevant here: "on account of the performance of official duties." *See id.*; Dkt. 219 at 11.

merriam-webster.com/dictionary/on%20account%20of (last accessed Mar. 19, 2024) (defining "on account of something" as "for the sake of : because of"). Thus, contrary to the government's contention, Mr. DePape's proposed modified jury instruction—which simply required the government to prove that he "acted because of [Nancy Pelosi's] performance of official duties as a Member of Congress"—correctly stated the law.

Further, the government does not meaningfully dispute the legal accuracy of the more specific definition of what types of activities constitute official duties of a Member of Congress, like legislation, constituent services, and committee work, and what types of activities do not, such as political fundraising, or the legal authority Mr. DePape cited in support of this definition. *See* Dkt. 218 at 11–12. Thus, the Court's failure to give this aspect of Mr. DePape's proposed instruction was likewise error.

### 2. The Court's other jury instructions did not adequately cover the defense theory.

After having vigorously opposed all attempts by the defense to give the jury any definition whatsoever of "on account of the performance of official duties," the government has changed its tune and now asserts that the modified instruction sought by the defense really added nothing and was not materially different from the instructions the Court gave. *See* Dkt. 219 at 12–15. The government's bare contention that the final jury instructions adequately stated the theory of the defense is wrong.

Critically, the final instructions nowhere clarified what "official duties" were at issue, i.e., Ms. Pelosi's official duties *as a Member of Congress*. Only the defense's proposed instruction clarified that "performance of official duties" must relate to Ms. Pelosi's official Congressional duties. Indeed, the phrase "Member of Congress" appears only once in the final jury instructions, in the definition of "United States official" in the instruction for Count 2, the assault charge.[3] *See* Dkt. 175 at 16. Thus, there is only one reference to a "Member of Congress" at all in the jury instructions, and the phrase pertained only to the first element of Count 2, not at all to Count 1 (the kidnapping charge) or to the

---

[3] The word "Congress," or any derivative thereof, appears only twice in the final instructions, once as noted above, and once defining "member-elect of Congress" in the same definition of "United States official." *See* Dkt. 175 at 16.

REPLY IN SUPP. OF MTN. FOR NEW TRIAL
*DEPAPE*, CR 22–00426 JSC

contested mens rea element of Count 2, which contained the critical disputed mens rea element requiring that Mr. DePape assaulted Mr. Pelosi with intent to retaliate against Ms. Pelosi "on account of performance of official duties." *See id.*

Only Mr. DePape's proposed instruction gave any definition of *what* official duties—official duties as a Member of Congress—could support a conviction. And the single reference to a "Member of Congress," among a long list of United States officials as relates to a different element of only one of the two charges cannot be deemed to adequately cover the defense theory. *See, e.g., Marguet-Pillado*, 648 F.3d at 1009; *see also United States v. Warren*, 25 F.3d 890, 896 (9th Cir. 1994) (noting that the jury should not be "left to piece together the theory of defense from disparate fragments of the general instructions"). This is a critical element of both offenses, and nowhere else was the jury instructed about the nature of which "official duties" were at issue. Especially given that there was testimony about Ms. Pelosi's other duties—such as her roles with Democratic National Committee and the Democratic Congressional Campaign Committee—it was critical that the jury was instructed that only actions against her taken on account of her duties as a Member of Congress could sustain a criminal conviction. *See, e.g.,* RT 481–85, RT 820–33. The government's closing arguments, which expressly highlighted the lack of any jury instruction defining "on account of performance of official duties," and its incorrect argument that there was no distinction between political fundraising and official duties performed as a Member of Congress, exploited and compounded the Court's error. *See* RT 952.

The Court's refusal to give the jury any guidance on the meaning of the much-contested phrase "on account of performance of official duties" is all the more puzzling given the heated debate that the parties and the Court had during the charging conference about how the phrase should be defined and exploration of its limits under the law. The final jury instructions, moreover, defined numerous other critical phrases that pertained to other elements of the offense, many of which involved less technical and more straightforward concepts than "official duties," including "federal officer," "substantial step," "forcible assault," "United States official," and "dangerous weapon." *See* Dkt. 175 at 15–16. In sum, the modified instruction sought by Mr. DePape correctly stated the law as requiring proof that he acted because of Ms. Pelosi's performance of official duties as a Member of Congress;

there was ample evidentiary basis to support giving such an instruction; and the other jury instructions did not adequately cover this defense theory because the jury was never instructed that Ms. Pelosi's "official duties" were her duties as a Member of Congress. The Court therefore committed a per se reversible error by refusing to give Mr. DePape's proposed instructions, and must grant a new trial on this basis.

