JODI LINKER, Bar No. 230273
Federal Public Defender
Northern District of California
ANGELA CHUANG, Bar No. 313445
TODD BORDEN, Bar No. 269092
Assistant Federal Public Defenders
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:       Angela_Chuang@fd.org


Counsel for Defendant Depape


IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No.:** CR 22–426 JSC |
| Plaintiff, | **OPPOSITION TO GOVERNMENT'S RULE 35 MOTION** |
| v. | |
| DAVID WAYNE DEPAPE, | **Court:**           Courtroom 8, 19th  Floor |
| Defendant. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ....................................................................................................................... 4

I.    The Court violated Mr. DePape's right to due process by granting the government's
Rule 35(a) motion without affording him any opportunity to be heard............................. 4

II.   The current version of Rule 35(a) is exceedingly narrow and permits the Court only to
"correct" a sentence, not to "reopen" Mr. DePape's sentencing hearing to address its
allocution error................................................................................................................. 5

III.  Reopening Mr. DePape's sentencing proceedings while his state criminal trial is
ongoing is impracticable and would unconstitutionally interfere with his Fifth and Sixth
Amendment rights to present a defense and to the assistance of counsel......................... 9

IV.  Because the Court just last week expressed strong opinions about the sentence Mr.
DePape should receive, any resentencing must be before a different district judge....... 11

CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

## Federal Cases

*Armstrong v. Manzo*,
   380 U.S. 545 (1965) ................................................................................................ 4

*Daniels v. Woodford*,
   428 F.3d 1181 (9th Cir. 2005) .......................................................................... 9, 10

*Dillon v. United States*,
   560 U.S. 817 (2010) ........................................................................................... 5, 7

*Epic Sys. Corp. v. Lewis*,
   584 U.S. 497 (2018) ................................................................................................ 6

*Geders v. United States*,
   425 U.S. 80 (1976) ........................................................................................... 9, 10

*Green v. United States*,
   365 U.S. 301 (1961) ................................................................................................ 6

*Hill v. United States*,
   368 U.S. 424 (1962) ................................................................................................ 8

*Krechman v. Cnty. Of Riverside*,
   723 F.3d 1104 (9th Cir. 2013) ......................................................................... 11-12

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ................................................................................................ 4

*Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*,
   499 U.S. 117 (1991) ................................................................................................ 6

*Penson v. Ohio*,
   488 U.S. 75 (1988) ................................................................................................. 4

*Perry v. Leeke*,
   488 U.S. 272 (1989) ............................................................................................ 9-10

*Riggins v. Nevada*,
   504 U.S. 127 (1992) ................................................................................................ 9

*Troiano v. United States*,
   918 F.3d 1082 (9th Cir. 2019) ............................................................................... 7

*United States v. Arroyo*,
   434 F.3d 835 (6th Cir. 2006) ............................................................................... 5, 8

*United States v. Avery*,
  807 F. App'x 74 (2d Cir. 2020) ........................................................ 11

*United States v. Barron*,
  172 F.3d 1153 (9th Cir. 1999) ......................................................... 7

*United States v. Chapman*,
  915 F.3d 139 (3d Cir. 2019) ................................................... 11, 12-13

*United States v. Cronic*,
  466 U.S. 648 (1984) ....................................................................... 9

*United States v. Gunning*,
  401 F.3d 1145 (9th Cir. 2005) ......................................................... 1

*United States v. Higgs*,
  504 F.3d 456 (3d Cir. 2007) ............................................................ 5

*United States v. Houston*,
  529 F.3d 743 (6th Cir. 2008) ........................................................... 8

*United States v. Johnson*,
  387 F. App'x 105 (2d Cir. 2010) .................................................... 11

*United States v. Krueger*,
  741 F. App'x 517 (9th Cir. 2018) .................................................. 11

*United States v. M. M.*,
  23 F.4th 216 (3d Cir. 2021) ..................................................... *passim*

*United States v. Medrano*,
  5 F.3d 1214 (9th Cir. 1993) ............................................................. 7

*United States v. Montalvo*,
  581 F.3d 1147 (9th Cir. 2009) .................................................. 7-8, 8

*United States v. Montoya*,
  82 F.4th 640 (9th Cir. 2023) ........................................................... 5

*United States v. Navarro-Flores*,
  628 F.2d 1178 (9th Cir. 1980) ................................................. 11, 12

*United States v. Rivera*,
  682 F.3d 1223 (9th Cir. 2012) ....................................................... 11

*United States v. Rock*,
  921 F.2d 282 (9th Cir. 1990) ......................................................... 11

*United States v. Ross*,
 557 F.3d 237 (5th Cir. 2009) .................................................................................. 5