### B. The Court should grant a new trial based on the government's misstatement of the law concerning "performance of official duties" during its closing argument.

The government also misstated the law during its closing argument when it repeatedly accused the defense of concocting a made-up distinction between Ms. Pelosi's performance of official duties as a Member of Congress and her other political activities unrelated to her Congressional duties such as fundraising. *See* Dkt. 218 at 11–12. The government falls back on the D.C. Circuit's *Williamson* case, which it interprets as meaning that anything vaguely related to politics falls into the category of "official duties." *See id.* But, as discussed above, *Williamson* arose in the procedural posture that was interpreting only what aspects of the offense constituted "the very core of criminality" under that statute, and it did not purport to outline the outer contours of the official-duties element of the threats statute at issue there. *See* 903 F.3d at 131.

The only authority the government cites that deals with Members of Congress is *United States v. Rostenkowski*, 59 F.3d 1291 (D.C. Cir. 1995), where the government hones in on language in the lengthy opinion that it is sometimes difficult to draw a line between official and personal activities of a Member of Congress. *See* Dkt. 219 at 11–12. But *Rostenkowski* does not support the government's position. The case involved a former Congressperson charged with honest services fraud (and other offenses) for using government funds for personal matters, and D.C. Circuit addressed his interlocutory appeal of a motion to dismiss on various constitutional grounds. *See* 59 F.3d at 1294–96. The court ultimately rejected Rostenkowski's arguments that the Speech and Debate Clause, the Rulemaking Clause, and separation of powers categorically prohibited any prosecution of him for using government funds for personal matters. *See id.* at 1302–12. Thus, the *Rostenkowski* opinion does not even purport to outline the scope of the official duties of a Member of Congress, let alone whether that includes or excludes partisan political activities, and the government merely quotes from

portions of the opinion that point out the obvious: being a Member of Congress is a demanding job that does not have clear beginning and end to the workday. *See id.* at 1312.

Further, the government's analysis of *Rostenkowski*, to the extent it is relevant at all, only goes to the "while engaged" variant of the crimes charged here, not to the theories of liability that apply in Mr. DePape's case: "intent to retaliate against" or "on account of the performance of" official duties. *See* 18 U.S.C. § 115(a)(1)(A), § 1201(a)(5). And the government relies on the opinion to argue that a Member of Congress is essentially always engaged in official duties because of the nature of the job, a position the D.C. Circuit in *Rostenkowski* decidedly did not take, and a view expressly rejected by another federal court in a threats case against a Congressperson. *See* 59 F.3d at 1302–12; *United States v. Fenton*, 30 F. Supp. 2d 520, 528 (W.D. Pa. 1998) (rejecting government's contention "that the defendant need only intend to impede, intimidate or interfere with the Congressman 'during the time that' he is performing official duties") (granting motion for judgment of acquittal). To the extent the government's position is that it is impossible for courts to clearly outline the contours of the official duties of a Member of Congress, then any prosecution based on an alleged retaliation against Congresspeople on account of their performance of official duties would be unconstitutionally vague. *See, e.g., Johnson v. United States*, 576 U.S. 591, 595 (2015) (holding that the Fifth Amendment's guarantee of due process prohibits "taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement").

The government's statement to the jury—that the defense "made up" the distinction between Ms. Pelosi's official duties and political activities that are unrelated to her official duties—was both inflammatory and an inaccurate statement of the law and facts. In trying to capitalize on the Court's failure to instruct the jury on the extent of the statute, the government went too far.

In sum, government misstated the law during its closing argument when it repeatedly accused the defense of concocting a made-up distinction between Ms. Pelosi's performance of official duties as a Member of Congress and her other political activities unrelated to her Congressional duties such as fundraising. The government has not ever made any attempt to responded to Mr. DePape's citation to numerous legal authorities drawing such a distinction. *See* Dkt. 218 at 11–12. Instead, it invites the

Court to interpret sections 115 and 1201 in a manner that would be unconstitutionally vague, where any actions by a defendant that are "generally" motivated by politics automatically fall within those statutes, and that has no mooring in the statutory texts. The Court should also grant a new trial on the basis of the government's misstatement of the law during closing.

## CONCLUSION

The Court should grant Mr. DePape's motion for a new trial.

Dated:    March 20, 2024               Respectfully submitted,

                                       JODI LINKER
                                       Federal Public Defender
                                       Northern District of California

                                         /S
                                       ANGELA CHUANG
                                       TODD M. BORDEN
                                       Assistant Federal Public Defenders