*United States v. Sevilla-Oyola*,
 770 F.3d 1 (1st Cir. 2014) ...................................................................................... 8

*United States v. Slinkard*,
 61 F.4th 1290 (10th Cir. 2023) ........................................................... 11, 12, 12-13 13

*United States v. Yamashiro*,
 788 F.3d 1231 (9th Cir. 2015) ........................................................................ 11, 12, 13

**Federal Rules and Statutes**

18 U.S.C. § 3582 ............................................................................................................ 5, 7

28 U.S.C. § 455 ................................................................................................................ 11

28 U.S.C. § 2255 ............................................................................................................ 7, 8

Fed. R. App. P. 4 ............................................................................................................ 3

Fed. R. Crim. P. 32 .............................................................................................. *passim*

Fed. R. Crim. P. 35 .............................................................................................. *passim*

Fed. R. Crim. P. 43 ........................................................................................................ 7

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 612 (5th ed. 2023) ......... 8

1

2

## INTRODUCTION

Over the defense's vigorous and repeated objections, the government urged and the Court agreed to sentence defendant David DePape in this federal case in the midst of his ongoing state criminal trial. Now, even though Mr. DePape is currently in trial in state court where he faces a possible life sentence without the possibility of parole, and even though his primary custody remains with the State of California, the government asks the Court to take the extraordinary step of hauling Mr. DePape back into federal court to "reopen" his sentencing hearing, citing Federal Rule of Criminal Procedure 35(a). Less than 24 hours after the government filed this motion, and without affording Mr. DePape an opportunity to respond, the Court granted the government's motion and ordered Mr. DePape returned to this Court during his trial in state court.

To be sure, the Court violated Mr. DePape's rights when it sentenced him without inviting him to allocute. *See, e.g., United States v. Gunning*, 401 F.3d 1145, 1147 (9th Cir. 2005). But it cannot now cure that error by disrupting his state trial and asking Mr. DePape if he has anything to say, after the Court has already made its decision and imposed the sentence. The case should follow the normal course and proceed on direct appeal, not only because a notice of appeal has been filed, but because the error cannot be remedied in the manner the government seeks.

Mr. DePape therefore opposes the government's Rule 35 motion and the Court's order granting it without first hearing from the defense. First, the Court violated this Court's local rules and basic principles of due process core to our adversarial justice system by granting the government's motion without affording Mr. DePape any opportunity to be heard—even though the government's motion expressly noted that Mr. DePape opposed it. Second, the Court has already sentenced Mr. DePape, and he has appealed both his conviction and sentence to the Ninth Circuit. Contrary to the government's contention, Rule 35(a)—which offers only an extremely limited basis on which to "correct a sentence"—does not provide a mechanism to "reopen" the sentencing proceeding after the Court has already imposed the sentence.

Third, Mr. DePape is currently in trial in state court, and even if the Court had authority under Rule 35 to "reopen" his already completed sentencing proceedings, doing so here would be

1  impracticable because he will be fully occupied with his ongoing state trial over the next two weeks.

2  Hauling Mr. DePape back into federal court would also illegally prejudice his Fifth and Sixth

3  Amendment rights to present a defense and to the assistance of counsel in his state proceedings by

4  removing him from state custody where he will be actively working with his state counsel to defend

5  against a possible life sentence. And this Court's rushed schedule and ongoing state trial will not

6  afford Mr. DePape's federal defense team adequate opportunity to prepare Mr. DePape for any

7  resentencing hearing. Accordingly, the Court must deny the government's Rule 35(a) motion.

8          Finally, any resentencing proceedings must be before a different district judge. This Court

9  already imposed sentence, and in doing so expressed strong views about what is an appropriate

10  sentence in this case and why. The Court cannot reasonably be expected to put its previously

11  expressed conclusions aside to fairly and appropriately resentence Mr. DePape. Thus, if the Court

12  insists on resentencing Mr. DePape during his ongoing state trial over his objections, the Court

13  should reassign this matter to a different judge for resentencing to preserve the appearance of justice.

14                                              **BACKGROUND**

15          On November 16, 2023, the jury returned guilty verdicts on both counts. *See* Reporter's

16  Transcript (RT) 969–70 (Dkt. 215). The Court did not immediately set a sentencing date, and instead

17  set a status conference for December 13, 2023, tolling the time to file any post-trial motions. *See* RT

18  973. At the December 13, 2023 status conference, the Court set a post-trial motion briefing schedule,

19  setting the motions hearing for March 27, 2024. The Court also provisionally set a sentencing date of

20  April 24, 2024. *See* Dkt. 197. At the March 27, 2024 motion hearing, the government pressed for Mr.

21  DePape to be sentenced as soon as possible. In response, defense counsel pushed back, noting Mr.

22  DePape's ongoing state criminal proceedings, and that having a sentencing hearing in his federal

23  matter while he was actively on trial in state court would hamper the ability of both his state and

24  federal lawyers to advocate effectively for him. *See* Dkt. 223. Nevertheless, the Court set the

25  sentencing date for May 22, 2024, which was during Mr. DePape's state trial. *See id.* The Court later

26  advanced Mr. DePape's sentencing hearing from May 22, 2024, to May 17, 2024, due to the Court's

27  unavailability on May 22. *See* Dkt. 224.

28          At an April 24, 2024 status conference, the defense again requested to continue Mr. DePape's

1    sentencing hearing because holding such a hearing during his ongoing state trial would interfere with

2    defense counsel's ability to prepare for sentencing and with Mr. DePape's ability to meet with and

3    assist his counsel in state court. The Court refused to alter the sentencing date. *See* Dkt. 231.

4           On May 17, 2024, the Court sentenced Mr. DePape, imposing a 30-year prison term. *See* Dkt.

5    240. Mr. DePape filed a timely notice of appeal from his conviction and sentence the same day. *See*

6    Dkt. 241. Later in the evening of May 17, citing Rule 35(a), the government filed a motion stating

7    that the Court had failed at sentencing to offer Mr. DePape an opportunity to allocute, and asking the

8    Court to "reopen" sentencing within 14 days, and to bring Mr. DePape back into federal custody "for

9    the limited purpose of addressing the defendant to permit him to allocute." The government noted

10   that Mr. DePape opposed the motion. *See* Dkt. 243. On Saturday, May 18, less than 24 hours after the

11   government filed its Rule 35 motion, the Court granted the motion, despite directing Mr. DePape—in

12   the same order—to file "any response" to the government's motion by May 22, 2024 at noon. In its

13   order, the Court found it had committed a clear error at sentencing when it violated Rule 32 by failing

14   to afford Mr. DePape any opportunity to allocute. The Court set a "reopened" sentencing hearing on

15   Tuesday, May 28, 2024, at 9:30 a.m.[1] *See* Dkt. 244.

16          Mr. DePape has been in and remains in primary state custody throughout these proceedings.

17   *See* PSR ¶ 5. His state criminal trial is ongoing, and his state public defender advises undersigned

18   counsel that Mr. DePape was scheduled to be in trial from May 21, 2024, to May 24, 2024, and from

19   May 28, 2024, to May 31, 2024, i.e., every court day for the next two weeks. Following the Court's

20   May 18 order, however, the state court went "dark" on Tuesday, May 28, for the sole and explicit

21   purpose of accommodating this Court's order.

22   ///

23   ///

24   ///

25

26   _____

27   [1]The Court also characterized Mr. DePape's notice of appeal as "hasty," even though noticing an
     appeal after sentencing and before entry of judgment is entirely appropriate and expressly
28   contemplated by the Federal Rules of Appellate Procedure. *See* Fed. R. App. P. 4(b)(2). Indeed, it is
     common practice and helps guard against any risk of defense counsel missing an appellate filing
     deadline.

OPPOSITION TO GOVERNMENT'S RULE 35 MOTION
*DEPAPE*, CR 22–426 JSC

1

**ARGUMENT**

2    **I.    The Court violated Mr. DePape's right to due process by granting the government's Rule 35(a) motion without affording him any opportunity to be heard.**

3

4    Even though the Court was on notice that Mr. DePape opposed the government's Rule 35 motion, *see* Dkt. 243 at 2, the Court granted the motion on a Saturday less than 24 hours after the

5    government filed it, before affording Mr. DePape any opportunity to file a response. *See* Dkt. 244. In

6    this District, a party in a criminal action has seven days to file any opposition to a motion. *See* N.D.

7    Cal. Crim. Local R. 47–2(d) (7-day deadline to file opposition to criminal motion). While this seven-

8    day period may be shortened or lengthened, that must be done either through the stipulation of the

9    parties or by the Court before ruling on the motion. Here, the government never sought a stipulation

10   from the defense to shorten the briefing schedule, nor did the Court set an expedited briefing schedule

11   on the Rule 35 motion; instead, it granted the motion after having heard only from the government, a

12   plain violation of this Court's local rules.

13   More importantly, the Court also violated Mr. DePape's right to due process. Our adversarial

14   system of criminal justice is rooted in the basic concept that courts should hear from both parties

15   before ruling on any contested matter. *See, e.g., Penson v. Ohio*, 488 U.S. 75, 84 (1988) ("The

16   paramount importance of vigorous representation follows from the nature of our adversarial system

17   of justice. This system is premised on the well-tested principle that truth—as well as fairness—is best

18   discovered by powerful statements *on both sides of the question*." (cleaned up; emphasis added)). The

19   very core of the right to procedural due process, moreover, is a meaningful opportunity to be heard.

20   *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the

21   opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (quoting *Armstrong v.*

22   *Manzo*, 380 U.S. 545, 552 (1965)). The Court violated this basic tenet of due process by refusing to

23   afford Mr. DePape any opportunity to address the government's Rule 35 motion before deciding it on

24   the merits. *See id.* The Court's order directing the defense to file "any response" by noon on

25   Wednesday, May 22, 2024, cannot constitute any *meaningful* opportunity to be heard, since the Court

26   has already made its decision and granted the motion, without any input from the defense. *See id.* By

27   granting the government's contested motion without hearing from Mr. DePape, the Court violated his

28   right to procedural due process and a very core principle of our adversarial justice system.

1
2

**II.    The current version of Rule 35(a) is exceedingly narrow and permits the Court only to "correct" a sentence, not to "reopen" Mr. DePape's sentencing hearing to address its allocution error.**

3

"A federal court generally 'may not modify a term of imprisonment once it has been

4

imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). And, as

5

the Ninth Circuit has long and repeatedly held, a sentence is imposed when it is orally pronounced,

6

not when the Court commits the sentence to writing in the judgment. *See, e.g., United States v.*

7

*Montoya*, 82 F.4th 640, 648 (9th Cir. 2023) (en banc) ("A sentence is imposed at the time it is orally

8

pronounced." (cleaned up)); *see also* Fed. R. Crim. P. 35(c). One "exceedingly narrow" exception to

9

this rule of finality is Rule 35. *See, e.g., United States v. M. M.*, 23 F.4th 216, 219 (3d Cir. 2021)

10

("Rule 35(a) offers an exceedingly narrow basis to correct a sentence."); *see also Dillon*, 560 U.S. at

11

827–28.

12

Rule 35(a), reads as follows: "Correcting Clear Error. Within 14 days after sentencing, the

13

court may correct a sentence that resulted from arithmetical, technical, or other clear error." Fed. R.

14

Crim. P. 35(a). Neither the government nor the Court have suggested the allocution error here was

15

"arithmetical" or "technical," so the Court may correct the sentence under Rule 35(a) only if the

16

Court's Rule 32 error here qualifies as some "other clear error." *See M.M.*, 23 F.4th at 219. It does

17

not.

18

Rule 35(a) itself "does not define 'other clear error.'" *Id.* at 220. But the Advisory Committee

19

notes and numerous courts agree that Rule 35(a) "is intended to be very narrow." *Id.* (citing Fed. R.

20

Crim. P. 35, advisory committee's note to 1991 amendments); *United States v. Arroyo*, 434 F.3d 835,

21

838 (6th Cir. 2006) ("The authority conferred by Rule 35(a) to a district court is extremely limited.").

22

Rule 35(a) "'was not intended to be used as a method for reopening issues already decided, or to

23

address questions related to the district court's discretion' during sentencing." *M.M.*, 23 F.4th at 220

24

(quoting *United States v. Higgs*, 504 F.3d 456, 462 (3d Cir. 2007)). Neither the text of Rule 35(a)

25

itself nor the advisory committee notes "clarify its exact contours" of what constitutes "other clear

26

error." *See id.*; *accord United States v. Ross*, 557 F.3d 237, 240 (5th Cir. 2009).

27

The Third Circuit in *M.M.* thus applied the *ejusdem generis* canon of construction as a tool to

28

define the scope of "other clear error." *See id.* at 220–21. "Under *ejusdem generis*, 'when a general

1   term follows a specific one, the general term should be understood as a reference to subjects akin to

2   the one with specific enumeration.'" *Id.* (quoting *Norfolk & W. Ry. Co. v. Am. Train Dispatchers*

3   *Ass'n*, 499 U.S. 117, 129 (1991)). Thus, "'other clear error' in Rule 35(a) can be read in connection

4   with the two previous terms in the list: 'arithmetical' and 'technical.'" *Id.* at 221 (citing *Epic Sys.*

5   *Corp. v. Lewis*, 584 U.S. 497, 512 (2018)).

6       Accordingly, the Third Circuit held in *M.M.* that "clear error must be akin to an arithmetical or

7   a technical error," such as "failure to impose a mandatory term of imprisonment, a mandatory fine, or

8   a mandatory order of restitution," which "produce illegal sentences outside of a court's discretion."

9   *Id.* The court then reversed the district court's order granting the government's Rule 35(a) motion

10  because Rule 35(a) did not permit the district court to resentence a cooperating defendant based on

11  the government's claim that the court improperly used factors unrelated to his cooperation to set the

12  sentence. *Id.* at 224 (noting that alleged sentencing error "simply does not fit the parameters of Rule

13  35(a)" because it was "not a technical, arithmetical, or even clerical mistake").

14      Here, the court's Rule 32 allocution error is likewise not "akin to an arithmetical or a technical

15  error," such as "failure to impose a mandatory term of imprisonment, a mandatory fine, or a

16  mandatory order of restitution," which "produce illegal sentences outside of a court's discretion." *See*

17  *id.* at 221. Indeed, a defendant's right to allocute at sentencing is not merely a matter of arithmetic

18  and no mere technicality. Rather, it is a core part of sentencing any criminal defendant and a

19  venerable common-law right with deep roots in the Anglo-American legal tradition. *See, e.g., Green*

20  *v. United States*, 365 U.S. 301, 304 (1961) ("The design of Rule 32(a) [now Rule 32(i)(4)(A)(ii)] did

21  not begin with its promulgation; its legal provenance was the common-law right of allocution. As

22  early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say

23  before sentence was imposed required reversal."). While the Court could use Rule 35(a) to correct an

24  error in the mandatory special assessment, a sentence outside the statutory bounds, or other similarly

25  technical or arithmetic errors, the Court may not, under the guise of "correcting" a sentence under

26  Rule 35(a) "reopen" an already complete sentencing proceeding based on a failure to afford a

27  defendant the opportunity to allocute. An allocution error is not at all akin to these sorts of technical

28  and arithmetic errors, which relate to the actual terms of the sentence imposed, and it therefore falls

1    outside Rule 35(a)'s ambit. *See, e.g., M.M.*, 23 F.4th at 221.

2         Further, the necessary remedy for a violation of the right to allocution is a full resentencing

3    hearing (possibly before a different district judge, *see* Section IV *infra*). *See, e.g., United States v.*

4    *Medrano*, 5 F.3d 1214, 1216 (9th Cir. 1993).[2] Thus, the only way the Court can properly remedy its

5    denial-of-allocution error is to conduct a full-blown plenary resentencing hearing that necessarily

6    entails the Court exercise its full sentencing discretion. But such a remedy falls outside the scope of

7    Rule 35(a), which is limited only to "correcting" clear error, and "was not intended to be used as a

8    method for reopening issues already decided, or to address questions related to the district court's

9    discretion during sentencing." *M.M.*, 23 F.4th at 220 (cleaned up). Indeed, as the Supreme Court

10   noted in *Dillon*, a proceeding under Rule 35 to "correct" a sentence, like a motion for a sentence

11   reduction under 18 U.S.C. § 3582(c)(2), is simply not a "plenary resentencing proceeding," which is

12   confirmed by the fact that under Rule 43(b)(4), a defendant is not even required to be present at a

13   hearing on a motion to correct a sentence under Rule 35. *See* 560 U.S. at 827–28 ("Rule 43 therefore

14   sets the proceedings authorized by § 3582(c)(2) and Rule 35 apart from other sentencing

15   proceedings."). In other contexts, the Ninth Circuit draws the same distinction between a full plenary

16   resentencing hearing and a more abbreviated proceeding to "correct" a sentence, which can be done

17   merely on the papers. *See, e.g., Troiano v. United States*, 918 F.3d 1082, 1086 (9th Cir. 2019)

18   (distinguishing between a "full resentencing" and an action on the papers to merely "correct" the

19   sentence following successful § 2255 motion); *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir.

20   1999) (en banc) (same). Thus, Rule 35(a) simply does not permit the Court to "reopen" Mr. DePape's

21   sentencing in the manner the government seeks, and its limited remedy—to "correct" a sentence—

22   does not encompass the required plenary resentencing hearing necessary to cure the Court's Rule 32

23   denial-of-allocution error.

24        For its part, the sole case cited by the government to suggest that Rule 35(a) is an appropriate

25   vehicle to "correct" Mr. DePape's sentence is *United States v. Montalvo*, 581 F.3d 1147, 1153 (9th

26

27   _____

28   [2] The government's suggestion that the Court can merely "reopen" Mr. DePape's sentencing hearing "for the limited purpose" of giving him a merely pro forma opportunity to allocute, see Dkt. 243 at 1, is simply unsupported and contrary to the law.

1    Cir. 2009). *See* Dkt. 243 at 4. But *Montalvo* is inapposite here because the Ninth Circuit was applying

2    the pre-1987 version of Rule 35 that was applicable to the defendant in that case, whose offense

3    conduct took place before 1987. *See Montalvo*, 581 F.3d at 1151 ("The parties agree that the version

4    of Rule 35 in effect before November 1, 1987, the effective date of the Sentencing Reform Act,

5    applies to this case. Thus, our analysis of Montalvo's Rule 35 motion will rely on that prior version

6    of the rule."). This distinction is dispositive because prior to the Sentencing Reform Act coming into

7    effect in 1987, Rule 35 provided a much broader remedy to revisit sentences already imposed,

8    permitting district courts to alter a defendant's sentence for any of a broad range of sentencing errors,

9    functioning like a form of collateral sentencing review akin to a 28 U.S.C. § 2255 motion. *See* 3

10   Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 612 (5th ed. 2023)

11   (outlining history of Rule 35); *see also id.* § 618 (describing scope of pre-1987 version of Rule 35).

12         The post-1987 version of the Rule is much narrower, as outlined above. Now, "[t]he function of

13   Rule 35(a) is narrowly circumscribed: It 'permit[s] correction . . . of an illegal sentence.'" *United*

14   *States v. Sevilla-Oyola*, 770 F.3d 1, 10 (1st Cir. 2014) (quoting *Hill v. United States*, 368 U.S. 424,

15   430 (1962)); *accord United States v. Houston*, 529 F.3d 743, 749 (6th Cir. 2008) ("The authority to

16   correct a sentence conferred by Rule 35(a) is 'extremely limited.'") (quoting *Arroyo*, 434 F.3d at

17   838). "Following amendments effective November 1, 1987, defendants could no longer use Rule 35

18   to seek correction of a sentence on the ground that it was imposed *in an illegal manner*." Wright &

19   Miller, *supra*, § 618 (emphasis added); *accord Sevilla-Oyola*, 770 F.3d at 10 (noting that "illegal

20   sentences" for the purposes of Rule 35(a) concern the terms of the punishment itself). Thus, the

21   authority cited by the government is inapposite.

22         While Mr. DePape agrees with the government that the Court violated Rule 32 when it failed to

23   afford him any opportunity to address the Court before it sentenced him, he maintains that this claim

24   "is the sort of issue best addressed on direct appeal," *see M.M.*, 23 F.4th at 224, and, as discussed in

25   Section IV *infra*, remedied by a remand for a plenary resentencing before a different district judge (if

26   Mr. DePape's convictions are affirmed).

27

28

**III.   Reopening Mr. DePape's sentencing proceedings while his state criminal trial is ongoing is impracticable and would unconstitutionally interfere with his Fifth and Sixth Amendment rights to present a defense and to the assistance of counsel.**

Over the defense's repeated objections, the Court (and government) insisted on sentencing Mr. DePape in the midst of his ongoing state criminal trial. While the May 17, 2024 sentencing hearing took place on a "dark" day in state court, the May 28, 2024 date the Court selected to resentence Mr. DePape—without consulting or hearing from defense counsel—is a date that he was scheduled to be in trial in San Francisco Superior Court. Following jury selection that will occur this week, the state trial was scheduled to begin with opening statements on May 28; however, the Court's order granting the government's Rule 35 motion prompted the state court to go dark on Tuesday, May 28, solely to accommodate this Court, which Mr. DePape's state public defender characterizes as a clear disruption of the state trial. State trial proceedings are then scheduled every day for the rest of that week. It is improper for this Court to interfere with Mr. DePape's ongoing trial by a separate sovereign who has primary jurisdiction over Mr. DePape, and doing so would demonstrate disregard for comity between the federal and state court systems. Not only that, removing him from state custody to bring him to federal court on May 28—a time-consuming process that involves waking him up in the middle of the night to begin the transportation process and returning him to his state pretrial facility sometime in the evening—would deprive his state counsel of valuable time with and access to Mr. DePape that they need in the midst of their ongoing trial. This interruption would violate his constitutional rights with respect to his state proceedings.

"The Supreme Court has repeatedly held that a defendant's Sixth Amendment right to counsel is violated if the defendant is unable to communicate with his or her counsel during key trial preparation times." *Daniels v. Woodford*, 428 F.3d 1181, 1197 (9th Cir. 2005) (citing *Riggins v. Nevada*, 504 U.S. 127, 144 (1992) (Kennedy, J., concurring); *United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984); and *Geders v. United States*, 425 U.S. 80, 91 (1976)). Specifically, the Sixth Amendment prohibits judges from interfering with criminal defendants' ability to consult with their counsel during an ongoing trial. *See, e.g., Geders v. United States*, 425 U.S. 80, 88 (1976). A violation of the Sixth Amendment right to consult with counsel protected in *Geders* is per se reversible error, regardless of whether the defendant is prejudiced. *See Perry v. Leeke*, 488 U.S. 272,

1    280 (1989). *Geders* itself involved a district court who prevented the defendant from meeting with his

2    lawyer overnight during a trial, which the Supreme Court later noted was especially problematic

3    "because the normal consultation between attorney and client that occurs during an overnight recess

4    would encompass matters . . . that the defendant does have a constitutional right to discuss with his

5    lawyer, such as the availability of other witnesses, trial tactics, or even the possibility of negotiating a

6    plea bargain." *Id.* at 284.

7            Here, as noted above, the Court has scheduled a resentencing hearing in the midst of Mr.

8    DePape's state criminal trial, and the lengthy process of transporting him from state to federal

9    custody and back will deprive him of critical time to consult with his state lawyers during the most

10   critical stage of his state proceedings: the beginning of his trial. *See Daniels*, 428 F.3d at 1197. Mr.

11   DePape will lose a full day's worth of opportunity to confer with his state counsel during trial, given

12   the lengthy and cumbersome process of bringing a state detainee into federal court and back. Further,

13   Mr. DePape's federal defense counsel's ability to meet with him at this time is limited due to his state

14   trial, both because of the time he is in court and the time needed to meet with his state-court counsel.

15   Particularly given Mr. DePape's neurodiversity and mental-health issues (detailed in his sentencing

16   memorandum and attachments), preparing him for any resentencing hearing requires significant time,

17   which necessarily takes away from time to prepare for his state trial.[3] This latter concern has become

18   all the more pressing since the San Francisco District Attorney's Office moved on the eve of jury

19   selection to add an aggravated kidnapping charge to the state case, which carries with it a sentence of

20   life imprisonment without the possibility of parole. Mr. DePape's state counsel obviously will need

21   additional time with Mr. DePape to discuss with him this significant, late-breaking development that

22   doubtless will impact their approach to trial.

23           The Court has already violated Mr. DePape's rights by failing to afford him an opportunity to

24   allocute at sentencing. The Court should not compound this error by forcing Mr. DePape to be

25   resentenced while his liberty is on the line in state court and unconstitutionally interfere with his right

26

27   _____

28   [3] While the Court may think that the preparation for last week's sentencing hearing was sufficient and
     counsel does not need more time with their client, that is incorrect and ignores all that has transpired
     since, including the Court and government's statements at the hearing.

to confer with his state court lawyers and to present a defense to his state charges, as well as compromising his ability (and his counsels') to prepare for a rushed federal "reopened" sentencing hearing.

**IV.    Because the Court just last week expressed strong opinions about the sentence Mr. DePape should receive, any resentencing must be before a different district judge.**

Appellate courts, including the Ninth Circuit, often reassign cases to a different district judge for resentencing when a district court violated a defendant's right to allocute at the first sentencing hearing. *See, e.g., United States v. Slinkard*, 61 F.4th 1290, 1297 (10th Cir. 2023); *United States v. Avery*, 807 F. App'x 74, 76–77 (2d Cir. 2020); *United States v. Chapman*, 915 F.3d 139, 147 (3d Cir. 2019); *United States v. Krueger*, 741 F. App'x 517, 518 (9th Cir. 2018); *United States v. Johnson*, 387 F. App'x 105, 107 (2d Cir. 2010); *United States v. Rock*, 921 F.2d 282 (9th Cir. 1990) (unpublished table decision); *United States v. Navarro-Flores*, 628 F.2d 1178, 1184–85 (9th Cir. 1980). The Ninth Circuit looks to three factors to determine whether to reassign a case for resentencing following a reversible sentencing error:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected,

> (2) whether reassignment is advisable to preserve the appearance of justice, and

> (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving appearance of fairness.

*United States v. Yamashiro*, 788 F.3d 1231, 1237 (9th Cir. 2015) (quoting *United States v. Rivera*, 682 F.3d 1223, 1237 (9th Cir. 2012)).[4] "The first two of these factors are of equal importance, and a finding of one of them would support a remand to a different judge." *Id.* While reassignment for resentencing is only warranted in "unusual circumstances," the standard "does not require a showing of actual bias on the part of the judge who first heard the case." *Id.* (quoting *Krechman v. Cnty. of*

---

[4] The legal standard for reassignment for resentencing on remand from the Court of Appeals should apply for a resentencing following the grant of a Rule 35(a) motion because the same legal interests are at stake and the situations are materially identical, i.e., a resentencing proceeding necessitated by a district court's sentencing error. Alternatively, reassignment to a different district judge is also appropriate under the 28 U.S.C. § 455(a).

1  *Riverside*, 723 F.3d 1104, 1111 (9th Cir. 2013)).

2        Here, the Court has already forcefully expressed strong views about Mr. DePape, stating that he

3  had "taunted America," comparing him to the infamous assassins of Presidents Lincoln and Kennedy,

4  and describing Mr. DePape's actions as "unprecedented." *See* Dkt. 247 at 26–29. As the Ninth Circuit

5  has observed, "A resentencing necessitated by the district judge's failure to afford the right of

6  allocution to defendant involves the problem whether upon remand the judge could reasonably be

7  expected to erase earlier expressed views or findings from his mind or may overreact in an effort to

8  be impartial." *Navarro-Flores*, 628 F.2d at 1184. Here, unlike a resentencing following a remand

9  from the Court of Appeals in the ordinary course, the Court does not even have the benefit of a

10  substantial time interval between the original sentencing hearing and a second resentencing to

11  reassess its previously expressed strong views. The Court cannot reasonably be expected to set aside

12  its views as to the appropriate sentence for Mr. DePape in light of the comments it made when it

13  sentenced him just last week. Simply put, the Court's "words at sentencing suggest such a strong

14  personal belief regarding what punishment is appropriate that the judge may have considerable

15  difficulty changing [her] mind . . . ." *Slinkard*, 61 F.4th at 1297.

16        Especially important in this case is the second factor: whether reassignment is advisable to

17  preserve the appearance of justice. In another denial-of-allocution case, the Tenth Circuit emphasized

18  the importance of this second factor[5] as follows:

19        Most important here is the second factor. Reassignment will help preserve
20        the appearance of justice, which is an essential purpose of the right of
        allocution. "We are mindful . . . of the imperative to preserve not only the
21        reality but also the appearance of the proper functioning of the judiciary
        as a neutral, impartial administrator of justice." Because the original judge
22        conclusively declared his view of the proper sentence for [the defendant]
        before inviting him to make a statement, the parties and the public might
23        believe the judge unwilling to consider [the defendant's] statement on
        remand. Although we do not doubt the original judge's willingness to
24        follow our instructions on remand, we think reassignment will "preserve
        the appearance of justice" and ensure that the fairness of future
25        proceedings is beyond doubt.

26

27  _____

28  [5] The Tenth Circuit's test for reassignment is identical to that applied by the Ninth Circuit. *Compare*
   *Slinkard*, 61 F.4th at 1296-97, *with Yamashiro*, 788 F.3d at 1237.

1 *Slinkard*, 61 F.4th at 1297 (quoting *Chapman*, 915 F.3d at 147). Here too the Court conclusively

2 declared just last week its view that statutory maximum sentences—which would leave Mr. DePape

3 incarcerated at least until he is nearly 70 years old—are the proper sentences for Mr. DePape, all

4 without hearing from him. *Cf. id.*

5       The Court's improper granting of the government's Rule 35 motion without affording Mr.

6 DePape an opportunity to be heard, *see* Section I *supra*, mirrors the Court's prior error in sentencing

7 Mr. DePape without affording him an opportunity to be heard. This further bolsters the need for

8 reassignment to preserve the appearance of justice, as the Court's actions could lead the public to

9 believe that it is unwilling to consider Mr. DePape's views in matters related to sentencing. *See id.*

10 (emphasizing "the imperative to preserve not only the reality but also the appearance of the proper

11 functioning of the judiciary as a neutral, impartial administrator of justice").

12       Finally, the Court made comments at sentencing that it viewed itself as potentially at risk of

13 attack by someone like Mr. DePape. *See* Dkt. 247 at 28 ("I'm willing to take that risk myself and put

14 myself at risk to serve the public."). These personal comments undermined the appearance that the

15 Court is disinterested in this matter, and could easily lead the public to believe that the Court

16 punished and intends again to punish Mr. DePape more harshly because his actions involved another

17 prominent public figure like the Court itself. Reassignment to a different district judge for

18 resentencing is strongly supported by the need to preserve the appearance of justice in this matter.

19 *Slinkard*, 61 F.4th at 1297.

20       While reassignment may be cumbersome, the third factor is the least important of those

21 identified by the Ninth Circuit, and in any event, reassignment is warranted when either of the first

22 two factors are satisfied. *See Yamashiro*, 788 F.3d at 1237. Accordingly, whether resentencing of Mr.

23 DePape happens now on a rushed basis during his ongoing state trial over his objections or upon

24 remand following the appeal, this matter should be reassigned to a different judge for any

25 resentencing proceedings.

26 **CONCLUSION**

27       For the foregoing reasons, the Court should deny the government's Rule 35(a) motion.

28 Alternatively, if the Court insists on resentencing Mr. DePape while his state trial is ongoing, it

1  should reassign this matter to a different judge for resentencing.

2

3      Dated:    May 22, 2024                 Respectfully submitted,

4                                                   JODI LINKER
                                                 Federal Public Defender

5                                                   Northern District of California

6

                                                     /S

7                                                   ANGELA CHUANG
                                                 TODD M. BORDEN

8                                                   Assistant Federal Public Defenders

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO GOVERNMENT'S RULE 35 MOTION
*DEPAPE*, CR 22–426 JSC
                                       14